PHILLIP A. TALBERT
Acting United States Attorney
CHRISTOPHER S. HALES
KATHERINE T. LYDON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**SEALED**

FILED
Jun 10, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT ALLEN POOLEY,<br><br>Defendant. | CASE NO. 2:21-cr-00111-WBS<br><br>18 U.S.C. § 1343 – Wire Fraud (4 counts); 18 U.S.C. § 1028A – Aggravated Identity Theft (2 counts); and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)– Criminal Forfeiture |

## I N D I C T M E N T

COUNTS ONE THROUGH FOUR: [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury charges:

ROBERT ALLEN POOLEY,

defendant herein, as follows:

### I. INTRODUCTION

At all times relevant to the Indictment:

1. Tandem skydiving was a type of skydiving in which two individuals use the same parachute. Tandem skydiving is commonly seen with individuals who are skydiving for the first time and they "ride" with an experienced parachutist in command, typically referred to as the tandem instructor. A tandem instructor with a parachute on his/her back has another individual attached to his/her front as they skydive together.

### A. Individuals

2. Defendant ROBERT POOLEY resided in and around the Acampo, California area. ROBERT POOLEY provided various skydiving-related services in exchange for money, including training candidates who wanted to become tandem instructors.

3. Person 1 operated a skydiving business located in Acampo, California. The business operated under different names and corporate identities controlled primarily by Person 1, referred to collectively herein as Organization 1. Individuals traveled from around the United States and the world to skydive and to receive skydiving instruction at Organization 1's facilities.

4. Person 2 was a skydiver who sometimes conducted tandem jumps and at times provided tandem instructor training at the premises of Organization 1.

5. Victim 1 was a skydiver from Mexico who came to the United States to pursue tandem instructor training with ROBERT POOLEY at the premises of Organization 1 in or about July 2016.

6. Victim 2 (now deceased) was a skydiver from the Republic of Korea who came to the United States and sought tandem instructor training from ROBERT POOLEY in or about June and July, 2016. On or about August 6, 2016, Victim 2 and a customer with whom he was tandem skydiving died after falling to the ground near the premises of Organization 1.

7. Victim 3 was a skydiver from California who sought tandem instructor training from ROBERT POOLEY during the same class as Victim 2 and others listed here.

8. Victim 4 was a skydiver from New Zealand who came to the United States from June through August 2016 and sought tandem instructor training from ROBERT POOLEY during the same class as Victim 2 and others listed here.

9. Victim 5 was a skydiver from Chile who came to the United States in May 2016 and sought tandem instructor training from ROBERT POOLEY during the same class as Victim 2 and others listed here.

10. Victim 6 was a skydiver from the Republic of Korea who sought tandem instructor training from ROBERT POOLEY during the same class as Victim 2 and others listed here.

11. Victim 7 was a skydiver from Australia who came to the United States in 2016 and sought tandem instructor training from ROBERT POOLEY in or about July 2016.

B. **USPA Tandem Instructor Rating Courses**

12. The Federal Aviation Administration (FAA) regulated various aspects of parachute operations, including tandem skydiving. Under federal regulation 14 C.F.R. § 105.45 specific to tandem skydiving, one of the parachutists using a tandem parachute system must be the "parachutist in command" who must meet requirements including that he or she "[h]olds a master parachute license issued by an organization recognized by the FAA."

13. The only organization recognized by the FAA to issue the master parachute license required to conduct tandem skydiving as the "parachutist in command" was the United States Parachute Association (USPA). USPA issued licenses labeled "A" through "D", with "D" being the highest. Only individuals with a USPA D license could obtain a USPA Tandem Instructor rating.

14. To obtain a USPA Tandem Instructor rating, parachutists were required to complete a series of prerequisites and complete a Tandem Instructor Rating Course conducted by a certified USPA Tandem Instructor Examiner (IE). During the Tandem Instructor Rating Course the parachutist was required to complete tasks that were recorded on a USPA Tandem Instructor Rating Course Proficiency Card.

15. A USPA Tandem IE was a person possessing the highest USPA rating related to tandem skydiving, superior to a Tandem Instructor. A USPA Tandem IE could obtain assistance from other qualified evaluators in conducting the Tandem Instructor Rating Course but was responsible for supervising and leading the course. To complete a candidate's USPA Tandem Instructor Rating Course Proficiency Card, the USPA Tandem IE was required to sign the final "Rating Recommendation" by attesting, "I have personally examined and recommend this applicant for the USPA Tandem Instructor rating."

C. **UPT Tandem Instructor Rating Courses**

16. Federal regulation 14 C.F.R. § 105.45 also required that a tandem instructor be trained in the use of the specific tandem parachute system to be used by the tandem instructor. This training included successfully completing a tandem instructor course on the use of that specific tandem parachute system, and obtaining a certification that the tandem instructor had been properly trained on the use of that specific tandem parachute system.

INDICTMENT

3

17. Uninsured United Parachute Technologies, LLC ("UPT") was a manufacturer of tandem parachute systems, including systems called Vector and Sigma.

18. UPT issued guidelines for the certification of tandem instructors to use its equipment, using terminology similar to USPA. New candidates to become a "tandem instructor" for the UPT Tandem Vector or Sigma equipment were required to make at least five jumps under the "direct supervision of a qualified and currently rated Tandem Vector/Sigma Examiner." UPT required that the five jumps be recorded on a UPT Tandem Instructor Certification form and that the record of each jump be followed by the UPT Tandem Examiner's signature.

19. UPT's guidelines required that the qualified and currently rated UPT Tandem Examiner had to be personally present at the testing for a tandem instructor candidate as follows: "Tandem examiners must be present during the execution of the five certification jumps." UPT's guidelines stated that "[d]irect supervision means being present and participating during all certification processes." UPT's guidelines clarified that UPT Tandem Examiners could not sign off for training unless they were present during the "entire certification process."

**D.   USPA and UPT suspend ROBERT POOLEY's tandem examiner ratings.**

20. In or about 2010 ROBERT POOLEY obtained ratings as a USPA Tandem IE and as a UPT Tandem Examiner through a training course. Thereafter, ROBERT POOLEY conducted training courses for candidates seeking to obtain their USPA Tandem Instructor rating and/or their certification to use UPT tandem parachute systems in exchange for money. ROBERT POOLEY conducted tandem instructor courses at the premises of Organization 1. Candidates from around the world attended these courses.

21. In or about August 2015, both ROBERT POOLEY's USPA and UPT tandem examiner ratings were suspended as described below.

22. On or about August 7, 2015, USPA suspended ROBERT POOLEY's USPA Tandem IE rating, retroactive to July 26, 2015. ROBERT POOLEY received USPA's suspension letter and knew his USPA Tandem IE rating was suspended. The USPA's suspension letter stated that the suspension was for a period of one year, but that ROBERT POOLEY'S USPA Tandem IE rating could not be reinstated until he had the approval of the full USPA Board of Directors. On or about August 2, 2016,

INDICTMENT

4

USPA informed ROBERT POOLEY that zero board members had voted to reinstate his USPA Tandem IE rating. ROBERT POOLEY's USPA Tandem IE rating was never reinstated.

23. On or about August 18, 2015, UPT suspended ROBERT POOLEY's UPT Tandem Examiner rating, retroactive to July 25, 2015. ROBERT POOLEY received UPT's suspension letter and knew his UPT Tandem Examiner rating was suspended. UPT's suspension letter stated that UPT had an "agreement of rating reciprocity with USPA," and that UPT's suspension would remain in effect unless USPA rescinded or modified its suspension. ROBERT POOLEY's UPT Tandem Examiner rating was never reinstated.

24. ROBERT POOLEY knew that he could not conduct USPA Tandem Instructor courses without another USPA Tandem IE present. On or about August 28, 2015, ROBERT POOLEY received an email from a USPA representative stating that ROBERT POOLEY's suspension applied to tandem courses, and that while ROBERT POOLEY could still "jump as an evaluator in a rating course," the courses "must be run completely by other examiners from start to finish." On or about August 28, 2015, ROBERT POOLEY responded to this email, stating, "I understand the terms of the suspension. I am still helping with the courses but I know they need to be run by another IE." ROBERT POOLEY informed the USPA representative that Person 2 would be the "our primary IE for right now." Person 2 held ratings as a USPA Tandem IE and as a UPT Tandem Examiner.

25. On or about August 17, 2015, ROBERT POOLEY emailed himself a digital image of Person 2's handwritten signature. Starting at least in or about August 2015, ROBERT POOLEY possessed otherwise blank USPA Tandem Instructor Rating Course Proficiency Cards and UPT Tandem Instructor Certification Forms that were pre-printed with Person 2's signature on each line where the signature of a USPA Tandem IE or UPT Tandem Examiner was required. ROBERT POOLEY also possessed otherwise blank USPA D license applications pre-printed with Person 2's signature as a USPA IE in the "Verification" section.

26. On or about May 20, 2016, Person 2 left the United States for overseas travel and did not return to the United States until on or about August 2, 2016.

## II. SCHEME TO DEFRAUD

27. Beginning on or about May 20, 2016, and continuing until on or about August 6, 2016,

defendant ROBERT POOLEY and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, promises, half-truths, and omissions, and the concealment of material facts.

28.  The purpose of the scheme was to obtain funds from candidates seeking to obtain their USPA D license, USPA Tandem Instructor rating, and/or their certification to use UPT tandem parachute systems.

### III.  MANNER AND MEANS

In furtherance of the fraud, ROBERT POOLEY employed, among others, the following ways and means:

29.  ROBERT POOLEY arranged and conducted tandem instructor courses where no currently rated USPA Tandem IE or UPT Tandem Examiner was present. ROBERT POOLEY obtained money from tandem instructor candidates for these courses by means of materially false and fraudulent pretenses, representations, promises, half-truths, omissions, and the concealment of material facts.

30.  In furtherance of the scheme, ROBERT POOLEY falsely held himself out to potential tandem instructor candidates as someone who could conduct rating courses through which skydivers could obtain their tandem instructor ratings. Potential tandem instructor candidates would contact ROBERT POOLEY, Person 1, or Organization 1, including by phone calls, emails, or in person. Person 1 or someone working with him or at his direction or control would often refer potential tandem instructor students to ROBERT POOLEY. As an example, on or about June 28, 2016, Victim 1 emailed Organization 1 from Mexico inquiring about "getting my tandem ratings with you guys" and seeking information about examiners and cost. Person 1's associate forwarded the email to ROBERT POOLEY saying, "I think this is more your expertise!!!!" On or about June 29, 2016, ROBERT POOLEY emailed Victim 1 information about the "Tandem Course," including that it would cost $1,100, and concluded, "Look forward to seeing you around July 6th."

31.  ROBERT POOLEY obtained payment from tandem instructor candidates, often when they arrived to commence the course. ROBERT POOLEY typically charged approximately $1,000 to $1,600 per candidate. Candidates often paid a portion of the fee to ROBERT POOLEY in cash, while

another portion of the fee would be given to Person 1 for Organization 1 to provide the aircraft, flights, and tandem equipment for the training jumps.

32. ROBERT POOLEY falsely led candidates to believe they could legitimately obtain their USPA D licenses, USPA Tandem Instructor ratings, and/or their certification to use UPT tandem parachute systems from these courses. Based on ROBERT POOLEY's statements and actions, candidates believed they would receive their USPA and UPT tandem ratings upon completing the course. Victim 2's paperwork provided to the FAA after his fatal accident similarly included a USPA D license application, a USPA Tandem Instructor Rating Course Proficiency Card, and a UPT Tandem Instructor Certification Form. In truth and in fact, as ROBERT POOLEY well knew, the candidates could not obtain a valid USPA Tandem Instructor rating or a valid certification to use UPT tandem parachute systems from the training courses because the courses were not conducted by a current USPA Tandem IE or current UPT Tandem Examiner.

33. In order to carry out the scheme and prevent its detection, ROBERT POOLEY concealed his USPA and UPT suspensions from tandem instructor candidates. ROBERT POOLEY had a duty to disclose this information because ROBERT POOLEY entered into a trust relationship with the tandem instructor candidates as their paid teacher in a course in which the candidates were putting their lives at risk while tandem skydiving under his supervision. The concealed facts of ROBERT POOLEY's suspensions were material to tandem instructor candidates. For example, ROBERT POOLEY did not inform Victims 1, 3, 4, or 5 of his suspensions, and Victims 1, 3, 4, and 5 would not have attended the course and would not have paid money to ROBERT POOLEY if they knew about the suspensions.

34. In furtherance of the ongoing scheme and to prevent its detection, ROBERT POOLEY also conducted purported tandem instructor rating courses while acting as if he was the tandem examiner. ROBERT POOLEY gave candidates instruction regarding the use of tandem equipment, conducting tandem jumps, and safety measures. As part of the course, ROBERT POOLEY sometimes participated in tandem skydives with candidates and/or observed their tandem jumps.

35. As part of his efforts to further the scheme by falsely representing that the course would result in USPA and UPT certifications and to conceal his suspensions, ROBERT POOLEY provided

and/or assisted candidates in filling out USPA D license applications, USPA Tandem Instructor Rating Course Proficiency Cards, and UPT Tandem Instructor Certification Forms. In filling out the cards and forms, ROBERT POOLEY, used the pre-filled forms bearing Person 2's signature in each place where the signature of a USPA Tandem IE or UPT Tandem Examiner was required. In truth and in fact, as ROBERT POOLEY well knew, those signatures and the representations associated with them were false because Person 2 was not present for the training. As ROBERT POOLEY further well knew, use of these forms was false and misleading because the candidates could not obtain a valid USPA Tandem Instructor rating or a valid certification to use UPT tandem parachute systems from the training courses.

36. In furtherance of the ongoing scheme and to prevent its detection, including to lull his victims, ROBERT POOLEY falsely represented to at least some candidates that he would submit the USPA Tandem Instructor Rating Course Proficiency Cards to USPA and the UPT Tandem Instructor Certification Forms to UPT. In some cases ROBERT POOLEY falsely stated that had in fact already submitted these documents. In truth and in fact, as ROBERT POOLEY well knew, he did not submit these documents to USPA and UPT for most candidates.

37. In furtherance of the ongoing scheme and to prevent its detection, on or about August 1, 2016, ROBERT POOLEY emailed the USPA Tandem Instructor Rating Court Proficiency card for Victim 7 to a USPA representative, and signed the email, "[Person 2's first name]." As ROBERT POOLEY well knew, the signatures of Person 2 on the attached form were false, and Person 2 was out of the country on the date entered next to the final "Rating Recommendation" signature purporting to be from Person 2.

38. Together, ROBERT POOLEY and Organization 1 received thousands of dollars from tandem instructor candidates defrauded as a part of the scheme. ROBERT POOLEY typically did not give a refund to the tandem instructor candidates he defrauded. In the period after Victim 2 died on August 6, 2016 while tandem jumping, multiple candidates asked ROBERT POOLEY for their money back. Despite receiving such requests, ROBERT POOLEY did not pay refunds to candidates, including to Victims 1, 3, 4, and 5. Victims 1 and 3 subsequently abandoned pursuit of their tandem instructor ratings. Victim 4 paid for an entirely new tandem instructor course in Southern California. Victims 5, 6, and another candidate attended a new tandem instructor course elsewhere in California that cost

approximately $1,600.

## IV. USE OF THE INTERSTATE WIRES

39. On or about the dates listed below, for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so, ROBERT POOLEY, as more specifically charged below, knowingly transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures and sounds:

| COUNT | ON OR ABOUT DATE | WIRE DESCRIPTION |
|---|---|---|
| 1 | June 28, 2016 | Email from Victim 1 to Organization 1 inquiring about "getting my tandem ratings with you guys" and seeking information about examiners and cost. |
| 2 | June 29, 2016 | Email from ROBERT POOLEY to Victim 1 providing information about the "Tandem Course," including that it will cost $1,100, and ending, "Look forward to seeing you around July 6th." |
| 3 | July 4, 2016 | Email from Victim 1 to ROBERT POOLEY stating that Victim 1 was "on my way to Lodi," and asking where Victim 1 could get his "Airmans [sic] Medical." |
| 4 | August 1, 2016 | Email from ROBERT POOLEY to a USPA representative and Victim 7 attaching a USPA Tandem Instructor Rating Course Proficiency Card for Victim 7, bearing multiple supposed signatures of Person 2. |

All in violation of Title 18, United States Code, Sections 2 and 1343.

COUNTS FIVE AND SIX: [18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft]

The Grand Jury further charges: T H A T

ROBERT POOLEY,

defendant herein, in the State and Eastern District of California, on or about the dates specified below, did knowingly possess and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A, to wit: wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the means of identification

INDICTMENT

belonged to another actual person, as detailed more fully in the table below:

| COUNT | DATE | VICTIM | MEANS OF IDENTIFICATION |
|---|---|---|---|
| 5 | July 1, 2016 | Person 2 | Signatures of Person 2 on USPA D license application, USPA Tandem Instructor Rating Course Proficiency Card, and UPT Tandem Instructor Certification Form for Victim 2 |
| 6 | August 1, 2016 | Person 2 | Signatures of Person 2 on USPA Tandem Instructor Rating Course Proficiency Card for Victim 7 |

All in violation of Title 18, United States Code, Sections 2 and 1028A(a)(1).

FORFEITURE ALLEGATION:   [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of one or more of the offenses alleged in Counts One through Four of this Indictment, defendant ROBERT ALLEN POOLEY shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

   a. A sum of money equal to the amount of proceeds traceable to such offenses, for which defendants are convicted.

2. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Four of this Indictment, for which defendant is convicted:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

///
///
///

INDICTMENT

10

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA

_____
FOREPERSON

_____
PHILLIP A. TALBERT
Acting United States Attorney

No. 2:21-cr-00111-WBS

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA
*vs.*

ROBERT ALLEN POOLEY

### I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 1343 – Wire Fraud (4 counts);
18 U.S.C. § 1028A—Aggravated Identity Theft (2 counts);
18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*     /s/ Signature on file w/AUSA

_____
*Foreman.*

*Filed in open court this* _____ 10th *day*

*of* __ June _____ , *A.D. 20* 21 ___

_____ /s/ N. Cannarozzi _____
*Clerk.*

*Bail, $* NO BAIL bench warrant to issue

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

GPO 863 525

2:21-cr-00111-WBS

<u>**United States v. Robert Allen Pooley**</u>
**Penalties for Indictment**

## COUNTS 1-4:

VIOLATION: 18 U.S.C. § 1343 – Wire Fraud

On each count:

PENALTIES: Up to 20 years in prison; or
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater; or both fine and imprisonment
Supervised release of up to 3 years
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## COUNTS 5-6:

VIOLATION: 18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft

FIRST OFFENSE: Mandatory 2 years in prison consecutive to any sentence on Counts 1-4;
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater;
Supervised release up to 1 year

SECOND OFFENSE: Mandatory 2 years in prison, concurrent or consecutive to first such offense as determined by the Court.
Fine of up to $250,000, or twice the gross gain or gross loss, whichever is greater;
Supervised release up to 1 year

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## FORFEITURE ALLEGATION:

VIOLATION: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES: As stated in the charging document