# EXHIBIT 2

United States Department of Transportation - Office of Inspector General

# Memorandum of Activity

| Case Number: | Office: | Type of Activity: |
|---|---|---|
| I16A0120900 | JRI-5 Western (San Francisco) | Interview |

| Date of Activity: | Date Report Drafted: | Location of Activity: |
|---|---|---|
| 02/23/2017 | 03/23/2017 | |

| Subject of Activity: | Activity Conducted By (Name(s)): | Signature: |
|---|---|---|
| HALL, JOSHUA | Brian DuBois | B D |

On February 23, 2017, Joshua Hall, Western Regional Director, U.S. Parachute Association (USPA), was telephonically contacted by Special Agent Brian DuBois, U.S. Department of Transportation, Office of Inspector General, San Francisco, CA. The call concerned Parachute Center and the August 2016 incident in which two skydivers were killed in Lodi, CA. After the interviewing agent identified himself and the nature of the interview, Hall voluntarily provided following information during the call:

Hall is currently the Western Regional Director for USPA. He has served in the position for approximately one year. He has been a member of USPA for 18 years and conducted over 13,000 parachute jumps. He has extensive parachuting experience and has served in instructor capacities, worked with the military as a contractor, and jumped competitively. Hall coached a parachute team out of Parachute Center, Lodi, CA between 2013 and 2015, going to the center one to three times a month. He was personally familiar with aspects of the center's operations.

In August 2016, prior to the fatal incident, Hall conducted an investigation into activities of USPA members associated with Parachute Center. The investigation looked into possible underage tandem parachute jumps with USPA members working for Parachute Center. USPA and United Parachute Technologies (UPT) require tandem jumpers to be 18 years old or have a waiver. While looking into one of the instructors, Garreth Hemmingway, Hall discovered Hemmingway was not USPA or UPT certified to conduct Tandem Instruction. When questioned, Hemmingway stated he completed the training with Robert Pooley and Y.G. Hemmingway's paperwork for certification had not been submitted to the USPA. It was subsequently submitted, but ultimately denied due to the fact he was parachuting with individuals under the age of 18 without signed waivers.

Jim Crouch, Director of Safety and Training, USPA, asked Hall to look into other individuals associated with Parachute Center as a result of the above investigation. Several of them did not have certifications, despite having conducted training with Pooley and Y.G. Hall had not looked into Yonghyeon Kwon's certificates prior to the August 2016 incident. After the incident, he learned Kwon was not certified through the USPA. Hall noted that Tom Noonan, Tandem Program Director, UPT, had no record of Kwon being tandem certified with UPT.

Robert Pooley worked with Y.G. to provide instruction to candidates. Pooley was an instructor and an examiner with USPA and UPT endorsements up until July or August 2015, when his examiner rating was rescinded because of repeated clerical issues. He was not following through on the submission of paperwork or certificates to USPA. The rescission meant he could not teach courses unless under direct supervision of a certified Examiner. Pooley still helped Y.G. run courses; however, Y.G. was not always overseeing Pooley. This was based off of statements by Examiners who retested Y.G.'s candidates.

Pooley taught two courses in June 2016 without any Examiner overseeing his instruction. Proficiency cards used to certify candidates had Y.G.'s electronic signature on them so Y.G. did not physically sign the certificates. Pooley stated Y.G. was aware of the practice of using the electronically signed forms for

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.

candidates. During this period, Pooley was not certified by the USPA to teach courses without having an Examiner present. As a result of the fatal incident, Pooley's USPA Membership was permanently revoked. Pooley did not appeal his membership revocation.

William Dause operates Parachute Center. Dause had issues with the Federal Aviation Administration in the past. Hall felt Dause's attitude was that Parachute Center was not a USPA Drop Zone, so he did not have to follow USPA guidelines. As a result of the August 2016 fatal incident, Dause's USPA membership was temporarily revoked, including revocation of his instructor certifications. The initial revocation was 60 days. Dause told Hall and Crouch he knew Pooley's status as an Evaluator, but was under the impression Pooley was under someone else's instruction while he was training candidates. Later, Dause's USPA membership was permanently revoked. Dause did not appeal his membership revocation.

Y.G.'s USPA membership was also revoked following the August 2016 incident. He appealed his revocation and told the USPA board he was still parachuting. Y.G.'s USPA membership was permanently revoked.

Training provided by Pooley and Y.G. was conducted in an area at Parachute Center; however, candidates interested in instruction contacted Y.G. and Pooley directly. Payments for instruction were made to Pooley and Y.G. Pooley and Y.G. used Parachute Center workspace to conduct training and to conduct the administrative work for the training. According to Peter Swann, FAA Master Rigger, Lodi, CA, Dause would "call instructors out", interrupting Pooley's training and telling him to hurry up the instruction so the candidates could jump.

It is the USPA Instructor's responsibility to maintain their certifications. The employer should know and check to verify an employee's certification though. Dause would not verify individual's certifications though and he trusted his contractors were certified. There are several methods for confirming someone's level of certification: ask to see their physical license or paperwork, call the USPA and ask, or if the drop zone is a USPA Group Member, check on the portal access page.

After the fatality, Y.G., an Examiner who provides instruction at Parachute Center facility submitted a "wave" of training certificates to USPA for candidates. Some of the certificates were three, six, and eleven months overdue.

Hall spoke with Pooley after the incident. Pooley was pretty distraught and told Hall that Y.G. was out of the country at the time of the incident. Pooley provided Hall with documents pertaining to the training. Pooley also stated Y.G. knew what was going on with Pooley teaching and that Pooley was using forms with Y.G.'s signature pre-filled in. These were blank forms with Y.G.'s signature electronically filled in. It was a practice to use these forms with other classes. Based on Hall's review of the certificates, it appeared that students in their classes filled in the dates they completed tasks on the pre-signed form. This is supposed to be the responsibility of the Examiner. Y.G.'s electronic signature was also found on other membership forms and licenses.

Pooley submitted a letter to Hall defending Dause after the incident occurred and "falling on his sword." After the incident, Pooley was "jumped", or beaten up, by individuals at Parachute Center and had his equipment stolen. Pooley attributed this to "dropping the ball" on the submission of paperwork or snitching on the Parachute Center. Y.G. later submitted a letter to Hall, claiming it was written by Pooley with Pooley "falling on the sword" for Y.G.. Pooley later told Hall he was forced to sign it. This happened around the time he was beaten up.

Hall indicated if the Examiner signed off on the certification, such as a Tandem certification, the individual was certified. The certification would still have to be sent to the USPA so a license number could be assigned. Some of the individuals Pooley and Y.G. were certifying lacked the prerequisites to be Tandem Instructors,

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.

meaning they did not have a "D" License or lacked the required number of parachute jumps.

Parachute Center does not operate like other drop zones. When a parachutist comes into the center and wants to jump, they will get a "ticket" for a specific aircraft and time. If someone not certified wants to jump, they will come to the Parachute Center and fill out waiver paperwork. They will then watch a safety video, pay, and receive a tag number. Dause would then "project" on to the wall, like an overhead projector, the individual's tag number and an instructor's name. They would be paired up for the jump. It is all done by paper and there are no reservations.

Throughout Hall's investigation, he received emails from Pooley and Y.G. Pooley's email address is rpooley75@gmail.com; Y.G.'s email address is ███████████. Ed Pawlowski may also have information regarding Parachute Center; he is a USPA Safety and Training Advisor.

At the conclusion of the interview, Hall stated he would look for additional emails pertaining to his investigation as well as the notes from the interviews.

Reviewed By (Initials): L G     Date: 03/30/2017

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.