HEATHER E. WILLIAMS, #122664
Federal Defender
MIA CRAGER, #300172
MEGHAN McLOUGHLIN, #354051
Assistant Federal Defenders
801 I Street, 3rd Floor
Sacramento, CA 95814
Tel: 916-498-5700
Mia_Crager@fd.org

Attorneys for Defendant
ROBERT POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT POOLEY, <br><br> Defendant. | Case No. 2:21-cr-00111-WBS <br><br> **REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS EVIDENCE** <br><br> Date: March 4, 2024 <br> Time: 9:00 A.M. <br> Judge: Hon. William B. Shubb |

## I.   INTRODUCTION

The government misunderstands the defense arguments as to the warrant's overbreadth and the agents seizure of documents beyond the warrant's scope. To be clear, the defense is arguing that the search warrant was so overbroad that suppression of all evidence is warranted. In other words, all the evidence is tainted by the warrant's overbreadth. Separately, the agents seized and retained broad swaths of documents and data obviously outside the scope of the warrant. Under Ninth Circuit law, the agents' flagrant disregard for the warrant also calls for suppression of all evidence.

The defense is however mindful that Mr. Pooley only has standing to suppress certain portions of that evidence. Thus, the defense seeks to suppress all evidence in the areas that he had a reasonable expectation of privacy: his personal locker and his folder in a computer on

which he works.

This reply brief first addresses Mr. Pooley's standing. *Infra* § II.A. Next, this reply addresses some of the governments arguments about scope of probable cause in the warrant. *Infra* § II.B. This reply then discusses the warrant's overbreadth, *Infra* § II.C., and the agents seizure of data outside the warrant, § II.D., as bases for total suppression. Finally, the brief discusses the applicability of the good faith exception. *Infra* § II.E.

## II.    ARGUMENT

### A. Mr. Pooley has standing to suppress evidence seized from his personal locker and the computer folder he used for his documents.

Courts have held that people have a reasonable expectation of privacy in their personal lockers on business properties. *See Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1335 (9th Cir. 1987) (discussing the Third Circuit's holding in *United States v. Speights*, 557 F.2d 362, 364 (3d Cir. 1977)). Here, the evidence submitted with the defense's opening brief adequately proves standing. The locker belonged to Mr. Pooley. It had his name on the outside. It had a lock on it. When agents entered the building, his locker, and all other lockers in the room, were closed. The locker, when opened, showed an array of his personal property. It is obvious that Mr. Pooley had a reasonable expectation of privacy in his locker. *Cf. United States v. Bradford*, 2023 WL 6627071, at *8 (D. Nev. Apr. 18, 2023), *report and recommendation adopted,* 2023 WL 5770114 (D. Nev. Sept. 6, 2023) (reasoning simply that "[a] defendant has standing to challenge the search of his personal office. Here, Bradford's personal office was searched, and items were seized from it. Accordingly, Bradford has standing to challenge the search of his office.") (citing *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 694, 698 (9th Cir. 2009)).

As to the computer, Mr. Pooley only seeks to suppress the portion of the files that were in the folder "Robs Docs." While the government is correct that the computer did not belong to Mr. Pooley, it was used by Mr. Pooley and he had taken steps to segregate his files from others on the computer. He thus created a reasonable expectation of privacy in those files. Indeed, the computer's owner, William Dause, attests that he did not go into Mr. Pooley's files, because

those were Mr. Pooley's.  *See* Exh. I, ¶ 5.  Mr. Pooley had a personal connection to the files that he segregated from others on the computer and he thus has standing to contest their seizure. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 698 n.8 (9th Cir. 2009) (emphasizing that in the standing inquiry, "a defendant must show a personal connection to the place searched and item seized; therefore we will only consider factors that relate to such inquiry"); *see United States v. Bradford*, 2023 WL 6627071, at *10 (D. Nev. Apr. 18, 2023) (holding that defendant had standing to challenge the seizure of any personal files on the company server).

### B. The government cannot rewrite history to state probable cause.

#### 1. The warrant does not describe a "multi-level fraud scheme."

The government argues that the warrant sets out a "multi-level fraud scheme," such that any wires would attach federal jurisdiction to all the allegations.  The defense will refrain from rehashing the warrant affidavit again, but suffice it to say that the government's after-the-fact interpretation of the warrant seems to rewrite history.  Among other issues, the suspected fraud relating to "Individuals who paid Pooley and/or Garmashov for Tandem Instructor training and ratings" was ended in August 2016.  The fraud related to "customers . . . jump[ing] with Tandem Instructors they were told were certified when in fact they were not" was a separate allegation, suspected to have continued to 2018.  If it were true, as the government asserts, that it was a single scheme, it seems unlikely that one part would continue long after another ended.

#### 2. The government cannot now claim that most of the Parachute Center's operations involved fraud.

Incredibly, the government argues that – despite the warrant stating that the 18-month-long investigation had identified *two* instructors conducting tandem jumps without certifications – the warrant actually said something different.  The government now contends that there was probable cause to seize everything related to all tandem operations because "most if not all" tandem customers were victims of fraud.  *See* Opp. at 31:2.

Unequivocally, that is not what the warrant says.  To the extent the Court needs to resolve this dispute, the defense requests an evidentiary hearing.  Review of evidence that was too voluminous to Bates stamp indicates that approximately 12,000 tandem jumps occurred at the

Parachute Center in the timeframe covered by the warrant. The government is far from showing that all or even most of these jumps involved fraud.[1] Moreover, the Parachute Center offered more than just tandem skydiving, to include individual and team sport skydiving, training for competitions, and instruction for different types and levels of skydiving. The warrant was thus overbroad in seeking information about all customers and all tandem parachute operations. *See SDI Future Health*, 568 F.3d at 705 ("[W]here investigators believed that an art gallery was selling forged Dali artwork, the warrant should have limited the search 'to items pertaining to the sale of Dali artwork.'") (quoting *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747 (9th Cir. 1989), *abrogated on other grounds, J.B. Manning Corp. v. United States*, 86 F.3d 926 (9th Cir. 1996)); *United States v. Abrams,* 615 F.2d 541, 543 (1st Cir. 1980) (invalidating warrant that directed seizure of all Medicare/Medicaid records when the affidavit set out only about 50 known instances of fraud).

Because of this fundamenal flaw in the warrant, it is overbroad in almost all of the eleven caegories of items to be searched. *See* Mot. at 6-8, 16-21. In such circumstances, courts do not merely sever the overbraod portions of the warrant, as the government here advocates. Instead, courts acknowledge that total suppression is the appropriate remedy. *See SDI Future Health*, 568 F.3d at 707 (directing severance where the overbroad portion is "a relatively insignificant part").

**C. The warrant was overbroad in allowing the search of all lockers, most belonging to people for whom the agents had no probable cause.**

The government argues that it need not show probable cause to search the individual private lockers, because the warrant stated probable cause to search the Parachute Center as a whole. The government cites *United States v. Adjani*, 452 F.3d 1140, 1146 (9th Cir. 2006),

---

[1] The government seizes on a different number contained in the warrant: that 140 tandem instructors had to recertify. But the government fails to mention that (1) these tandem instructors were generally foreigners who returned to their countries following their trainings and (2) the recertifications were completed in 2016. Thus, there is no reason to believe that all or even a significant part of the 12,000 tandem operations at the Parachute Center between July 2015 and 2018 involved these 140 individuals.

however that case does not stand for the proposition the government puts forth. *Adjani* involved an investigation into extortion which used computers. *Id*. The warrant at issue allowed seizure of computers at the target's residence. The agents in fact seized a computer belonging to his cohabitating girlfriend. *See id*. The court upheld the seizure, reasoning that the target had access to the girlfriend's computer, even though it did not belong to him. *Id.* at 1146 (upholding seizure of computer because "[t]he agents, acting pursuant to a valid warrant to look for evidence of a computer-based crime, searched computers found in Adjani's residence and to which he had apparent access").

*Adjani* does not inform this situation because there was no showing here that any person had access to the lockers other than the individual locker owners themselves. Notably, the locker owners were not employees of the Parachute Center. As the agents knew, the Parachute Center had no employees; it was a place where people could learn, train, and work as skydivers if they so pleased. There were no work schedules. There was no payroll. Skydivers showed up when they wanted to and worked when they wanted to. Rather, the lockers belonged to individuals who participated in skydiving at the Parachute Center. This participation included people engaging in sport skydiving, training for competitions, learning to increase their skill or gain new ratings, packing parachutes, as well as people who took "bucket list" customers on tandem skydives. Thus, the lockers belonged to people who were guests of the Parachute Center or, at most, independent contractors.

The agents knew this from their investigation and were also told multiple times when they arrived at the Parachute Center that the lockers were separate, private spaces. *See* Exh. I ¶ 6. They needed – and did not have – individualized probable cause to go into these private spaces. *Cf. Mena v. City of Simi Valley*, 226 F.3d 1031, 1059 (9th Cir. 2000) (rejecting argument that because "Romero and Gonzales were gang associates, and they both lived in this house, the police had probable cause to search the *entire* premises at 1363 Patricia Avenue" and instead requiring probable cause specific to each locked subunit of the house).

///

**D. The government attempts to sweep under the rug the ways in which its agents exceeded the scope of the warrant.**

    **1. The government offers a strained and expansive interpretation of what makes a document "in use."**

The government essentially argues that everything in Mr. Pooley's locker was "in use" because he possessed it in his locker in 2018. *See* Opp. at 37. This interpretation defies a common-sense reading of the warrant's term, "in use." *See* Exh. A at 17 (limiting search to "items created, modified or in use" from July 2015 to January 2018). Furthermore, if "in use" post-June 2015 meant "possessed" post-June 2015, it would obviate the other temporally limiting terms of the warrant. Indeed, all items in the Parachute Center were possessed on the date of the search – January 30, 2018 – so the prosecutor's reading would render everything subject to seizure. The Court should reject this strained interpretation.[2]

    **2. Agents cannot legally seize documents outside the warrant's scope just by "treat[ing]" them as part of a single "item."**

The government has an obligation to only seize documents that are subject to seizure by the explicit terms of a warrant. The Constitution demands as much. Brushing off this obligation, the prosecutor here claims the seizure of documents outside warrant's scope was justified because the agents "treat[ed]" "each packet, binder, or collection" in Mr. Pooley's locker as a single "item." Opp. at 37:13. This argument ignores the law. *See United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) ("[A] set of files may be inspected during a search, provided that sufficiently specific guidelines for identifying the documents sought are provided in the search warrant and are followed by the officers conducting the search. [citation omitted] However, the wholesale *seizure* for later detailed examination of records not described in a warrant is significantly more intrusive, and has been characterized as 'the kind of investigatory dragnet that the fourth amendment was designed to prevent.'") (citing *United States v. Abrams,* 615 F.2d 541, 543 (1st Cir.1980); *United States v. Abram*, 830 F. Supp. 551, 556 (D. Kan. 1993) (suppressing

---

[2] The government also argues, at length, that the documents were "in use" because as an Examiner, Mr. Pooley had to retain some of the documents per the rules of the USPA and UPT. This argument makes no sense, because Mr. Pooley was not an Examiner in July 2015 or thereafter, so he was under no such obligations.

-6-

Reply re Motion to Suppress                  *U.S. v. Pooley,*
                                                                                             2:21-cr-00111-WBS

all evidence where agents seized entire file cabinets and file boxes as a single unit).

### 3. The government's list detailing what agents seized from Mr. Pooley's locker is misleading.

The government provided a list of documents seized from Mr. Pooley's locker. *See* Opp. Exh. 6. It lists certain documents individually with corresponding dates, but other documents are listed in batches. *See, e.g.*, Exh. 6 at 5 (listing "an assortment of documents" with "Large date range (2012-2016)"). In reality, these generalized categories – which take up only a few lines of the government's list – contain hundreds of pages of documents. By the defense's count, only approximately 100 pages of seized material is actually dated July 2015 or later. The remaining 600 pages are either undated or dated outside the timeframe specified in the warrant. The media cards and CDs are similarly undated or dated as early as 2008. Thus, even looking at Mr. Pooley's locker alone, the agents broadly exceeded the scope of the warrant.

### 4. The agents entirely disregarded the warrant's restrictions on seizure and retention of electronic data, thus illegally seizing the equivalent of millions of pages of documents.

In addition to seizing papers outside the scope of the warrant, the agents also seized electronic data outside its scope – to the tune of terabytes of data.[3] The government's response concerning the electronic devices acknowledges this over-seizure, as it must, but attempts to minimize it. *See* Opp. at 41; Exh. 9.

The warrant permitted the officers to seize the electronic data and keep it for purposes of searching it for documents responsive to the warrant. This was to be completed within 120 days. *See* Exh. A at 12 ("The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty days of this warrant, absent further application to this Court."). The agents also promised Judge Brennan to "employ search protocols directed exclusively to the identification and extraction of data within the scope of the warrant." *Id.*

The problem is that the officers did not even attempt to follow the safeguards of the warrant. The government responds that the Computer Crime Unit was not itself responsible for

---

[3] 1 terabyte could store approximately 83 million pages of text.

-7-

employing the search protocols or date limitations. Opp. at 41. First of all, that argument is suspect, since the Computer Crimes Unit Media Data Extraction form (Exhibit H) specifically calls for "Case Specific Keywords" and the date ranges "determined by warrant." Yet the government wants this Court to believe the form meant something different from what it says.

Regardless, even accepting the government's position that only the case agent was responsible targeted searching, a huge problem remains: the agent never actually segregated the responsive documents. Instead, the agent retained the entire copies of all of the electronics. He retained them not for 120 days, but for years, all without telling the magistrate judge.

Only prompted by the instant motion to suppress has the government finally decided to put any kind of restriction on the data per the date range specified in the warrant. No other restrictions have apparently ever been imposed.

The more fundamental flaw with the government's argument is that the data is, to this day – more than 6 years after the search warrant execution – retained by the government in its full form.[4] That is almost 4 terabytes of data, much of which has nothing to do with this case. Indeed, much of it is far outside the scope of the warrant, to include people's personal messages, health information, and intimate photographs.

The prosecutor apparently believes this wholesale seizure of irrelevant and sensitive personal information is okay because it is retained only by the Computer Crimes Unit at DOT-OIG and not by the case agent. Unfortunately, that is not what the warrant says. Data was to be seized in bulk for later examination – but only for extraction of that data responsive to the warrant. The warrant by no means allowed agents to retain all electronic data forever. It was to be retained only for 120 days and only for purposes of employing "search protocols directed exclusively to the identification and extraction of data within the scope of this warrant." Furthermore, retention by the Computer Crimes Unit is not what the Fourth Amendment allows; there is no "Computer Crimes Unit at DOT-OIG" exception to the Fourth Amendment's

---

[4] Agent Wilkerson's declaration indicates that the full forensic images were retained at least until 2021 when this case was filed and possibly to this day at the Computer Crimes Unit. *See* Exh. 9 ¶¶ 9-10.

-8-

prohibition on unreasonable seizures.  The Unit is part of the federal government and its wholesale seizure of electronic data is unreasonable.

The agents acted in "flagrant disregard" of the warrant's terms, and all evidence should be suppressed.  *See United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992); *United States v. Abram*, 830 F. Supp. 551, 556 (D. Kan. 1993) ("In the present case, the court finds that the officers did act in flagrant disregard for the terms of the warrant. . . .  The court is most troubled by the evidence that agents in the present case did not even *attempt* to limit their search to items included in the terms of the warrant.").

### E. The "good faith" exception does not apply because the agents unreasonably relied on the wildly overbroad warrant and callously disregarded the privacy of hundreds of individuals with no connection to suspected fraud.

The good faith exception cannot save the warrant here.  To begin, "[t]here is no 'good faith' exception to the *Franks* doctrine: a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid." *Mills v. Graves*, 930 F.2d 729, 733 (9th Cir. 1991).

Second, agents cannot rely on a facially overbroad warrant such as the one in this case. *See, e.g., United State v. Kow*, 58 F.3d 423, 428-29 (9th Cir. 1995) ("Because the warrant in this case was facially invalid, no reasonable agent could have relied on it 'absent some exceptional circumstance.'") (quoting *Ctr. Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 753 (9th Cir. 1989); *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir.1989) (cautioning courts to be "vigilant in scrutinizing officers' good faith reliance" on illegally overbroad warrants); *United States v. Stubbs*, 873 F.2d 210, 211-12 (9th Cir.1989) (no good faith reliance on warrant with "broad classes of documents without specific description of the items to be seized").

Finally, good faith cannot save a search that goes beyond the parameters of the warrant.  By definition, the agents were not relying on the warrant when they exceeded its explicit terms and broke their promises to Magistrate Judge Brenan.  *See, e.g.*, *Abram*, 830 F. Supp. at 556 (flagrant disregard of a warrant where agents seized entire file cabinets and boxes of documents instead of segregating them on site).  As the Ninth Circuit has warned, "The process of segregating electronic data that is seizable from that which is not must not become a vehicle for

the government to gain access to data which it has no probable cause to collect." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc). The agents cannot hide behind good faith when they flagrantly disregarded of the safeguards of a warrant.

### III.   CONCLUSION

Mr. Pooley respectfully requests that the Court suppress all evidence from his locker and the Robs Docs file on the computer.

Dated: February 27, 2024

HEATHER E. WILLIAMS
Federal Defender

/s/*MIA CRAGER*
MIA CRAGER
MEGHAN McLOUGHLIN
Assistant Federal Defenders
Attorneys for Defendant
ROBERT POOLEY