HEATHER E. WILLIAMS, #122664
Federal Defender
MEGHAN McLOUGHLIN, #354051
MIA CRAGER, #300172
Assistant Federal Defenders
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: (916) 498-5700
Fax: (916) 498-5710

Attorneys for Defendant
ROBERT ALLEN POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00111-WBS |
| Plaintiff, | **MOTION *IN LIMINE* #1 (TO EXCLUDE EVIDENCE OF DEATHS REFERENCED IN INDICTMENT UNDER FRE 401 AND 403)** |
| vs. | |
| ROBERT ALLEN POOLEY | Date:   April 29, 2024<br>Time:   9:00 A.M.<br>Judge: Hon. William B. Shubb |
| *Defendant*. | |

## I.  MOTION

Robert Allen Pooley moves *in limine* to exclude evidence of two deaths referenced in paragraph six of the indictment, specifically the death of Yonghyeon Kwon (called "Victim 2" in the indictment) and a customer.  *See* Indictment, Dkt. 1 at ¶ 6.  Such evidence is irrelevant and otherwise inadmissible evidence under Fed. R. Evid. 401 and 403.

## II.  FACTUAL BACKGROUND

Mr. Pooley is charged by indictment with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  *See* Dkt. 1.  The indictment alleges generally that from around May through August, 2016, Mr. Pooley defrauded a group of tandem skydiving course candidates by collecting payment and conducting a Tandem Instructor Course at the Parachute Center in Lodi, CA, when he did not have the proper credentials to do so.  The government has made clear in the

indictment and recent filings that, in its case-in-chief, it intends to introduce evidence surrounding the deaths of Kwon and a customer while they were tandem skydiving together at the Parachute Center on August 6, 2016.  *See id*. at ¶ 6; Dkt. 50, *United States' Opposition to Pooley's Motion to Strike Surplusage*.

The government has argued that, because of the accident on August 6, 2016, the Federal Aviation Administration ("FAA") and the United States Parachute Association ("USPA") initiated investigations into the Tandem Instructor Course at the Parachute Center, including the training of Kwon as a Tandem Instructor.  In doing so, the agencies ultimately uncovered the evidence forming the basis for the allegations in the indictment against Mr. Pooley.  As a result, the government maintains, the accident and resulting deaths are relevant and admissible.

For the reasons stated below, any details regarding the deaths are irrelevant and inadmissible.  Mr. Pooley now moves for their exclusion.

### III.  LEGAL STANDARD

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  FED. R. EVID. 401. "Irrelevant evidence is not admissible."  FED. R. EVID. 402.

A court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  That ground is commonly, though not necessarily, an emotional one.  *See id*. (citing Advisory Committee's Notes on Fed. R. Evid. 403); *see also United States v. Pineda-Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010) ("Under Rule 403, evidence may be excluded if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilty or innocence of the crime charged.") (citing *United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir.

1995).

## IV.   ARGUMENT

**A. Evidence Surrounding both Deaths is Irrelevant and Inadmissible Under Fed. R. Evid. 401 and 402**

While the deaths initiated the investigation at the Parachute Center in August 2016, they are legally irrelevant to the current charges against Mr. Pooley.  They have no bearing on any fact of consequence, including the offenses charged and witness credibility, and do not affect the integrity of the evidence.

*1.   Evidence Regarding the Deaths is Irrelevant to the Charges*

Evidence of the deaths is plainly irrelevant to the charged conduct.  Apart from initiating an investigation which later exposed Mr. Pooley's allegedly fraudulent conduct, the deaths have no connection to the alleged scheme whatsoever.  It is not necessary that the jury be privy to the events or intelligence that prompted the investigation in order to determine whether that investigation revealed evidence amounting to a crime.  Even without that information, the jury continues to have "knowledge of the time, place, and circumstances of the acts which form the basis of the charge."  *See United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (internal citations omitted); *see also United States v. Knapp*, No. CR-19-03-H-CCL, 2019 WL 5103099, at *1–2 (D. Mont. Oct. 11, 2019) (holding that, even if prior incidents regarding defendant's possession of firearms led to probable cause to obtain a search warrant, those incidents were not so intertwined with the evidence of firearms found pursuant to the search warrant to justify their admission).

In prior filings, the government has argued that the deaths are relevant to Mr. Pooley's "foreshadowed defense that his scheme was of little consequence," and are therefore relevant to the materiality element of wire fraud.  *See* Dkt. 50 at 18.  Upon inspection, however, the deaths have no bearing on the materiality element of wire fraud.

First, saying that a "scheme was of little consequence" is not an attack on the element of materiality.  The wire fraud statute defines the legally relevant consequences of a scheme as whether the charged victims suffered a monetary loss.  Ninth Circuit Jury Instructions

Committee, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, 15.35 Wire Fraud (December 2023), Comment ("In *Ciminelli v. United States*, 598 U.S. 306, 308–09 (2023), the Supreme Court held that a jury was improperly instructed that the term 'property' in 18 U.S.C. § 1343 'includes intangible interests such as the right to control the use of one's assets' because 'the federal fraud statutes criminalize only schemes to deprive people of traditional property interests.'"). Thus, even assuming the death was a "consequence" of the fraud, the death is not relevant to the elements of wire fraud.

Second, looking to the Ninth Circuit's interpretation of "materiality," it is clear that the deaths do not make the alleged misrepresentations more or less material. According to the Ninth Circuit, "a false statement is material if it has a natural tendency to influence, or is capable of influencing the decisionmaker to whom the statement was addressed" to part with money or property. *United States v. Galecki*, 89 F.4th 713, 737 (9th Cir. 2023) (internal citations and quotations omitted); *see also* Ninth Circuit Jury Instructions Committee, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, 15.35 Wire Fraud (December 2023).

Here, the alleged misrepresentations to the Tandem Course candidates were that Mr. Pooley was a certified Tandem Examiner who could validly teach and obtain USPA and UPT certifications for them. The alleged misrepresentations were apparently material because the candidates indeed wanted valid certifications. The fact that Kwon and a customer died while tandem skydiving in August 2016 could not have affected the candidates' decision to "part with money or property" weeks earlier. *See* Dkt. 50, Ex. 8; ; Dkt. 50, Ex. 9; Dkt. 50, Ex. 18; Dkt. 50, Ex. 19; Dkt. 50, Ex. 20 (indicating that deaths occurred in August and candidates parted with money in June and July 2016). The deaths weeks after the alleged misrepresentations have no bearing on materiality.

### 2. The Deaths Have No Bearing on Witness Credibility

Excluding evidence of the deaths does not affect witness credibility or otherwise hamper testimony. It is an event that occurred during the time frame of the alleged offense, but is a wholly separate, independent occurrence that can be excluded from testimony without sacrificing

any facts relevant to the alleged scheme or witness's losses.

This is reflected in the summaries of interviews with the witnesses filed with this Court. In interviews, each witness discusses their knowledge and thoughts regarding the deaths because law enforcement asked them to, of course. However, the deaths, again, are independent from their decisions to take a Tandem Instructor Course with Mr. Pooley at the Parachute Center, the conversations leading up to the course, their expectations from that course, and whether those expectations were met.

The government would have the Court think otherwise, and has represented that Kwon's death is what led the alleged victims to realize they were defrauded and victimized, that the alleged victims asked for refunds from Mr. Pooley for the course *because of* the death, and that Mr. Pooley's apologies to the alleged victims were related to the death. *See* Dkt. 50 at 16. The witness interviews state otherwise.

According to the interviews, the fraud and victimization for each alleged victim centers around whether Mr. Pooley's examiner ratings were suspended when they took his course. This makes sense; the allegations are that they paid for a Tandem Instructor Course led by Mr. Pooley, which he did not have proper credentials to teach, and ultimately that they did not receive their Tandem ratings from that course. Indeed, each alleged victim states that he realized he had been defrauded after receiving notice from the USPA, or otherwise learning, that Mr. Pooley's credentials had been suspended when conducting the Tandem Instructor Course, or when they realized they would not be receiving their ratings – not because of the deaths. *See* Dkt. 50, Ex. 8; Dkt. 50, Ex. 18; Dkt. 50, Ex. 19; Dkt. 50, Ex. 20. Upon this realization, all but one alleged victim explain that they asked Mr. Pooley for a refund because they did not receive the ratings they paid for – not because of the deaths. *See* Dkt. 50, Ex. 8; Dkt. 50, Ex. 9; Dkt. 50, Ex. 18; Dkt. 50, Ex. 19. Those alleged victims who were asked whether they would have taken the course had he known Mr. Pooley's relevant credentials were suspended, replied that they would not. *See* Dkt. 50, Ex. 8; Dkt. 50, Ex. 9; Dkt. 50, Ex. 19; Dkt. 50, Ex. 20. As a result, any discussion of the deaths can easily be excised from witness testimony. Without it, testimony would not be rendered incomplete or confusing.

To be sure, in his interview with the government, Lachlan Morgan Mackay, referred to as Victim 7 in the indictment, claims that he did not ask Mr. Pooley for a refund after he did not receive his Tandem Instructor Rating because he was focused on the fact that two people had died. *See* Dkt. 50, Ex. 20. To the extent the defense opens the door to this line of questioning or uses the witness's failure to request a refund as a means to impeach him, such questioning may render the deaths relevant. Unless and until the defense opens that door, however, they are not relevant.

### 3. Excluding Evidence of the Deaths does not Distort Evidence

Much of evidence that may be relevant to Mr. Pooley's guilt of fraud and aggravated identity theft does not necessarily include discussion or reference to the deaths. As stated above, witness testimony can easily exclude reference to the deaths and still be cohesive and complete with regard to the alleged fraud scheme.

In addition, reference to the deaths is either absent or easily removable from other documentary evidence. For example, in USPA's press release regarding its acts to ensure proper tandem instructor certification, it references a fatal accident in the first five words of the document, and never again. *See* Dkt. 50, Ex. 13. Similarly, in a letter from USPA to Mr. Pooley dated August 10, 2016, the letter includes one sentence that acknowledges the deaths, and continues to discuss the subsequent investigation and Mr. Pooley's resulting suspension. *See* Dkt. 50, Ex. 14. A purported statement by Mr. Pooley does not mention the deaths at all. *See* Dkt. 50, Ex. 15. Finally, in an email chain between Mr. Pooley and Fabricio Palomino, referred to as Victim 1 in the indictment, Mr. Pooley states, "[y]ou have no idea how sorry I am that all of this has happened." This apology is rendered in response to Palomino explaining that he has no Tandem Ratings and is unable to perform jumps or make any money. *See* Dkt. 50, Ex. 17. No emails in the chain discuss the deaths of Kwon or the customer.

### B. Even if the Circumstances of the Deaths Provide Some Probative Value, Such Evidence Should be Excluded Under Fed. R. Evid. 403

As explained above, the details surrounding both deaths have minimal, if any, probative value to the government's case.

The danger of unfair prejudice, on the other hand, is incredibly high.  Of course, few facts provoke as emotional a response as the deaths of others.  Here, the details and timing of the deaths of Kwon and the customer, i.e. while tandem skydiving in August 2016 during the timeframe of the alleged fraudulent scheme, will undoubtedly lure the jury to declare guilt on grounds other than the proof needed to establish Mr. Pooley's guilt for wire fraud and aggravated identity theft.

Moreover, the government has made quite clear that it intends to imply, or outright argue, that Mr. Pooley is responsible for those deaths, calling them the "consequences of his fraud." *See* Dkt. 50 at 19, lines 9–12.  This further exacerbates the great danger of unfair prejudice, as it invites the jury to hold Mr. Pooley accountable for the tragedy of those deaths.  Such evidence is designed to create sympathy for the persons affected by the fatal accident and generate outrage toward Mr. Pooley.  This is exactly the type of evidence Rule 403 is designed to exclude.  *See United States v. Copple*, 24 F.3d 535, 546 (3d Cir. 1994) (excluding evidence of impact of losses caused by fraudulent scheme as unfairly prejudicial where it created significant risk that jury would convict defendant as a way of compensating victims without regard to evidence of defendant's guilt).

Even further, presenting evidence regarding the deaths creates the additional danger of confusing the issues, misleading the jury, undue delay, and wasting time.  Indeed, the presentation of such evidence would require the defense to rebut the government's claim that Mr. Pooley caused the deaths.  The rebuttal would include completely separate lines of questioning and additional defense witnesses regarding the minute details of the failure of Kwon's parachute to launch and the moments leading up to the deaths, the subsequent investigation into the accident and relevant findings, the nature of the training provided by Mr. Pooley during the Tandem Instructor Course, the applicable standards of safety training and emergency procedure training, Mr. Kwon's experience in the sport, and prior safety training by people other than Mr. Pooley.

The exorbitant amount of time spent on the cause of the deaths would create a mini-trial on a fact that is of no consequence as to whether Mr. Pooley engaged in a scheme to defraud and

related aggravated identity theft, or the credibility of any witness's testimony regarding the same. This focuses the jury on an emotional, irrelevant fact and diverts their attention from the evidence regarding the fraudulent scheme, thereby confusing the issues, misleading the jury, creating undue delay, and wasting time. *See e.g.*, *United States v. Singh*, 995 F.3d 1069, 1081 (9th Cir. 2021) (affirming limitation of cross-examination of witness's involvement in murder-for-hire plot, in part, under Fed. R. Evid 403 on grounds that a mini-trial on a collateral issue would confuse the issues and waste time); *United States v. Elysee*, 993 F.3d 1309, 1344–45 (11th Cir. 2021) (excluding evidence under Rule 403 where its admission would result in lengthy subsidiary trial).

As a result, to the extent evidence surrounding the deaths has any probative value, that value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time, and must be excluded under Fed. R. Evid. 403.

## V.   CONCLUSION

For the reasons stated above, the Court should exclude all details surrounding the deaths of Kwon and a customer as irrelevant under Fed. R. Evid. 401 or otherwise excludable under Fed. R. Evid. 403.

Dated: April 1, 2024                          HEATHER E. WILLIAMS
                                              Federal Defender

                                              */s/ Meghan McLoughlin*
                                              MEGHAN McLOUGHLIN
                                              MIA CRAGER
                                              Assistant Federal Defenders
                                              Attorneys for Defendant
                                              ROBERT ALLEN POOLEY