PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ROBERT ALLEN POOLEY,<br><br>　　　　　　　Defendant. | CASE NO.  2:21-cr-00111-WBS<br><br>**UNITED STATES' OPPOSITION TO POOLEY'S MOTION *IN LIMINE* #5 (TO EXCLUDE EVIDENCE OF 2014 SUSPENSION OF POOLEY'S TANDEM EXAMINER RATING)**<br><br>DATE: April 29, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |

　　　　The United States hereby submits its opposition to Pooley's Motion *In Limine* #5. For the reasons stated herein, the Court should deny the motion.

### I.　　　EVIDENCE OF POOLEY'S PRIOR SUSPENSION IS RELEVANT

　　　　Federal Rules of Evidence (FRE) 401 and 402 allow for the admissibility of any relevant evidence, defined as evidence that has any tendency to make a fact more or less probable than it would be without the evidence, and if the fact is of consequence in determining the action. *See* Fed. R. Evid. §§ 401- 402. A fact is "of consequence" if it makes it more or less likely that the defendant committed the charged conduct. *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020). "[T]he definition of relevant evidence is very broad" and "does not raise a high standard." *Moyer v. United Dominion Indus., Inc.,* 473 F.3d 532, 544 (3d Cir. 2007) (internal citations omitted).

　　　　While relevant evidence may also be evidence of an "other act," if it is inextricably intertwined

with the charged offenses, it is "independently admissible and exempt from the requirements of Rule 404(b)." *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (citing Fed. R. Evid. 404(b) advisory committee's notes, which state that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense"). Acts that are "intrinsic" to the charged offense "include evidence constituting a part of the transaction that serves as the basis for the criminal charge." *Id.* (citing *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012)). This evidence is also intertwined with the charged offenses insofar as it is "necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey*, 677 F.3d at 951; *Anderson*, 741 F.3d at 949-50 (explaining that "intrinsic evidence" includes evidence that is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime).

Contrary to Pooley's assertions, his prior, 2014 suspension is relevant for two separate reasons. First, it establishes a pattern of failing to follow USPA and UPT guidelines, which is at the core of his fraudulent conduct, and consequently refutes any mistake defense. Pooley was suspended in 2014 for failing to verify that one of his Tandem Instructor candidates had been skydiving for three years, which was a requirement of the Tandem Instructor Rating course. Similarly, he was suspended in 2015 for ongoing paperwork errors, as well as for violating USPA's Basic Safety requirements by training USPA members to conduct tandem jumps without a USPA Tandem Instructor rating or valid medical certification. Then, in 2016, Pooley again violated USPA and UPT guidelines by conducting Tandem Instructor courses despite the fact that his Instructor Examiner rating had been suspended. His 2014 suspension is one event in a continuing pattern of disregard of USPA/UPT directives, which is the same willful disregard Pooley demonstrated when he defrauded candidates into taking a Tandem Instructor course. This pattern establishes Pooley's knowledge that USPA/UPT guidelines applied to Tandem Instructor Ratings courses, and thus establishes the fraudulent nature of his scheme, and his intent to defraud, while also refuting any possible assertion that his actions in 2016 were a mistake. In short, evidence related to Pooley's 2014 suspension is admissible as being directly relevant to the charges. *See United States v. Mayans*, 17 F.3d 1174, 1182 (9th Cir. 1994) (Knowledge and intent are material issues "simply because the government ha[s] to prove them").

Second, Pooley's 2014 suspension resulted in him attending a full, Instructor Examiner

retraining during which it was reaffirmed to him that an Instructor Examiner must be present for all stages of a Tandem Instructor ratings course. This fact establishes that, when he conducted Tandem Instructor courses in 2016, he knew that he was violating the pertinent guidelines, and that his promises to obtain legitimate ratings for his candidates were false. More specifically, while Pooley's suspension was initially for up to 60 days, it was reduced to 10 days after Pooley took a "re-currency training" with National Director Jay Stokes. During the course of this 2014 re-training, Stokes and Pooley discussed requirements stated in both the USPA Instructional Rating Manual and the UPT Tandem Examiner Guidelines. In particular, under USPA guidelines, Pooley was instructed that, at the completion of a Tandem Instructor Rating course, a Tandem Instructor Examiner had to sign off on a proficiency card stating "I have personally examined and recommend this applicant for the USPA Tandem Instructor rating. He or she has demonstrated the ability to train and jump with tandem students and to train and supervise non-method-specific students for the USPAA license." Further, Pooley re-learned that, under UPT guidelines, a Tandem Instructor Examiner must be present during various stages of a Tandem Instructor Rating course. He was specifically advised that the course required a Tandem Instructor Examiner to be "present and participating during all certification processes," that tandem instructor candidates had to make at least five jumps under the direct supervision of a qualified and currently rated examiner, and that "[a]ny reports of examiners signing off on paperwork when in fact they were not present" would be "grounds for examiner rating revocation." Stokes is expected to testify regarding the instruction he provided in 2014, including the fact that he advised Instructor Examiner students that they must be physically present and attentive when training Tandem Instructor candidates, that he went over the aforementioned guidelines with Pooley, and that he provided an endorsement letter to USPA and UPT after the 2014 training that allowed for Pooley's Tandem Instructor Examiner rating to be reinstated.

    These facts demonstrate that, just over a year before his second suspension in 2015, Pooley knew that a currently rated Instructor Examiner had to be physically present and directly supervising candidates in a Tandem Instructor course. As discussed in the Indictment, Pooley's decision to conduct Tandem Instructor courses between May and August of 2016, after his Instructor Examiner rating had been suspended, and outside the presence of any other certified Tandem Instructor Examiner, was in

flagrant disregard of this explicit instruction. In other words, when Pooley conducted Tandem Instructor courses with paying students after his Instructor Examiner rating had been suspended, he knew that he was violating both USPA's and UPT's guidelines. He knew this in part due to his re-training with Jay Stokes, which was the result of his 2014 suspension. These facts again establish his intent to defraud his students and negate any potential defense that he merely misunderstood or misinterpreted those guidelines. Pooley's 2014 suspension, which resulted in his re-training by Stokes, is therefore relevant to establish his intent to defraud, and thus admissible evidence under FRE 401 and 402.

## II.   EVIDENCE OF POOLEY'S PRIOR SUSPENSION IS ALSO ADMISSIBLE UNDER FRE 404 (b)(2)

Alternatively, evidence of Pooley's 2014 suspension would also be admissible under FRE 404(b)(2). Federal Rule of Evidence 404(b) is a rule of inclusion that permits the government to introduce prior act evidence unless the *only* purpose of the evidence is to show criminal character. *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc); Fed. R. Evid. § 404(b)(1) ("[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") However, such evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. § 404(b)(2). "Once it has been established that the evidence offered" by the government is to establish the defendant's motive, intent, or knowledge, "the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403." *Curtin,* 489 F.3d 935 at 952-53.

A pattern of violating USPA/UPT guidelines is not a character trait, and the government is not introducing evidence of Pooley's 2014 suspension to show that he acted in accordance with any such character trait when he defrauded Tandem Instructor candidates in 2016. Rather, as explained above, the government intends to introduce evidence of his 2014 suspension to demonstrate his knowledge of the falsity of his representations, his intent to defraud, and the absence of mistake.

Even if it were considered character evidence, evidence of Pooley's prior suspension is nevertheless admissible under FRE 404(b)(2), which allows evidence of other acts when admitted for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident. *Id*. To be admitted, the evidence must satisfy the following four requirements: (1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases, the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir.1990).

In this case, evidence of his prior suspension and his consequent re-training is relevant to demonstrate his "intent" and "knowledge." *See* FRE 404(b)(2). Specifically, it shows Pooley's knowledge of USPA's and UPT's requirements, as discussed above. Knowledge is a specified permissible purpose for the admissibility of evidence of other acts under Rule 404(b), and is also an element of the charged offenses of wire fraud and aggravated identity theft. *See United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992) ("To sustain a conviction under the mail and wire fraud statutes, there must be sufficient evidence to show that the defendant "willful[ly] participate[d] in a scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved."); *United States v. Doe*, 842 F.3d 1117, 1119–20 (9th Cir. 2016) ("To prove a violation of § 1028A, the Government must prove beyond a reasonable doubt that…[t]he defendant knowingly transferred or used a means of identification of another person without legal authority"). Proof of his prior suspension and re-training will be provided through the testimony of Jay Stokes, as discussed above, as well as through documentary evidence, including USPA's letter suspending him and discussing his re-training, and USPA and UPT guidelines. Further, evidence of the 2014 suspension and retraining is not too remote in time, given that it occurred well into Pooley's Instructor Examiner career (Stokes initially trained Pooley in 2010), and occurred just over two years prior to the beginning of the charged conspiracy. Thus, the first, third and fourth factors discussed above are satisfied. *See Arambula-Ruiz*, 987 F.2d at 602.

As for the second factor, there are sufficient similarities between Pooley's 2014 suspension and the conduct that led to the charges in the indictment. In both 2014 and 2016 (when the charged conduct took place), Pooley failed to follow USPA/UPT guidelines. As explained above, this similarity establishes that his conduct in 2016 was not an isolated incident. Rather, at least in part due to his suspension in 2014, the evidence establishes that his conduct in 2016 involved knowing, intentional

misrepresentations. Thus, the second factor is also met. In any event, the Ninth Circuit has held that "similarity is not always a prerequisite to admissibility under Rule 404(b)." *See Arambula-Ruiz*. at 603. Specifically, "[w]hen offered to prove knowledge…the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Id*. (citing *United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1326 (9th Cir.1992)); *see also United States v. Miller,* 874 F.2d 1255, 1269 (9th Cir.1989). Because evidence of his prior suspension will be introduced to show that Pooley had knowledge of the falsity of his representations, similarity is not a prerequisite for admissibility.

For these reasons, Rule 404(b)(2) provides an additional basis under which evidence of Pooley's prior suspension should be admitted.

### III.   EVIDENCE OF POOLEY'S PRIOR SUSPENSION SHOULD NOT BE EXCLUDED UNDER FRE 403

Pooley's final argument rests on FRE 403, arguing that evidence of his prior suspension will unfairly lead a jury to convict him because "he has messed up enough and should be punished." This is not a reasonable concern. Rule 403 is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (internal citations omitted). "Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *Id*. (emphasis in original). "Unfair prejudice" is measured by the extent to which testimony "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982).  "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983)).

Pooley is not being prosecuted for being suspended too many times. He is being prosecuted for defrauding paying customers. It is not reasonable to believe that jurors would become so inflamed by Pooley's 2014 failure to follow USPA's/UPT's requirements that they would not be able to follow the

court's instructions as to the elements of the charged wire fraud and aggravated identity theft offenses. The potential danger of this exceedingly remote interpretation does not outweigh the probative value of the evidence, much less substantially so.

## IV.    CONCLUSION

For the aforementioned reasons, the Court should deny the motion.

Dated:  April 15, 2024                        PHILLIP A. TALBERT
                                              United States Attorney

                                        By:   /s/ DHRUV M. SHARMA
                                              DHRUV M. SHARMA
                                              Assistant United States Attorney