PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT ALLEN POOLEY,<br><br>　　　　　　Defendant. | CASE NO. 2:21-cr-00111-WBS<br><br>**UNITED STATES' OPPOSITION TO POOLEY'S MOTION *IN LIMINE* #1 (TO EXCLUDE EVIDENCE OF TANDEM SKYDIVING DEATHS OF FRAUD VICTIM AND A CUSTOMER)**<br><br>DATE: April 29, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |

### I.  INTRODUCTION.

The United States opposes Pooley's Motion *In Limine* #1 (Dkt. No. 62), which seeks an order that the tandem skydiving deaths of Yonghyeon Kwon, one of the charged victims, and a customer may not be referenced by witnesses, must be redacted in documents, and must never be mentioned at trial. The motion should be denied. Kwon's death is a relevant, inextricably intertwined, part of the story which cannot be excluded without creating a giant hole in the chronology. Kwon's tandem instructor card is the document that count five of the indictment is based on, and it was obtained by an FAA inspector investigating the deaths. In addition to the FAA, the deaths sparked investigations by the United States Parachute Association (USPA) and Uninsured United Parachute Technologies (UPT), and eventually led these organizations to permanently revoke Pooley's ratings, a process which led him to make various statements. Each of the fraud victim witnesses' recollections of finding out Pooley had

defrauded them and that they lacked valid Tandem Instructor ratings are inextricably tied up with learning Kwon had died.  The accident shaped several victims' behaviors in reaction to the topic subjects they will testify about.  Key pieces of documentary evidence would not make sense if the accident were excised from the story. The deaths provide context for Pooley' admissions of wrongdoing and his changing stories, which further demonstrate intent.  The evidence is relevant.

Because the fact of the deaths is relevant, evidence of them can only be ordered excluded if the probative value "substantially" outweighs the danger of "unfair" prejudice, wasting time, or other specified dangers.  Pooley has not demonstrated any of those dangers, let alone that the danger is so substantial that it would justify ordering the deaths artificially excised from the story, distorting the facts of the government's case and rendering the evidence confusing and questionable.  This is especially true since the government does not plan to elicit the technical parachuting operation reason for the deaths, the mistake that led to the deaths, or any details such as pictures or videos pertaining to the deaths.  Likewise, the government does not plan to argue that Pooley was responsible for the deaths.  The government will refer to the skydiving customer only as a tandem customer, because that is the customer's relevance to these charges, and stay away from biographical details.  The bare fact that Kwon and his customer died in a tandem skydiving accident on August 6, 2016 has relevance which is not substantially outweighed by a danger of unfair prejudice or any other danger cognizable under Rule 403.  Objections to questions that go beyond this can be made and addressed at trial.  And, if after hearing the evidence, the Court believes a jury instruction would be helpful, that would be an option.  The motion in limine, which would exclude relevant evidence and distort the case narrative, should be denied.

## II.    FACTUAL BACKGROUND.

Numerous aspiring Tandem Instructors paid Pooley to take his Tandem Instructor course, believing based on Pooley's representations, actions, and material omissions, that Pooley was a certified Instructor Examiner (IE) with the ability to teach the course and provide them ratings they could use to tandem skydive with paying customers.  Indictment, ¶¶ 20-24.  In reality, Pooley's ratings and accordingly his ability to teach Tandem Instructor courses had been suspended in August 2015 (retroactive to July 2015).  Indictment, ¶¶ 20-24.  Shortly thereafter, Pooley devised a scheme to

continue teaching classes and holding himself out as a certified IE, and conceal his suspension from students and prospective students, to keep making money. Indictment, ¶ 24. Pooley decided to use the pre-printed signature of Y.G., who did hold a valid IE certification, on the USPA and UPT paperwork, to obtain ratings for the tandem instructor candidates through fraud, which avoided detection of his scheme. Indictment, ¶ 25. The period of time charged in the indictment covers the period that Y.G. was out of the country and could not have been present, and ends with the date of Kwon's death. Indictment, ¶¶ 26-27.

The government will call various fraud victims who took Pooley's Tandem Instructor courses, including victims who took different courses than Kwon over the summer of 2016 but stayed at the Parachute Center over an overlapping time period and knew Kwon, and victims who took the same course as Kwon and can testify as to statements Pooley made to the entire class. After completing the course, some (purported) tandem instructors who Pooley had fraudulently certified, including Kwon, stayed on at Parachute Center jumping with paying customers.

On August 6, 2016, Kwon died in a tandem skydiving accident along with a customer. Indictment, ¶ 4. The deaths sparked immediate investigations. The government victim-witnesses will testify they learned essentially simultaneously through the small parachuting community that Kwon had died and Pooley had not been validly licensed to teach their course, and, accordingly, that they did not have valid certifications. USPA likewise swiftly acted in the wake of the accident. *See, e.g.,* Exhibit 1 (public communications from USPA to the public and victims). Certain victims' communications with Pooley afterwards, or decisions not to communicate with Pooley, were influenced by Kwon's death, as discussed in prior government filings. *See* Indictment, ¶ 38.

The FAA investigated. FAA Inspector David Jensen went to Parachute Center days after the incident, and obtained Kwon's Tandem Instructor card from Bill Dause, the head of Parachute Center. *See* Indictment, ¶ 32, page 10. Exhibit 2 (Jensen's notes of interview with Bill Dause and Kwon's USPA and UPT documents). At trial, Inspector Jensen will authenticate that card, which bears Y.G.'s signature and is the basis of the aggravated identity fraud charged in count 5. FAA Inspector Jensen will also testify at trial as to statements Pooley made when Jensen interviewed him and confronted him with the card. Inspector Jenson's report recounts that Pooley "had no answer except he stated Bill Dause

handles all the paperwork." Inspector Jensen's notes further include: "Asked Mr. Pooley about his USPA examiner's rating being suspended by the USPA since July 2015 and was not authorized to conduct tandem courses. Mr. Pooley had known of this suspension and had no answer except he stated he figured it would be automatically reinstated after a years' time." Exhibit 3 (Jensen's notes of interview with Pooley).

USPA also launched an investigation and ultimately revoked all certifications of Dause, Pooley, and Y.G. Pooley wrote two letters to USPA exonerating Y.G., which will be admitted at trial as evidence of Pooley's own intentional use of Y.G.'s signature and scheme to defraud. *See* Exhibit 4 (two letters from Pooley explaining he had taught students including deceased victim Kwon and used Y.G.'s signature without Y.G.'s knowledge).

The family of the deceased tandem customer sued Parachute Center and individuals associated with it, and deposed Dause, Pooley, and Y.G. The government will use clips from Pooley's videotaped deposition affirmatively in its case-in-chief, and clips from various videotaped depositions could be admitted to impeach if the deponents testify inconsistently with them.[1] The government will also admit clips and statements by Pooley in interviews conducted by special agents of the Department of Transportation – Office of Inspector General. By the time of those later interviews, Pooley had changed his story and come up with more specific and different excuses and interpretations of the USPA and UPT regulations and the law than he had in his initial interview with Jensen, in which he "had no answer."

### III.   ARGUMENT

**A.   Evidence of Kwon's death is relevant and inextricably intertwined with the rest of the evidence in the case.**

Kwon's tandem skydiving accident, which occurred during the charged fraud and was the precipitating event that brought it to light and impacted numerous witnesses' behavior, is properly admissible as evidence of the charged scheme to defraud and inextricably intertwined with it. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be

---

[1] These videos are lengthy and have all been produced in discovery. If the Court wishes to view any prior to the time the government submits its trial exhibits, the government will be happy to lodge copies.

without the evidence. Fed. R. Evid. Rule 401. Relevant evidence is admissible. Fed R. Evid. Rule 402. Here, the evidence of the accident is relevant both because it tends to make elements of the offense more probable and because it is inextricably intertwined with other evidence in the case which does so.

      1.    Kwon's death in a tandem skydiving accident is part of the crime charged and tends to make elements of the crime more probable.

With respect to wire fraud, the government must prove elements including (as relevant here) that (1) Pooley participated in a scheme to defraud by means of false or fraudulent statements or material omissions; and (2) that Pooley acted with the intent to defraud, that is, the intent to deceive or cheat. *See* Ninth Circuit Model Jury Instruction 15.35 (Wire Fraud). The indictment charges that Pooley falsely led students to believe they could legitimately believe their tandem instructor rating through his courses. as someone who could provide skydivers their tandem instructor ratings. Indictment, ¶ 30, 31. The fact that Kwon was conducting tandem skydives as an instructor tends to make it more probable that he believed he was a certified tandem instructor, which makes it more probable that Pooley, Kwon's Instructor Examiner, led Kwon to believe that through material false statements and omissions. The tandem accident also speaks to Pooley's intent and knowledge. Knowledge and intent are material issues "simply because the government ha[s] to prove them." *United States v. Mayans*, 17 F.3d 1174, 1182 (9th Cir. 1994). Kwon was conducting tandem parachute jumps with paying customers during a time period that Pooley was present at the Parachute Center and after Pooley had trained him in a Tandem Instructor course. Yet Pooley, knowing he had provided Kwon a bogus certification, failed to clear up that Kwon was <u>not</u> in fact a certified tandem instructor or otherwise stop him. The fact that Pooley allowed Kwon to continue jumping with customers tends to make it more probable that Pooley deceived Kwon knowingly with intent to defraud.

      2.    Kwon's tandem skydiving accident is necessary to enable the government to offer a coherent and comprehensible story regarding the commission of the crime.

This evidence is also intertwined with the charged offenses and admissible because it is "necessary ... to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012). *See also United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) ("It is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the

events surrounding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995) (explaining that "intrinsic evidence" includes evidence that is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime). The government may offer "a coherent and comprehensible story regarding the commission of the crime." *United States v. Hicks*, 103 F.3d 837, 844 (9th Cir. 1996), overruled on other grounds by *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir.1984)).

The fact of Kwon's death in a tandem skydiving accident on August 6, 2016 fits squarely within this category, as it is necessary to present a coherent and comprehensible story of the classes through which the defendant carried out his fraud and the victims' realization of the fraud. The accident also shaped and caused much of the government's evidence to be created. *See Anderson*, 741 F.3d at 950 (affirming admission as intrinsic evidence a sale six months after the charged conduct which "explained the circumstances leading up to [the defendant's] arrest, where the government obtained additional evidence"). For these reasons, the Court should admit evidence of the deaths as relevant and probative under Rules 401 and 402.

The Supreme Court's relevance analysis in *Old Chief,* 519 U.S. 172 (1997), and its progeny, elaborate on and reify this principle, and are instructive. Those cases establish that the full factual narrative of a case is relevant and admissible, and preclude Pooley's attempt to misleadingly sanitize the facts by moving in limine to prevent reference to important facts he finds inconvenient. In *Old Chief,* the Supreme Court held that a defendant charged with being a felon in possession of a firearm could stipulate to the fact of his prior felony conviction and thereby prevent the prosecution from introducing evidence about his past crime. Because the fact of the defendant's prior conviction was "wholly independent[ ] of the concrete events of later criminal behavior charged against him," excluding evidentiary details of that past crime "would not deprive the prosecution of evidence with multiple utility." 519 U.S. at 190. The Supreme Court in *Old Chief* made clear, however, that this was a narrow

exception to the "familiar, standard" and "accepted rule" that "the prosecutor is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186–87. This "accepted rule" allows the Government to tell a coherent story and enables the jury to draw reasonable inferences with confidence. As the Court explained:

> [M]aking a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness…. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

*Id.* at 187.

The *Old Chief* Court also noted that artificially excising evidence from the story could hurt the government by causing jurors to speculate about holes in the narrative and unanswered questions. The Court reasoned that the government's right to choose its evidence also allows the prosecution "to satisfy the jurors' expectations about what proper proof should be," thereby avoiding speculation about why certain evidence was not presented. *Id.* at 188–89. "People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Id.* at 189. The Ninth Circuit and district courts within it have followed this reasoning to hold, for example, that the government must be allowed to show images of child pornography rather than simply stipulating that the images possessed by the defendant were child pornography cases. *See e.g.*, *United States v. Storm*, 915 F. Supp. 2d 1196, 1199–200 (D. Or. 2012), *aff'd*, 612 F. App'x 445 (9th Cir. 2015).

Here, if the Court ordered that the jury should not know that Kwon and his customer died in a skydiving accident, the jury would indeed be puzzled and doubtful by all the unanswered questions and gaps in the story that would create. The jurors would wonder what caused Pooley's scheme to come to light, why USPA and UPT revoked Pooley's and the victims' ratings, why Kwon is not testifying, why

the victim-witnesses look coached, are being asked leading questions, and sound like they are talking around something when discussing how they learned of the fraud and what they did afterwards,[2] why FAA inspector Jenson (who is not a member of the prosecution team) was at the Parachute Center in the first place in August 2016, why FAA inspector Jensen asked Dause for Kwon's Tandem Card, why Pooley made many admissions of wrongdoing to Jensen, other investigators, and the attorneys for the deceased customer, and many more questions.  To exclude the fact of the accident would create doubt, and damage the government's ability to carry its burden of proving its case beyond a reasonable doubt to 12 jurors.

In addition to avoiding holes in the narrative and avoiding creation of doubt, the evidence of Kwon's death should be admitted because it has "multiple utility," meaning that it bears directly on an element in the case.  *See Old Chief*, 519 U.S. at 190, *Storm*, 915 F. Supp. at 1200.  Specifically, as discussed above, the fact that Kwon was skydiving with a customer as a tandem instructor tends to make it more likely that Pooley made false statements to Kwon that he could and had legitimately qualified Kwon as a tandem instructor, and the fact that Pooley permitted this to continue for over a month demonstrates that Pooley made those representations knowingly and with intent to defraud.

### B. **Pooley may not excise Kwon's death from the case under Rule 403, because its probative value to the story is not substantially outweighed by the danger of any of unfair prejudice, misleading the jury, undue delay, or wasting time.**

1. The probative value is not substantially outweighed by the danger of unfair prejudice.

Rule 403 does not justify exclusion of this evidence.  "Rule 403 . . . is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)).  For it to apply, "the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *Id.*  "Unfair prejudice" is measured by the extent

---

[2] Frankly, avoiding the accident through leading questions on important topics and the witnesses sounding coached and evasive is an optimistic scenario.  It is doubtful whether lay victim-witnesses will be able to avoid any mention of the event that, to them, is a pivotal moment and the honest answer to many questions.  The government has serious concerns about the witnesses' abilities to follow an order that the death not be mentioned at all and is concerned that issuance of the order that Pooley seeks would pose substantial risk of a mistrial due to the likelihood a witness will accidentally slip up.

to which testimony "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982).

Where the evidence squarely relates to matters before the jury and is not "wholly apart" from the matters before the jury, almost by definition, admission of it would not be "unfair." Defendants have the right under Rule 403 to have evidence wildly afield of their charges restricted, but do not have a right to a sanitized, inaccurate, counter-reality with respect to the chronology and evidence of their crime. Thus the Supreme Court has noted that "the prosecutor's choice [whether to stipulate or admit actual documentary and testimonial evidence] will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative" with respect to the thoughts and actions at issue in the offense for which he is being tried. *Old Chief,* 519 U.S. at 192.

In a well-reasoned on-point case, the Northern District of California denied defendant PG&E's motion to exclude evidence of the deadly San Bruno gas explosion, as relevant and not unduly prejudicial, engaging with Old Chief and explaining that applied equally even when the evidence may provoke an emotional response:

> Moreover, the Supreme Court explained in *Old Chief* that, as the party with the burden of proof, the prosecution has a "need for evidentiary richness and narrative integrity in presenting a case." 519 U.S. at 183. This remains true even when the evidence may produce an emotional response. *See United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir.2008) ("The court is not required to scrub the trial clean of all evidence that may have an emotional impact."). And this is especially true where the challenged evidence goes to the law's very foundation: "[T]he evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment." *Old Chief*, 519 U.S. at 187–88. As PG&E knows well, avoiding accidents like the San Bruno explosion is the very purpose of the Pipeline Safety Act. 49 U.S.C. § 60102(a)(1).

*United States v. Pac. Gas & Elec. Co.,* 178 F. Supp. 3d 927, 944 (N.D. Cal. 2016). Here, just as in the *PG&E* case, avoiding skydiving deaths is the very point of the regulations Pooley violated. And, just like in *PG&E*, the court should not exclude the deaths, but rather consider the evidence on a "case by

case basis" to prevent the undue risk of prejudice, by limiting gratuitous details should the government seek to admit any (which the government does not intend to do). *See id*. at 944-45.

Indeed, stating the fact of Kwon's death in a skydiving accident and the date is far less prejudicial than much of the evidence which had been admitted pursuant to Rule 403 balancing and *Old Chief*. For example, in *United States v. Storm*, the Ninth Circuit affirmed admission of 38 images of child pornography, despite the defendant's request to stipulate, and held that refraining from showing the full 97 slides containing child pornography constituted adequate Rule 403 weighing by avoiding the presentation of cumulative evidence. 915 F. Supp. 2d at 1199–2000. The district court in *Storm* held that redacting or distorting the images of the sexually abused children in government exhibits was not necessary or appropriate in a prosecution for knowingly possessing images of child pornography, because the faces of the children may have had evidentiary import, particularly as the prosecution had prepared comparison slides involving photographs of defendant's students and images of child pornography, and redacting the images could have distorted the narrative arc of the prosecution's case in a manner that was unfair to the government. *Id*. at 1196 (D. Or. 2012).

The Third Circuit likewise has found no abuse of discretion in admitting evidence of the death of a teenager, including death scene and autopsy photographs, in defendants' prosecutions for wire fraud, health care fraud, conspiracy, and making false statements to federal agents, since the probative value of that evidence outweighed the prejudicial effect in that the evidence of the teenager's physical condition at the time that she died—weighing 42 pounds and with bedsores—was "highly and uniquely probative" of the defendant's failures to monitor the safety of at-risk children. *United States v. Manamela*, 463 F. App'x 127, 131 (3d Cir. 2012).

The bare, relevant, fact that Kwon died in a skydiving accident on August 6, 2016 does not rise to nearly the level of the substantiality or arguable unfairness of prejudice in these cases in which admission of the evidence has been held to be proper. The defendant's argument that Rule 403 warrants exclusion of this relevant evidence is without merit.

        2.        Pooley's suggestion that he himself will launch a mini-trial on the cause of the death if the jury is allowed to know it occurred is not a valid basis to exclude the evidence under Rule 403.

Pooley argues that Kwon's death should be excluded because its probative value is substantially outweighed by a danger of wasting time because, if the Court does not order that it not be acknowledged by counsel, or witnesses, and redacted from documents, the defendant himself would spend an "exorbitant" amount of time on "completely separate lines of questioning and additional defense witnesses regarding the minute details of the failure of Kwon's parachute to launch and the moments leading up to the deaths, the subsequent investigation into the accident and relevant findings, the nature of the training provided by Mr. Pooley during the Tandem Instructor Course, the applicable standards of safety training and emergency procedure training, Mr. Kwon's experience in the sport, and prior safety training by people other than Mr. Pooley."  Mot. at 7.

      It seems unlikely Pooley would attempt to carry out his threat to consume significant amounts of time on Kwon's death, since it is hard to imagine how this strategy could benefit Mr. Pooley.  But in any event, the government will not open the door to such a mini-trial on the cause of Kwon's death and the Court should not permit the defendant to embark on one.  The government does not intend to argue or introduce evidence designed to show that Pooley caused Kwon's death.  Rather, the government simply expects to elicit evidence that Kwon died on August 6, 2016 in a tandem skydiving accident with a customer, and that these deaths led to the investigation into Pooley and discovery and creation of pieces of evidence related to his wire fraud and identity theft charges.  These facts will not open the door to a mini-trial on the issue of causation and no such mini-trial should not be permitted.  PG&E mounted exactly the same argument as the defendant makes here, and the court rightly dismissed it.  *See Pac. Gas & Elec. Co.*, 178 F. Supp. 3d at 945 ("As discussed above, however, the Government is not permitted to argue that PG&E's recordkeeping or maintenance caused the explosion, so PG&E's concerns [that

//

//

//

//

U.S. OPP. TO DEF'S MIL #1         11

admission of the deadly accident would cause an extended trial on the topic warranting exclusion under Rule 403] are unwarranted"). This Court should conclude similarly.

### IV. CONCLUSION

The government respectfully recommends that the Court deny the motion.

Dated: April 15, 2024                                    PHILLIP A. TALBERT
                                                         United States Attorney

                                                    By:  /s/ KATHERINE T. LYDON
                                                         KATHERINE T. LYDON
                                                         Assistant United States Attorney