```
             IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA


 United States of America,
         Plaintiff,

 vs.                              Sacramento, California
                                  No. 2:21-cr-00111
 Robert Allen Pooley,             Mon., Feb. 13, 2023
         Defendant.               9:00 a.m.
 _____/

                     TRANSCRIPT OF HEARING
       BEFORE THE HONORABLE WILLIAM B. SHUBB, SENIOR JUDGE
                          ---oOo---


 APPEARANCES:

  For the Plaintiff:         United States Attorney
                             501 I Street, Suite 10-100
                             Sacramento, California  95814
                             By:  Christopher Stanton
                             Hales
                             Katherine Theresa Lydon
                             Assistants U.S. Attorney


  For the Defendant:         Office of the Federal
                             Defender
                             801 I Street, 3rd Floor
                             Sacramento, California  95814
                             By: Hannah Rose Labaree
                             Assistant Federal Defender



  Official Court Reporter:   Kimberly M. Bennett,
                             CSR, RPR, RMR, CRR
                             501 I Street
                             Sacramento, CA 95814



  Proceedings recorded by mechanical stenography, transcript
  produced by computer-aided transcription
```

1            (Call to order of the court, 9:01 a.m.)
2            THE CLERK:  Criminal 21-111; United States versus
3    Robert Allen Pooley.
4        Counsel, please state your appearances.
5            MR. HALES:  Good morning, Your Honor.  Christopher
6    Hales and Kate Lydon on behalf of the United States.
7            MS. LABAREE:  Good morning, Your Honor.  Hannah
8    Labaree for Mr. Pooley, who is present and out of custody.
9            THE COURT:  What is the status of this matter?
10           MS. LABAREE:  Your Honor, I believe the government is
11   asking for a trial date in September.  I would be asking for a
12   trial date later than that based on my schedule, based on the
13   fact that I don't know yet who my cocounsel is going to be, and
14   there is really a massive amount of discovery in this case my
15   cocounsel is going to have to come up to speed with.  So my
16   request for a trial date would be in early 2024.
17           THE COURT:  Mr. Hales, what do you think about that?
18           MR. HALES:  So the government's request for September
19   is sort of geared off of two things.
20       Prior to this hearing, Your Honor, Ms. Labaree and the
21   government had spoken and she had asked for additional time to
22   set another status.  Our request to set trial in September was
23   geared towards, you know, setting something on the calendar,
24   but giving enough time for the defense to get through the rest
25   of the discovery and prepare.  The case has been around for

1  some time and that's why we'd like to set it in September,
2  putting us about seven months out.  The discovery is about
3  20,000 pages.  There are 800 megabytes of materials that we --
4          THE COURT:  I can't imagine 20,000 pages of anything.
5  Now, I mean, there may be 20,000 pages, but are they relevant?
6  Does counsel have to look at all 20,000 pages in order to
7  defend this case?  That's the question.
8          MR. HALES:  Well, I think the parties might differ a
9  bit in that regard.  From the government's perspective -- a lot
10 of that, from our perspective, is not relevant because the
11 investigation went into other areas that didn't involve
12 Mr. Pooley as much and aren't charged here.
13    I think from the defense perspective they feel like -- I
14 don't want to speak too far for Ms. Labaree, but I assume she
15 feels like she needs to go through that material and --
16         THE COURT:  Well, I assume somebody has gone through
17 this material because it was filed in 2021, and so that's been
18 two years that somebody has had the opportunity to go through
19 this.  And I assume Ms. Labaree or -- Ms. Crager was on this
20 case before?
21         MS. LABAREE:  Well, this has really been my case.
22 Ms. Crager was sort of babysitting it for me when I was on
23 parental leave.  But I have gone through the material.
24         THE COURT:  I assume you have, and you're going to
25 know what your cocounsel is going to have to look at and it's

1    not all 20,000 pages.
2           MS. LABAREE:  Well, if I could just make my record on
3    it, Your Honor.
4       You know, I have gone through the discovery.  We've been
5    diligent in our duty.  The issue is that -- twofold.  First, I
6    don't know who my cocounsel is going to be.  And many lawyers
7    in my office right now have a number of trials coming up.  And
8    so I want to give maximum flexibility to identify somebody for
9    whom the trial date will work.
10      And there is a good amount of material to come up to speed
11   with here.  Whether or not the full 20,000 pages is going to
12   come directly at relevant issues in trial is another thing.
13   Certainly what the government thinks is relevant to prove their
14   case is not always directly one to one with what the defense
15   can use to craft a good defense.  And so, you know, we are very
16   interested in having cocounsel be able to come up to speed with
17   the discovery as it's been produced.
18      I was on parental leave from early January through July of
19   last year, so that while this case has been pending there is a
20   good chunk of time in there when me and Mr. Pooley were not
21   able to work directly together.
22      Just before I went on leave, I sent a pretty extensive
23   request inquiring about various points of discovery regarding
24   some of the technological aspects of it, what the particular
25   file formats were that we were confused by, me and my

1  paralegal, and needed help with.  And we received a response
2  from the government, I believe, if my records are correct, in
3  April of -- when I was on parental leave.  So when I got back,
4  I met with my paralegal and we were able to work through what
5  those answers were and we were able to make more sense of it.
6       The defense does continue to have investigation to do.  And
7  so, you know, for example, right now the government counsel
8  asked me how many days do we need for trial.  I simply do not
9  know because I don't have yet our witness list anywhere near
10 done.
11           THE COURT:  You know --
12           MS. LABAREE:  I don't understand -- I don't know how
13 many days we would need.
14           THE COURT:  But if you put this over a year, which is
15 what you want to do, all kinds of things can happen between now
16 and then; somebody else can go on parental leave; there can be
17 another COVID wave; anything could happen to individuals during
18 that period of time.  So it just becomes a perpetual problem.
19 I'll put it over another year, but, you know, whether I'll be
20 here by then -- I'm 85 years old -- you'll have another judge,
21 you'll have another lawyer.
22      The case doesn't look to me to be that complicated, really.
23 I mean, I've looked at the indictment.  It's a pretty simple
24 alleged scheme.  It sounds like the scheme is that they weren't
25 qualified to teach people to be instructors and they

1  represented that they were qualified, and some people gave, as

2  federal cases go, a pretty small amount, a few thousand

3  dollars, in order to take these courses.  And that seems to be

4  the case.  20,000 pages?  I mean, I don't know.  That -- that

5  doesn't seem to me to be that complicated.

6      So I'll put it over a year and I'll just forget about it

7  between now and 2024.  I don't even want to see a calendar.

8              THE CLERK:  Okay.

9              THE COURT:  You give me a calendar.  2024?  Who knows

10 what will be happening in 2024.

11     And then you've got Mr. Pooley.  Now, I'm sure this is

12 affecting his life, and to have this thing hanging over his

13 head year after year after year has got to be really stressful.

14 So it's not just the government, it's not just the attorneys,

15 there are the defendants in these cases who I would think would

16 like to get the matter behind them.

17     If he thinks he's got a defense, he wants to present it to

18 a jury and have it decided.  And if he doesn't think he has a

19 defense, he probably wants to work something out to get the

20 thing behind him.

21     So that is where you stand.  If you want -- I'm not going

22 to argue with you if you want to put it over to 2024, but it

23 doesn't -- my intuition tells me that it ought to be sooner.

24     The other thing is, as long as we're here, you've got this

25 aggravated identity theft count.  And it was interesting to me

1  that in another case that I had, the government took the
2  position that the phrase "without lawful authority" didn't mean
3  that the defendant had no authority from the person whose
4  identity he stole, it meant that he didn't have authority to do
5  what he was doing; in other words, he was committing a crime.
6  And so I had another case in which two coconspirators -- and it
7  may have been your case --
8             MR. HALES:  No, I don't think it was mine, Your
9  Honor.
10            THE COURT:  But two coconspirators got together and
11 one of them used the other one's credit card in furtherance of
12 the conspiracy.  And the government took the position that that
13 was without lawful authority.  And defense counsel said he had
14 done the research, the government cited the case, and everybody
15 agreed that that was enough.  So you can have aggravated
16 identity theft if one coconspirator uses the credit card or
17 identification of another coconspirator with that other
18 coconspirator's permission.
19    So now it looks like what you've got here is you add one
20 more thing, and that is a signature can be a means of
21 identification.
22            MR. HALES:  That is accurate.
23            THE COURT:  Okay.  So here we are.  Now, I have
24 hardly ever seen a wire fraud case that didn't involve some
25 documents with a signature on it.  Take any mortgage case.

1  Take anything.  So every wire fraud case becomes an aggravated
2  identity theft case.  And that's really unusual.  And they call
3  it identity theft but it's -- it has nothing to do with
4  identity theft.  And so there you are.  And it has a
5  consecutive sentence.
6      And I think it's mandatory, right?
7          MR. HALES:  It's mandatory, yeah.
8          THE COURT:  So there you are.
9      Now, by the time you get to 2024, some court is probably
10 going to say there is something wrong with this theory.
11 That -- so that just -- if you're going to go that far into the
12 future, you ought to be thinking about that.
13         MR. HALES:  Well, can I clarify, Your Honor, this
14 case?
15     So, Your Honor is right about the Ninth Circuit law.  It
16 comes from a passport case where I think one brother used the
17 other brother's passport, and that was where we got the law
18 Your Honor is talking about.  In this case, the government
19 expects evidence to be presented that Mr. Pooley did not have
20 the authority to be using the signature of the person whose
21 signature we allege he was using on these forms.
22         THE COURT:  But he's Person No. 2, right?
23         MR. HALES:  Correct.
24         THE COURT:  Person No. 2 is -- maybe didn't give
25 authority on a particular occasion to use his signature, but it

1    sounds like he's part of the conspiracy from the rest of the
2    indictment.
3             MR. HALES:  I think that's going to be a -- probably
4    a factual contention between the parties.  Our contention will
5    be that that signature was used without his permission, while
6    documents show that he was actually out of the country, in
7    Russia or elsewhere --
8             THE COURT:  Without your permission is something
9    different than over your objection.
10            MR. HALES:  I guess you can't object if you don't
11   know it's being used.
12            THE COURT:  Or if it's part of the conspiracy and
13   just assumes that they're going to use his name on documents.
14            MR. HALES:  Yeah.
15            THE COURT:  But even -- but take the average mortgage
16   case.  There are a lot of --
17            MR. HALES:  In those, the people were mostly signing
18   on their own.  It's like their own 1006 loan application.
19   Right?  Like, I make $15,000 a month and it's a lie.  So that
20   --
21            THE COURT:  I know, but somebody else uses it, you
22   see?  You see what I'm saying?  Somebody makes a false
23   statement on a loan application or something else, and one of
24   the coconspirators uses it, he causes it to be mailed, he
25   causes it to be sent in.

1    MR. HALES: I see. I don't think -- I'm not aware of
2  a case where that active mailing in something that, you know,
3  someone else has signed in their own name has been used as ag
4  ID theft. And that's definitely not what the government is
5  trying to do in this case.
6            THE COURT: All right. Well, at least it's not that
7  bad. But if a signature is a means of identification, and if
8  that Ninth Circuit case where the -- the brothers used their --
9  each other's identification holds up, the logical progression
10 would be anything -- if you use anything with a signature of a
11 real person on it to do an illegal act, you have committed
12 aggravated identity theft. That would be the logical
13 extension.
14            MR. HALES: Yeah. And from a public policy
15 standpoint, that slippery slope, I totally get it, but this
16 case is not a part of that slippery slope. Like, the way the
17 government is arguing it is, the other guy is out of the
18 country, Mr. Pooley is using his signature on these forms
19 without his permission.
20            THE COURT: That is different. He doesn't approve of
21 it. He doesn't -- he would not approve of it if he knew.
22            MR. HALES: Yeah. That's -- yeah.
23            THE COURT: All right. Well, pick a date in 2024
24 then.
25            MS. LABAREE: I request to be early February.

```
 1              THE COURT:  All right.
 2              THE CLERK:  February 6th or 13th.
 3              MS. LABAREE:  6th is fine.
 4              THE COURT:  All right.  February the 6th.
 5       How about a date for trial confirmation?
 6              MR. HALES:  The government -- I'm just interjecting.
 7   I think normally we do about four weeks.  In this case we'd
 8   request about six weeks out, if possible, because of the
 9   holidays, among other things.
10              THE COURT:  Six weeks out is going to be during the
11   holidays.
12              MR. HALES:  It might be right -- I guess right before
13   the holidays.
14              THE CLERK:  18th December.
15              MS. LABAREE:  That's fine.
16              MR. HALES:  Yeah.
17              THE COURT:  What date are you picking?
18              THE CLERK:  December 18th, Your Honor.
19              THE COURT:  Everybody will be out of town December
20   the 18th.  You know how it is.
21              THE CLERK:  11th?
22              THE COURT:  How many people were here December 18th
23   of this year?
24              MR. HALES:  I was.  And I'll probably be here this
25   year, too.
```

1              MS. LABAREE:  We can do a week earlier.

2              THE COURT:  I don't care.  I don't care.

3              MR. HALES:  I'm fine to do it a week earlier.

4              THE COURT:  Do it a week earlier.

5              THE CLERK:  The 11th.  December 11th.  9 o'clock.

6              THE COURT:  So the Court has to deal with excludable

7    time now, and why don't you make your record on that.

8              MS. LABAREE:  Your Honor, the defense is going to

9    need additional time to do investigation and preparation for

10   trial, we're going to need to get cocounsel up to speed in

11   reviewing the up to 20,000 pages of discovery, and for that

12   reason we would ask for a T4 exclusion for continuity of

13   counsel and defense preparation.

14             THE COURT:  All right.  The Court will find

15   excludable time under Local Code T4 for the reasons stated.

16        Mr. Hales and Ms. Lydon, you'll prepare the order?

17             MR. HALES:  Yes, Your Honor.  We can prepare an order

18   for the Court's signature.

19             THE COURT:  All right.  Have you talked about some

20   sort of a settlement of the case?  Maybe you want to do that

21   between now and --

22             MR. HALES:  Well, I -- yes, Your Honor, in the sense

23   that the government did, in October of last year, make a plea

24   offer which is now expired.

25        And so just to be clear on the record, for right now the

1  government wants to make clear that offer is expired.  All
2  outstanding plea offers are withdrawn.  That's where we are.
3       We are also meeting on Wednesday with Ms. Labaree to show
4  some discovery that's been made available since near the
5  beginning of the case, and we've provided a discovery index.
6       So I can tell the Court I think we'll be talking, and we
7  are trying to do things that will, you know, either lead to a
8  resolution or help streamline what we're going to do at the
9  trial when it comes.
10          THE COURT:  All right.  Well, as I said, I would
11 think that Mr. Pooley wants to get this matter behind him.  So
12 with that end in mind, you might continue with your discussions
13 with the government.
14          MS. LABAREE:  Understood.  Thank you.
15          THE COURT:  Anything else?
16          MR. HALES:  Yes, Your Honor.  Just to say this.  We
17 were going to ask to set a schedule for Rule 12 motions in this
18 case and there was a difference of opinion between the parties
19 about when to set those.
20          THE COURT:  Was the Rule 12 motion on the aggravated
21 identity theft?
22          MR. HALES:  Well, it may be now after our discussion.
23 We'll see.  But I think, given that the trial has been set so
24 far out, what I'd like to do is try to talk to Ms. Labaree to
25 see if we can agree on the schedule that we can just submit to

1  Your Honor.  And then if there is disagreement, we'll submit

2  paper so the Court can make the call.

3             THE COURT:  All right.  Well, I don't -- as to a

4  disagreement, you mean sooner rather than later?

5             MR. HALES:  The government was thinking the trial

6  would be in September, we were going to ask to have motions

7  filed late March and then resolve them in June so all of that

8  was resolved well before trial.  Ms. Labaree was going to ask,

9  as I understand it, for a later schedule.  Now that we're set

10 for trial in February of next year, it would seem to make sense

11 to do -- to try and resolve those motions, you know, probably

12 in the fall.

13            THE COURT:  Well, it makes sense to resolve as early

14 as possible so everybody knows where you're headed, if they're

15 serious motions.

16     But what date were you going to suggest for the motions?

17            MS. LABAREE:  With a trial date in September in mind,

18 I was going to ask for June for the deadline.

19            THE COURT:  But do you have in mind what motions

20 you're going to make?

21            MS. LABAREE:  Not to the degree that late March being

22 set now.  If I had known about late March earlier, I think I

23 would have been able to make them.  But late March now, I

24 simply have plenty of deadlines between now and then I wasn't

25 going to be able to do that.

1            THE COURT:  Whatever you agree by stipulation I'll
2    approve.  I would think that you would want to do this as
3    quickly as possible.
4            MR. HALES:  Agreed.  I think a June filing date makes
5    sense to -- now that we're set for trial so far out.  So we can
6    either pick a date now and build a schedule off of that, or
7    it's probably easier for the Court for us to submit it on
8    paper.
9            THE COURT:  It's easier for you to submit because it
10   doesn't make that much difference to the Court what dates you
11   select.
12           MR. HALES:  Understood.
13           THE COURT:  Anything else?
14           MR. HALES:  No, Your Honor.
15     You did state on the record excludable time under T4 and
16   then we'll provide the order to you?
17           THE COURT:  It wasn't that long ago.  Yes, I did.
18           MR. HALES:  I'm just verifying.  I think that's it
19   for the government.
20           THE COURT:  All right.
21           MS. LABAREE:  Thank you, Your Honor.
22           THE COURT:  Thank you.
23           MR. HALES:  Thank you.
24                (Proceedings adjourned, 9:18 a.m.)
25                          ---oOo---

1   I certify that the foregoing is a correct transcript from the

2   record of proceedings in the above-entitled matter.

3

4                           /s/ Kimberly M. Bennett
                            KIMBERLY M. BENNETT
5                           CSR No. 8953, RPR, CRR, RMR