PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT ALLEN POOLEY,<br><br>Defendant. | CASE NO. 2:21-CR-00111 WBS<br><br>GOVERNMENT'S TRIAL BRIEF<br><br>DATE: May 15, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. William B. Shubb |

## I.  PROCEDURAL HISTORY

Defendant Robert Pooley is scheduled for jury trial beginning May 15, 2024. He is charged with four counts of Wire Fraud in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The evidence will show that Pooley ran a scheme to defraud by falsely leading fellow skydivers to believe that if they paid him and took a course with him, he could help them obtain a certification, known as a Tandem Instructor rating, that would allow them to engage in tandem skydives.[1] In reality, Pooley's certification to teach that course – known as a Tandem Examiner rating – was suspended, meaning he was not authorized to teach the course that he offered to his students. To circumvent detection, Pooley used the signatures of another Tandem Examiner, Yuri

---

[1] Tandem skydiving is a form of skydiving in which two people jump together. An experienced, certified parachutist, controlling the parachute, is harnessed to a typically inexperienced, first-time skydiver.

Government's Trial Brief                                   1

Garmashov, on paperwork attesting that the students had received appropriate training. His students did not ultimately receive the ratings that Pooley promised. The government estimates that its case-in-chief will take approximately seven trial days.

## II. SUMMARY OF THE CASE

### A. Tandem Skydiving is a Regulated Activity, With Certifications and Licensing Delegated to an Industry Group and the Tandem Equipment Manufacturer.

Tandem skydiving is regulated by 14 C.F.R. § 105.45. This regulation requires, *inter alia*, that a person conducting tandem jumps: (i) have a certain level of experience; (ii) possess a master parachute license issued by an organization recognized by the Federal Aviation Administration (FAA); and (iii) complete a tandem instructor course given by, and be certified by, the manufacturer of the tandem parachute system. *See* 14 C.F.R. § 105.45(a)(1). The United States Parachute Association (USPA) is an organization recognized by the FAA that issues a Tandem Instructor certification (known as a "rating") upon the successful completion of prerequisites and a Tandem Instructor Rating Course conducted by a certified USPA Tandem Instructor Examiner. During the Tandem Instructor Rating Course, the candidate is required to complete tasks that are recorded on a USPA Tandem Instructor Rating Course Proficiency Card. The USPA Examiner is the only one who can provide final certification, by signing the final "Rating Recommendation" and attesting, "I have personally examined and recommend this applicant for the USPA Tandem Instructor rating."

Similarly, Uninsured United Parachute Technologies (UPT), a manufacturer of tandem parachute systems, issues a Tandem Instructor rating after candidates complete five jumps under the supervision of a qualified Tandem Examiner. UPT requires that the five jumps be recorded on a UPT Tandem Instructor Certification form, followed by the UPT Tandem Examiner's signature. UPT's guidelines specifically require Tandem Examiners to be present during the execution of certain certification jumps and "present and participating during all certification processes." These guidelines further state that UPT Tandem Examiners cannot sign off unless they were present during the "entire certification process."

### B. Pooley's Examiner Ratings were Suspended.

Pooley obtained his Tandem Examiner ratings in 2010 and worked out of a skydiving operation

known as the Parachute Center in Lodi, California. In August of 2015, after ongoing errors with candidate paperwork, and violations of various safety requirements, USPA sent Pooley a letter informing him that his Examiner rating had been suspended for a period of one year, effective July 26, 2015. Reflecting a reciprocity agreement, UPT also sent Pooley a letter in August of 2015, informing him that it too had suspended his Examiner rating. As discussed above, one of the practical consequences of these suspensions meant that Pooley was no longer able to teach Tandem Instructor courses unless under the direct supervision of another Examiner. It also meant that Pooley was not permitted to certify Tandem Instructor candidates and thus could not bestow Tandem Instructor ratings to enable these candidates to engage in tandem jumps with customers. In an email exchange with a USPA representative on August 28, 2015, Pooley acknowledged his suspension, stating "I understand the terms of the suspension" and "I know (the courses) need to be run by another (instructor examiner)."

### C. Pooley Nevertheless Accepted and Taught Tandem Instructor Candidates

Despite his suspension, Pooley continued to accept and teach Tandem Instructor candidates at Parachute Center. Initially, Pooley ran these courses purportedly under Garmashov's supervision. If Garmashov directly supervised Pooley in these courses, their arrangement may have been acceptable to USPA and UPT. However, in late May of 2016, Garmashov left the country. Pooley nevertheless continued to accept and teach a number of candidates seeking to obtain their Tandem Instructor rating, without any Examiner overseeing the course. He falsely led these candidates to believe that he had an Examiner rating, and accepted their money under the false pretense that he would be able to help them obtain legitimate Tandem Instructor ratings. In furtherance of this scheme, and to evade detection, Pooley used certification cards that were pre-printed with Garmashov's signatures.

### III. THE OFFENSE ELEMENTS

#### A. Wire Fraud:

Counts One through Four of the Indictment charge the defendant with Wire Fraud. The elements of Wire Fraud in violation of 18 U.S.C. § 1343 are as follows:

First, the defendant knowingly participated in, devised, or intended to devise, a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

Government's Trial Brief    3

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, interstate wires to carry out or attempt to carry out an essential part of the scheme.

### 1. Scheme

A "scheme to defraud" or a "scheme to obtain money or funds" means any deliberate plan of action designed to deceive or cheat another person. *See, e.g., United States v. Stapleton*, 293 F.3d 1111, 1118 (9th Cir. 2002). A defendant's actions "can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved." *United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) (citing *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981)). If based on false statements, the scheme to defraud can be based on deceptive or misleading statements, false statements and half-truths, or omitted and non-disclosed facts, as long as the statements or omissions are material. *Woods*, 335 F.3d at 998, 1000. "Deceitful statements of half-truths or the concealment of material facts is actual fraud under the statute." *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979). *See also United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980). A scheme can be based on omissions where there exists an independent duty that has been breached by the person so charged, including a duty created by a relationship of trust in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise. *See United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016); *United States v. Milovanovic*, 678 F.3d 713, 724 (9th Cir. 2012).

### 2. Materiality

Wire fraud requires materiality as an element. A statement or omission is material if it has "the natural tendency to influence or is capable of influencing another's decisions." *United States v. Halbert*, 712 F.2d 388, 390 (9th Cir. 1983). However, it is not necessary to show that anyone actually relied on the statements. *Id.* Nor is it necessary to establish that anyone was defrauded or sustained a monetary loss. *United States v. Telink*, 910 F.2d 598, 598-600 (9th Cir. 1990); *United States v. Vaughn*, 797 F.2d 1485, 1493 (9th Cir. 1986).

### 3. Intent to Deceive

The specific intent required of each of the charges is the intent to deceive and cheat. *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020). "[T]o be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *Id*. at 1101. "The government satisfies the requirement of proof of specific intent … if it proves the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984). Moreover, "[i]ntent need not be established by direct evidence, but may be inferred from the defendant's statements and conduct." *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979); *see also United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992). A good faith belief that the victim will be repaid and will sustain no actual loss is not a defense to the charges. *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986); *see also Miller*, 953 F.3d at 1103 ("Intent to repay…is not a defense to wire fraud"). Nor is it a defense that the defendant had an honest belief in the ultimate success of the enterprise. *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979).

### 4. Use of the Wires

Finally, with regard to the interstate or foreign wire element, "[t]he defendant need not personally have mailed the letter or made the telephone call; the offense [of mail fraud or wire fraud] may be established where one acts with the knowledge that the prohibited actions will follow in the ordinary course of business or where the prohibited acts can reasonably be foreseen." *Lothian*, 976 F.2d at 1262. The use of e-mail constitutes use of an interstate wire. *See United States v. Selby*, 557 F.3d 968, 979 (9th Cir. 2009); *see also United States v. Dowie*, 411 F. App'x 21, 25 (9th Cir. 2010).

### B. **Aggravated Identity Theft:**

Counts Five and Six charge the defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A. The elements are:

First, the defendant knowingly transferred, possessed or used without legal authority a means of identification of another person;

Second, the defendant knew that the means of identification belonged to a real person; and

Third, the defendant did so during and in relation to a specified felony (in this case, wire fraud).

### 1. Use Without Legal Authority In Relation To

A defendant "uses" another person's means of identification "in relation to" a predicate offense when the use is at the crux of what makes the conduct criminal. *Dubin v. United States*, 599 U.S. 110, 131 (2023). The government is not required to prove that the means of identification were stolen. *See United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015) ("§ 1028A does not require theft as an element of the offense"). Nor is it required to prove that the person did not consent to the use. *Id*. at 1185-86 ("[R]egardless of whether the means of identification was stolen or obtained with the knowledge and consent of its owner, the illegal use of the means of identification alone violates § 1028A.") The "illegal use of the means of identification alone" violates § 1028A. *Id*. at 1186; *see also United States v. Gagarin*, 950 F.3d 596, 604 (9th Cir. 2020).

### 2. Means of Identification

The term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual. 18 U.S.C. § 1028(d)(7). The Ninth Circuit has held that a signature qualifies as a "means of identification." *United States v. Blixt*, 548 F.3d 882, 887 (9th Cir. 2008).

## IV.   EVIDENCE

### A.   Witnesses

The United States expects to call approximately twenty witnesses to testify in its case-in-chief. Witnesses may include people that took courses offered and/or taught by Pooley, representatives of USPA, UPT and other agencies, other witnesses from the Parachute Center, investigating agents, and records custodians. Based on conversations with defense counsel to date, the government reasonably hopes that stipulations will be reached that will reduce the number of witnesses and records custodians who will testify. The witnesses the government may call are divided into categories as set forth below.

### 1. Pooley's Students

The government intends to call people that took Tandem Instructor courses with Pooley. They will testify that Pooley told them that he could provide them with their Tandem Instructor ratings if they took a course with him, that he represented himself as a Tandem Instructor Examiner, and that he asked

Government's Trial Brief                                6

for and accepted payment from them.  They will testify about Pooley's conduct during the courses, including the training he provided.  At the end of their courses, they will testify that Pooley presented them with ratings cards that contained Garmashov's pre-printed signatures.  And they will testify that they never received the ratings that Pooley promised them.

### 2. USPA and UPT representatives

The government will call representatives from USPA and UPT who will provide the jury with background on tandem skydiving, the regulations that govern it, and the courses that USPA and UPT offer that allow skydivers to obtain the necessary certifications.  They will discuss the importance of only a certified Tandem Examiner teaching a Tandem Instructor course, and of the requirement that the Examiner be present and attentive when teaching the course.  In an abundance of caution, in case this could be construed as expert testimony based on specialized knowledge, the government advised the defendant it plans to serve an expert notice for the USPA witness it expects to primarily describe how tandem skydiving works. They will also discuss their interactions with Pooley, including how he obtained an Examiner rating in 2010, how his rating was suspended in 2014 and 2015, email correspondence with Pooley in which he acknowledges the terms of the 2015 suspension, and the investigations they conducted when they found out that Pooley was conducting Tandem Instructor courses despite his suspension in 2016.  Finally, they will introduce and discuss their respective business records relating to their courses,[2] Pooley's suspensions and their investigations, as well as the absence in their records of any certifications related to some of Pooley's students.

### 3. Parachute Center Witnesses

The government may call additional witnesses from the Parachute Center.  These witnesses will generally discuss Parachute Center's operations, and to their personal observations of Pooley conducting tandem instructor courses including while Garmashov was not present.  The government may also call Garmashov, who may testify to the fact that he was abroad between May and August of 2016, and regarding his explicit instructions to Pooley that Pooley was not to teach tandem instructor courses while he was abroad and Pooley's acknowledgement of that instruction, reflecting Pooley's knowledge.

---

[2] This testimony may be streamlined by admitting business records through Rule 902(11) certificates.

Government's Trial Brief                              7

4. Fact Witness from the FAA

The government intends to call FAA Inspector David Jenson to testify that Parachute Center owner Bill Dause gave him a copy of Kwon's USPA and UPT paperwork (which bore Garmashov's fraudulent signature, the basis for Count 5) and that Pooley made certain admissions to him.

5. Agents

The government will call agents from the Department of Transportation's Office of the Inspector General (DOT-OIG) regarding their respective investigations into Pooley. These investigators will discuss, *inter alia*, evidence obtained through search warrants executed on the premises of the Parachute Center and on Google accounts controlled by Pooley and/or Garmashov, and recorded interviews of Pooley in 2018 and 2021. Some of this evidence may qualify as expert testimony under Federal Rule of Evidence 702 to the extent it involves the forensic extraction of evidence from the devices seized. Agents may also introduce a video recording of testimony that Pooley gave during a deposition conducted in 2020 in a separate, state court civil matter. Agents will also introduce self-authenticating records, such as border crossing records and records from the Department of Motor Vehicles. Finally, DOT-OIG agents interviewed a number of witnesses in the course of the investigation and trial preparation. If the interviewee witnesses are impeached or in the course of the trial evidence is presented which otherwise renders their prior statements admissible, the special agent(s) who interviewed them may be called to present their prior statements.

6. Records Custodians

In the unlikely event that the parties cannot reach a stipulation and the Court does not admit evidence that the government intends to enter pursuant to Fed. R. Evid. 902(11) or (13), the government intends to call custodians from Google, Paypal, USPA and/or UPT. The government also intends to call, if necessary, two notary publics who will testify to their records regarding letters that Pooley wrote and had notarized.

B. **Documents**

1. Documents Obtained from Search Warrants

The government will introduce three categories of documents that it obtained through search warrants. First, it will introduce documents that it seized from the Parachute Center, including blank

USPA/UPT certification documents containing Garmashov's pre-printed signature that it obtained from Pooley's locker. The government may also include photographs of the Parachute Center that were taken during the execution of the search warrant. Second, it will introduce documents it obtained from electronic devices that it seized from the Parachute Center. These documents will include emails sent to and from an account controlled by the Parachute Center, and documents found on computers used or controlled by Pooley, including scanned images of Garmashov's signature, and USPA and UPT certification documents pre-filled with Garmashov's signature. Third, the government will introduce emails that it obtained from search warrants executed on accounts controlled by Pooley or Garmashov, as well as the attachments to those emails. These emails will be introduced pursuant to Rule 902(11) or (13), and include the emails that form the basis of Counts 1-4 and 6, emails between Pooley and USPA or UPT, and emails that Pooley exchanged with his students.

2.   Documents Obtained from USPA and UPT

The government will introduce documents that it obtained from USPA and UPT pursuant to Rule 902(11). These documents will include instructional manuals and guidelines which demonstrate Pooley's knowledge, intent, and lack of mistake, ratings cards, correspondence related to Pooley's suspensions, documents that they received from Pooley, and documents related to their investigations into Pooley's 2016 conduct.

3.   Documents Obtained from Students

Students that will testify may introduce documents that include USPA/UPT certification documents, communications with Pooley, photographs and videos.

4.   Investigative Agents

The government will introduce documents that were obtained during the course of the investigations run by the FAA and DOT-OIG. These documents may include public records such as border crossing records, audio recordings of interviews conducted with Pooley, a video recording of testimony that Pooley gave during the 2020 deposition, along with a transcript, and documents obtained from notaries regarding letters that Pooley signed and notarized. If the government is unable to reach stipulations with the defense, it may introduce these documents through the notaries themselves.

## V.  ANTICIPATED EVIDENTIARY ISSUES

### A.  Testimony

#### 1. The Government Will Call Victims Not Identified By Name or Number in the Indictment

The United States intends to call in its case-in-chief some victims within the scope of the charged scheme who are not identified by name or number in a specific charged wire count. Courts have consistently held that the existence of a scheme to defraud may be established by testimony and evidence from persons not specifically identified in the charging document. *See, e.g., United States v. Bilotti*, 380 F.2d 649, 653 (2d Cir. 1967); *United States v. Schaefer*, 299 F.2d 625, 629 (7th Cir. 1962); *Frank v. United States*, 220 F.2d 559 (10th Cir. 1955). Moreover, such evidence is not "other crimes" evidence within the meaning of FRE 404(b) but is direct proof of the scheme itself. *See United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) (evidence should not be considered other act evidence if inextricably intertwined with evidence of charged crime); *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012); *see also United States v. Boone*, 951 F.2d 1516, 1539 (9th Cir. 1991); *United States v. Roylance*, 690 F.2d 164 (10th Cir. 1982).

#### 2. The Government Will Offer Various Out of Court Statements Not-For-The-Truth, and Will Offer Pooley's Own Statements For the Truth As Admissions of a Party-Opponent

The government anticipates that a number of out-of-court statements will be presented during the course of the trial. Many of these statements are not hearsay because they are not offered for the truth, but rather to establish effect on listener - for example, e-mails from Parachute Center, USPA and UPT to Pooley, to demonstrate Pooley's knowledge.

Pooley's out of court statements are admissible, when offered by the government, as admissions by an opposing party. FRE 801(d)(2). The government will offer several statements by Pooley, including by not limited to the following:

- Victim-witness testimony about what Pooley told them regarding the fraud (e.g., "I will be the Examiner" on a phone call to a victim considering traveling to attend Pooley's Tandem Instructor course).

- Letters signed by Pooley to USPA owning up to using Garmashov's preprinted signature

Government's Trial Brief                                                        10

       to certify students while Garmashov was out of the county.  Although Pooley may not have personally drafted the letter, by signing it, Pooley made the statement pursuant to Rule 801(2)(A).  Pooley affirmed that he had signed the letter in a recorded interview.

- Emails and text messages sent by Pooley.
- Audio and video clips of admissions made by Pooley in two audio recorded interviews by DOT-OIG agents and in a video recorded deposition.

There are also many out of court statements which fit within exceptions to the hearsay statement. For example, documents prepared and kept in the course of USPA's, UPT's and Google's activities are admissible as business records pursuant to Rule 902(11).  Similarly, certified copies of public records (like border crossing records) are admissible under Rule 902(4).

       3.     Pooley May Not Offer His Own Out of Court Statements, Because They Are Hearsay When Presented By Him.

  Pooley should be precluded from attempting to elicit or otherwise introduce his own statements, whether through cross examination of government witnesses, or by affirmatively seeking to introduce testimony or documentary evidence of Pooley's out of court statements.  Under the Federal Rules of Evidence, a defendant's own out-of-court statements offered by the defendant are hearsay and thus inadmissible. Fed. R. Evid. 801(c).  Thus, it is well-established that a defendant cannot try to introduce his own statements through other witnesses but, instead, must testify in Court if he wishes to make statements. *See, e.g., United States v. Mitchell*, 502 F.3d 931, 964-965 (9th Cir. 2007) ("These statements [by defendant] were inadmissible hearsay; as [defendant] was attempting to introduce them himself, they were not party-opponent admissions, nor did the fact that they were made in a more broadly self-inculpatory confession bring them within the statement-against-interest exception."); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming trial court's preclusion of defendant eliciting on cross-examination exculpatory statements given to law enforcement officer); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) ("It seems obvious defense counsel wished to place [defendant's denial to police officer] before the jury without subjecting [defendant] to cross-examination, precisely what the hearsay rule forbid.")  The rule against a defendant eliciting his own hearsay statements through examination of other witnesses includes situations in which the

witnesses have testified as to other statements made by the defendant during the same conversation that are inculpatory. *See Ortega*, 203 F.3d at 682 (rejecting argument that defendant should be permitted to introduce own statements because agent testified as to other inculpatory statements made as part of same conversation, and holding rule of completeness does not apply to oral statements). As the Ninth Circuit has explained, a defendant is not permitted "to use the Confrontation Clause as a means of admitting hearsay testimony through the 'back door' without subjecting himself to cross-examination." *Id*. Such is the case here. If the defendant were permitted to introduce exculpatory statements through cross-examination the government would be prejudiced because it would be unable to cross-examine the defendant regarding them.

Here, the government anticipates the defendant may seek to offer several specific inadmissible out of court statements. First, after signing a letter essentially confessing to the fraud and explaining that Garmashov did not know Pooley was using his signature, Pooley made minimizing, self-serving statements to a USPA official, Josh Hall, undermining the letter he had signed. The letter will be offered by the government and is admissible when offered by the government as an opposing party's statement pursuant to Rule 801(d)(2). Pooley's own out of court minimizations or explanations of the reasons he may have signed the letter, however, are hearsay, and Pooley may not call Hall to testify to them. If Pooley wants to offer such self-serving justifications, he must do so on the witness stand subject to cross-examination. For the same reason, the government will redact Pooley's self-serving hearsay from documents where Pooley also makes relevant admissions. For example, in email correspondence with certain victims, Pooley apologizes (which is relevant and will be offered by the government as a party-opponent admission). Then, separately, Pooley makes self-serving self-pitying statements making excuses for himself. The government does not intend to, and Pooley should not be permitted to, introduce this self-serving hearsay.

    4.  Rule of completeness procedure.

The United States has selected portions of Pooley's audio recorded interviews with law enforcement, as well as portions of Pooley's video recorded deposition, which it intends to introduce at trial. As discussed above, these statements are admissible against the defendant because they are statements of the party-opponent, and therefore they are not hearsay. *See* Fed. R. Evid. 801(d)(2). Also

as discussed above, however, the rule against hearsay precludes Pooley from choosing his own portions of his statements to introduce into evidence, because he would then be introducing his own statements and not the statements of a party-opponent. In other words, the Rules of Evidence give the United States discretion to decide which portions of the defendant's statements to introduce into evidence.

The exception to this rule is the rule of completeness. *See* Fed. R. Evid. 106. Rule 106 provides that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Fed. R. Evid. 106.

Under Rule 106, "the critical inquiry" is "the purpose for which the evidence is offered." *United States v. Lopez*, 4 F.4th 706, 715 (9th Cir. 2021). Therefore, a defendant can offer a portion of his own statement in order "'to correct a misleading impression in the edited statement' introduced by an opposing party," such as when redacted portions of a defendant's confession "distort[] the meaning of the statement," "exclude[] information substantially exculpatory of the declarant," or "exclude[] portions of a statement that are ... explanatory of [or] relevant to the admitted passages." *Id.* (quoting *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014); *United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985)). In *Lopez*, for instance, the Ninth Circuit found that the rule of completeness required portions of the defendant's statement to be admitted at trial when the government redacted the defendant's statement mid-sentence, thus creating the misleading impression that the defendant was saying he knew that a girl he met online with the nickname "Brit" was underage, when in reality he was saying he believed the online persona "Brit" to be a scam. *Id.* at 716. In a later portion, the government further edited the defendant's statement to make it appear as if he was admitting that he believed "Brit" was 13, when in full context he was saying that he believed "Brit" was really a government agent. *Id.*

The rule of completeness, however, does not create an evidentiary free-for-all or "green light of admissibility" once any clip or portion of a statement is introduced into evidence. Advisory Committee Notes to 2023 Amendments to Rule 106. In other words, Rule 106 does not "require the introduction of any unedited writing or statement merely because an adverse party has introduced an edited version." *Vallejos*, 742 F.3d at 905. Instead, "'it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just

Government's Trial Brief                             13

because they are there and the proponent has not offered them.'" *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). As a result, the question in "rule of completeness" cases is whether a more complete recording is required "to correct a misleading impression" created by the recordings that *have* properly been entered into evidence. *Id.* In the Advisory Notes to the 2023 amendments to the Rule, the Committee stated that the amendment does not change this principle, noting "the mere fact that statement is probative and contradicts a statement offered by the proponent is not enough to justify completion under Rule 106. So, for example, the mere fact that a defendant denies guilt before later admitting it does not, without more, mandate the admission of his previous denial." Advisory Committee Notes to 2023 Amendments to Rule 106.

There is not a concern that the clips selected by the government in this case would create a misleading impression. The government has selected portions of Pooley's statements that accurately convey what the defendant expressed about his actions and intent with respect to his fraud scheme and use of Garmashov's signature. Notably, to the extent the defendant might argue that the rule of completeness requires the Court to allow him to introduce exculpatory or minimizing statements he made—simply because the United States offers his inculpatory statements—the Ninth Circuit has rejected this argument. *See, e.g.*, *Ortega*, 203 F.3d at 682, *holding modified on other grounds by United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007). The Court should follow the Ninth Circuit's lead and reject these efforts, because otherwise the defendant would be able to transmit hearsay to the jury "without subjecting himself to cross-examination, precisely what the hearsay rule forbids.'" *Id.*

        5.        Presentation of Witnesses

It is possible that the government may have to call certain witnesses out of order, or re-call witnesses to testify to various events to maintain a chronological presentation. The government will strive for an orderly presentation of the evidence to assist the court and the jury in understanding the evidence being presented.

**B.**        **Documents**

The government will introduce documents through business records certifications, live testimony, and perhaps through stipulation. For convenience of use, the exhibits will be organized so that documents that bear a particular relationship to each other are located near each other.

1.      Business Records

The United States intends to introduce business records of USPA, UPT and Google pursuant to business records certifications. Records made and kept in the regular course of business are admissible pursuant to Federal Rules of Evidence 902(11) and 803(b)(6). A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11), is also admissible. Fed. R. Evid. § 902 (13).

2.      Certified Copies of Public Records

The United States will introduce certified copies of certain public records, specifically border crossing records and Department of Motor Vehicle records. Such records are self-authenticating and admissible pursuant to Federal Rules of Evidence 902(4) and 803(8).

C.   **Evidence That Any of the Victims, or USPA/UPT, Were Negligent or Failed to Prevent the Fraud Should be Excluded**

The government anticipates that the defense may attempt to undermine the materiality of Pooley's misrepresentations by arguing that his victims were negligent in relying on him or that they or USPA/UPT could have taken steps to minimize his fraud. The government is concerned that Pooley may attempt to run this misdirection strategy, based on questions directed to at least one witness about whether the victims should have verified Pooley's Examiner credentials. This evidence is irrelevant to any element or defense and should be excluded. *See* Fed. R. Evid. §§ 401-402. The materiality of any misrepresentation is measured against an objective standard, not the subjective impression of the person or entity to whom the misrepresentation was directed. *See United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) ("[C]apable of influencing is an objective test, which looks at the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end.") The government is not required to prove that Pooley's scheme was calculated to deceive only persons possessing a certain level of comprehension or understanding. *See United States v. Ciccone,* 219 F.3d 1078, 1083 (9th Cir. 2000); *see also United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("[I]t makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts.") Indeed, the wire fraud statute protects "the

naïve as well as the worldly-wise." *United States v. Hanley*, 190 F.3d 1017, 1023 (9th Cir. 1999) (superseded by statute on other grounds) (citing *Lemon v. United States*, 278 F.2d 369, 373 (9th Cir. 1960), which held that mail fraud statute protects the naive). Pooley may not escape his criminal liability by engaging in victim-blaming. Any such evidence is also precluded by Federal Rule of Evidence 403 as it has no probative value and will only distract and mislead the jury.

### D. Defense Questions To Witnesses Calling For Speculation That Garmashov Participated In The Fraud Should Be Excluded Under Rule 402 and 403.

The defense also appears poised to argue, through questions of witnesses calling for speculation, that Garmashov participated in the scheme to defraud by allowing Pooley to use his signature on the certification documents while he was out of the country. As there is no hard evidence that Garmashov knew Pooley was utilizing his signature during the summer of 2016, the defense is likely to seek to ask questions of witnesses calling for them to speculate about whether Garmashov knew. Certain witnesses have speculated in interviews that they believed Garmashov "knew" but also stated that this is only their speculation, that they have no evidence of this, and that it is based on impermissible inferences like their general opinion of Russians. The defense should not be permitted to ask questions calling for speculation, knowing it would be speculation. As there is no witness for which this would not be wholly speculative, the defense should be precluded from this line of questioning.

In addition and as a separate and independent basis for excluding that evidence, it is irrelevant. Fed. R. Evid. §§ 401-402. As discussed above, whether Garmashov consented to Pooley's use of his signature or not is irrelevant to Pooley's violations of the aggravated identity theft statute. *See Osuna-Alvarez*, 788 F.3d at 1185-1186; *Gagarin*, 950 F.3d at 604. Moreover, with respect to both the wire fraud and aggravated identity counts, even if Garmashov were involved, this would simply make him a co-conspirator and would not absolve Pooley of committing fraud.

Finally, a line of questioning about whether Garmashov was complicit is likely to confuse the issues and waste time. This danger is compounded by the fact that the witnesses who have speculated about Garmashov have done so quite imprecisely with respect to time period, usually not distinguishing between whether they are speculating Garmashov "knew" generally, or whether they mean during the time frame charged while Garmashov was out of the country. There is no dispute Garmashov allowed

Government's Trial Brief                16

Pooley to use his preprinted signatures on documents previously, while he was present at the drop-zone supervising, as Pooley explained in his letter to USPA.

The evidence has no probative value and, any slight probative value it could have would be substantially outweighed by the danger of unfair prejudice, confusing the issues, wasting time, and needlessly presenting cumulative evidence. Fed. R. Evid. §§ 401-403. Pooley should not be permitted to put on a mini-trial about the culpability of another person when it does not absolve or excuse the conduct charged. Should the defendant attempt to present evidence of Garmashov's involvement, the government will likely seek to exclude it under Rules 402 and 403.

### E. The FAA Reports Arising From the Investigation of Kwon's Death, the Results of the FAA Investigation, and the FAA Inspector's Speculations As To Pooley's Intent Should Be Excluded.

The defense should also be precluded from introducing the reports of or evidence of the results of the FAA's separate, administrative inquiry into Kwon's death. The inquiry was limited in scope: it was primarily focused on determining whether any party had violated the FAA regulations, including 14 C.F.R. § 105.45 (dealing with tandem skydiving) and 49 C.F.R. § 1540.103 (falsification of records). It was an administrative enforcement action that was closed because the violations committed by Kwon (*i.e.,* engaging in tandem jumps without the proper certification) could not be pursued in light of his death. The FAA did not conduct a criminal, fraud investigation; in fact, once evidence of Pooley's fraud came to light, the matter was turned over to DOT-OIG. Because the FAA inquiry was not charged with finding or investigating Pooley's fraud, evidence related to the FAA post-fatality reports or conclusions are likely to confuse the issues and mislead the jury. Fed R. Evid. § 403.

For the same reason, any reports created or other statements made by the FAA investigator should be excluded, and the defense should not be allowed to put statements from the FAA documents or reports before the jury through cross-examination questions to the FAA Investigator, David Jensen. As an initial matter, any such cross-examination would exceed the scope of the very limited testimony that the government intends to elicit from the investigator. As discussed above, the investigator will testify to two discrete facts: that he obtained Kwon's paperwork from the Parachute Center, and that Pooley made certain admissions about using Garmashov's signatures on Kwon's documents.

Further, the FAA's reports are hearsay in their entirety and inadmissible. Fed R. Evid. § 802.

Government's Trial Brief                17

And, any statements or conclusions by the FAA civil/administrative inspector as to elements of this criminal case, such as the intent to engage in fraud, amount to bare speculation by the investigator, as he was not involved in and had no knowledge of the status of the separate, criminal investigation. Fed R. Evid. § 602. The FAA investigator is not an expert witness who should be permitted to testify as to opinion at all. Even an expert witness would not be permitted to state an opinion about whether the defendant did or did not have a mental state that constitutes an element of the offense. Fed. R. of Evid. § 704(b). As discussed above, such statements would not be helpful to the jury and would indeed confuse the jury by falsely implying that the government as a whole absolved Pooley of criminal conduct, which is clearly not the case. Fed R. Evid. § 403.

Finally, if the defense were to explore statements or conclusions from the FAA reports on cross-examination of Investigator Jensen, it would open the door to a redirect examination which may have to put those statements/conclusions in context. Specifically, this would open the door to testimony and evidence regarding: (i) the subject of the FAA's investigation (*i.e.*, Kwon's death); and (ii) the entirety of the FAA's findings, including the finding that Pooley allowed Kwon to perform tandem parachute jumps with no emergency procedures training. For all these reasons, the Court should exclude any evidence of the FAA's findings, including those contained in its reports or statements of opinion by its investigator.

### F.  WITNESS EXCLUSION AND CASE AGENT DESIGNATION

Pursuant to Federal Rule of Evidence 615, the government will move for the exclusion of all witnesses until their testimony has been completed. The government will further move that Special Agents Reggie Lee and Richard Ficarelli be designated as case agents and thus exempt from the exclusion order, pursuant to Rule 615; *see also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984). In addition, USAO paralegal Samantha Kenny will be present during the trial to aid in the organization and presentation of exhibits.

### VI.  CONCLUSION

The foregoing is a summary of issues the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

Dated: May 6, 2024

PHILLIP A. TALBERT
United States Attorney

*/s/ DHRUV M. SHARMA*
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorneys