HEATHER E. WILLIAMS, SBN 122664
Federal Defender
MIA CRAGER, SBN 300172
MEGHAN McLOUGHLIN, SBN 354051
Assistant Federal Defenders
801 I Street, Third Floor
Sacramento, California 95814
T: (916) 498-5700
F: (916) 498-5710

Attorneys for Defendant
ROBERT POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-CR-111-WBS |
| Plaintiff, | **MR. POOLEY'S TRIAL BRIEF** |
| vs. | Judge: Hon. William B. Shubb |
| ROBERT POOLEY, | |
| Defendant. | |

The defense offers the following trial brief touching upon issues likely to arise during trial, with a focus on recent changes to the law that are anticipated to affect this case.

**I.   Meaning of "lawful authority" and relevance of whether Yuri Garmashov gave Mr. Pooley permission to use his signature (Counts 5-6)**

The aggravated identity theft statute criminalizes "knowingly transfer[ing], possess[ing], or us[ing], *without lawful authority*, a means of identification of another person" "during and in relation to [wire fraud]." 18 U.S.C. § 1028A (emphasis added). Count 5 of the indictment alleges that Mr. Pooley knowingly possessed and used the signature of Yuri Garmashov on certification forms for Yong Kwon. Count 6 alleges that he knowingly possessed and used the same signature on the certification forms of Lachlan Morgan Mackay. Mr. Pooley is alleged to have used digital signatures to sign Mr. Garmashov's name on statements like, "I have personally examined and recommend this applicant for the USPA Tandem Instructor rating. He or she has demonstrated the ability to train and jump with tandem students and to train and

supervise non-method-specific students for the USPA A license."  The forms provide a space for a signature from a "Tandem Instructor Examiner" (i.e., Mr. Garmashov).

The government must prove that Mr. Pooley did not have "lawful authority" from Mr. Garmashov to possess and use Mr. Garmashov's signature in this way.  *See* 18 U.S.C. § 1028A; 9TH CIR. CRIM. JURY INST. 15.9 (2024).  The term "lawful authority" means "permission to act on that person's behalf in a way that is not contrary to the law."  *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185–86 (9th Cir. 2015) (citation omitted).

The defense theory is that Mr. Garmashov did in fact did give permission for Mr. Pooley to possess and use the signatures on the forms, and that doing so was not "contrary to law."  *See id.*

The forms in question are issued by an non-profit organization called the United States Parachute Association, which calls itself "USPA."  Despite its chosen name, the United States Parachute Association is not a governmental body; "[t]he United States Parachute Association (USPA) is a voluntary not-for-profit membership association of individuals who enjoy and support the sport of skydiving."  *See* USPA, ABOUT USPA, "What is USPA," https://www.uspa.org/about-uspa/what-is-uspa.  Over the years, this Association formed a web of internal rules for its members.  It created a structure of "licenses" from A to D, which "indicat[e] progressive levels of skill and accomplishment" in the sport of skydiving.  *See* USPA, USPA LICENSES, https://www.uspa.org/experienced-skydivers/earning-licenses-ratings.  It also instituted a system of "ratings" which designated skydivers who could do certain kinds of skydiving and coaching, per the organization's rules.  Mr. Pooley was teaching skydivers to qualify for a "Tandem Instructor rating."

No law and no regulation govern Mr. Pooley's or Mr. Garmashov's role as a person teaching others to do tandem jumps.  The Federal Aviation Administration (FAA) is the government agency that governs skydiving.  The FAA has a single regulation that sets out requirements related to tandem skydiving.  That regulation governs only the person operating the parachute in a tandem skydive.  The FAA does not regulate Mr. Pooley; the FAA regulates only the persons doing the tandem jumps, namely Yong Kwon and Lachlan Morgan Mackay.

      For this reason, the FAA, following its investigation of Mr. Pooley, determined that it could not prove that he violated any regulation. The agency specifically considered the paperwork at issue in Count 5. And the agency concluded that it was "[u]nable to substantiate regulatory noncompliance." *See* Exh. A (Excepts of FAA Enforcement Investigation Report) at 1. The agency reasoned that Mr. Pooley's "action (endorsing completion of a required course at a time when he was reportedly not authorized to do so)" was not "connected to the applicable requirements of 105.45." *Id.* at 2-3. "If Mr. Kwon knowingly performed a tandem jump using an unauthorized endorsement, he (jumper) could be held responsible" per the regulations at 14 C.F.R. § 105.45; however, Mr. Pooley, as the instructor, could not. *Id.* at 2. The FAA therefore closed the investigation in 2017 with "'No Action' on Mr. Pooley[.]" *Id.* at 2-3.

      Because no statute and no regulation govern Mr. Pooley's or Mr. Garmashov's role as teacher or supervisor, the process by which Mr. Garmashov gave permission for Mr. Pooley to sign the Parachute Association form on his behalf was not "contrary to law." It was merely contrary to the rules of the non-profit organization.

      The government may argue that the use of the signature was nonetheless "contrary to law" because the forms were allegedly "false and misleading" to the students. *See* Dkt. 1 at 8 ¶ 35. However, whether the owner of the means of identification gave "lawful authority" is a distinct inquiry from whether the identification was used in a fraud.

      The Solicitor General of the United States agrees that, even where a means of identification is used in a fraud, having "lawful authority" to use it is a defense. *See* Brief of the United States, *Dubin v. United States*, 2023 WL 658110, at *30 (Jan 23, 2023) ("The statute [] applies only to those who use someone else's means of identification 'without lawful authority.' 18 U.S.C. 1028A(a)(1). It accordingly does not apply to a defendant who has *valid permission to use someone else's means of identification, even if the defendant happens to use that means of identification while committing a crime*.") (emphasis added); *id.* at *23 ("Section 1028A(a)(1) forbids[] the *unauthorized* use of someone else's identifying information to facilitate crimes.") (emphasis added); *id.* at *31-32 ("[A]n applicant for a bank loan does not violate Section 1028A if he [commits bank fraud by] 'slightly inflat[ing] his salary while correctly identifying the co-

signer' [citation omitted]. If the co-signer agreed to sign for that particular loan, the applicant has used the co-signer's name with lawful authority [so the applicant could not be liable under § 1028A]."). Whether Mr. Garmashov consented to the use of his signature on the forms is an issue for the jury, as set out in the model jury instructions. Model Crim. Jury Instr. 9th Cir. 15.9 (2024) (requiring, as the first element of aggravated identity theft, that the government prove the "use" of the identification was "without legal authority").

Furthermore, the government in this case has represented that it will not pursue a theory that Mr. Pooley would be guilty of aggravated identity theft if Mr. Garmashov consented. Exh. B (Transcript of Trial Setting Hearing, Feb. 13, 2023) at 10:1-5, 16-19 ("I'm not aware of a case where . . . someone else has signed in their own name [and that signature] has been used as ag[gravated] ID theft. And that's definitely not what the government is trying to do in this case. . . . Like, the way the government is arguing it is, [Yuri Garmashov] is out of the country, Mr. Pooley is using his signature on these forms without his permission."). To convict Mr. Pooley on Counts 5 and 6, the government must show Mr. Garmashov's lack of consent.

## II. Changes to aggravated identity theft law in *Dubin v. United States*

In 2023, the Supreme Court further narrowed the scope of the aggravated identity theft statute in *Dubin v. United States*, 599 U.S. 110 (2023). The statute states, "Whoever, during and *in relation to* any felony violation enumerated in subsection (c), knowingly transfers, possesses, or *uses*, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A (emphasis added). The *Dubin* Court interpreted the terms "uses" and "in relation to." *Id.* at 118-120.

The Court began by trying to interpret "uses" and "in relation to" as standalone terms, but found them to be indeterminate. *Id.* The Court then looked to the context of those words in the statute and neighboring statutes. *Id.* at 120-123. The government argued that a person was guilty of aggravated identity theft when the identification "facilitates or furthers" the predicate offense. *Id.* at 117.

The Court rejected "[t]he Government's broad reading [of § 1028A], covering any time

another person's means of identification is employed in a way that facilitates a crime," because it "bears little resemblance to any ordinary meaning of 'identity theft.'" *Id.* at 122.  The Court analyzed the provision's title, "Aggravated identity theft," to "shed light on its text." *Id.* at 120-21.  The title "point[ed] to a narrower reading [than the government proposed], one centered around the ordinary understanding of identity theft." *Id.* at 120.

The Court also thoroughly analyzed § 1028A's text, which "points in the same direction as its title.  In particular, Congress used a trio of verbs that reflect an ordinary understanding of identity theft." *Id.* at 124.  The Court noted that the statute's other verbs – "transferring" someone's identification and "possessing" someone's identification – "not only connote theft, but identity theft in particular." *Id.* at 125.  "Using" someone's identification simply "captures [another] aspect of 'classic identity theft.'" *Id.*

Finally, the Court noted that section 1028A "is an enhancement, and a severe one at that.  It adds a 2-year mandatory prison sentence onto underlying offenses that do not impose a mandatory prison sentence of any kind." *Id.* at 127.  Applying this enhancement any time an identification "facilitated" or was the "but-for cause" of a fraud's success would lead to "indiscriminate" applications of this harsh punishment. *Id.* at 129.  "A far more sensible conclusion from the statutory structure is that § 1028A(a)(1)'s enhancement is not indiscriminate, but targets situations where the means of identification itself plays a key role— one that warrants a 2-year mandatory minimum." *Id.*

The Court concluded that a person "uses" an identification "in relation to" a fraud offense only where the identification played a "central role" in the predicate fraud. *Id.* at 122-23.  Said differently, the identification must be "at the crux" of the fraud. *Id.* at 131.  It is not enough for the identification to facilitate or further the predicate fraud crime, or even for it to be the but-for cause of its success. *Id.* ("To be clear, being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'").

Here, under *Dubin*, the government must prove that Mr. Garmashov's signature played a "central role" in defrauding the students in Mr. Pooley's tandem courses.

**III.     Meaning of "duty to disclose" (Counts 1-4)**

The indictment alleges that the scheme to defraud involved omitted facts – specifically, that Mr. Pooley was not certified to teach the tandem instructor course as a tandem examiner. Where omissions form the basis of a wire fraud charge, the government must prove that the defendant had an affirmative duty to disclose the omitted facts.

Typically, such a duty arises out of a fiduciary duty in which a person acts on behalf of another. The Ninth Circuit specifies that a duty to disclose may be "a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance that it would ordinarily exercise." *United States v. Shields*, 844 F.3d 819, 823 (9th Cir. 2016) (internal quotation marks omitted).

It is unclear how the government intends to prove that such a duty existed in this case. The indictment alleges merely that Mr. Pooley "entered into a trust relationship with the tandem instructor candidates as their paid teacher in a course in which the candidates were putting their lives at risk while tandem skydiving under his supervision." Dkt. 1 ¶ 33. The defense believes this theory is a novel and unwarranted application of the "duty to disclose."

**IV.     Recent amendments to Fed. R. Evid 106 and its applicability to Mr. Pooley's oral statement about a letter he signed**

The rule of completeness, Federal Rule of Evidence 106, was amended in 2023. The rule presently states, "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." The advisory committee notes from the 2023 amendment explain that the rule was amended in two respects: "(1) First, the amendment provides that if the existing fairness standard requires completion, then that completing statement is admissible over a hearsay objection." "(2) Second, Rule 106 has been amended to cover all statements, including oral statements that have not been recorded. . . . The rule is expanded to now cover all statements, in any form--including statements made through conduct . . . ."

1    The rule of completeness does not require that both statements be literally in the same document or record.  In particular, the rule applies to both "any other part" of the same statement or "any other statement."  FED. R. EVID. 106.  The Ninth Circuit has recognized that "qualifying statements" are properly admitted under Rule 106.  *United States v. Lopez*, 4 F.4th 706, 717 (9th Cir. 2021).  In *Lopez*, the Ninth Circuit held it was error to admit the defendant's admission that the person he was chatting with was underage without also admitting the defendant's qualifying statement – namely that although the person said she was 13 years old, the defendant actually believed he was chatting with an undercover officer.  *Id.*

Here, the government intends to put on evidence that Mr. Pooley signed a letter.  But the government intends to exclude Mr. Pooley's statement that he was forced to sign it.

The letter was written for the Parachute Association – specifically for a person named Josh Hall who worked at the Parachute Association and was at the time investigating Mr. Garmashov's role in Mr. Pooley's trainings.  Upon receiving the letter, Mr. Hall read it and immediately called Mr. Pooley.  Mr. Hall doubted the veracity of the letter and asked Mr. Pooley whether he had been forced to sign the letter.  Mr. Pooley indicated that he did in fact sign it and he was forced to do so.  *See, e.g.*, Exh. C (Email from Josh Hall documenting conversation with Mr. Pooley).

Mr. Pooley's statement to Mr. Hall that he was forced to sign the letter should "in fairness" be considered at the same time as the letter itself.  FED. R. EVID. 106.  The statement that he was forced to sign the letter clearly qualifies the statements in the letter itself, and in fairness, it should be considered at the same time as the letter.  *See Lopez*, 4 F.4th at 717.

Although before the 2023 amendment, this oral statement by Mr. Pooley may have been inadmissible hearsay, it is admissible under the current version of Rule 106, as specified in the rule itself and in the advisory committee notes.  If admitted, the oral statement should be introduced at the same time as the letter the government plans to introduce, if practicable.  FED. R. EVID. 106 ADVISORY COMMITTEE NOTES, 2023 AMENDMENTS ("The rule retains the language that completion is made at the time the original portion is introduced.").  However, this Court has discretion to introduce the oral statement at a later time.  *Id.* ("Nothing in the amendment is

intended to limit the court's discretion to allow completion at a later point."). Here, it is unclear whether the government will call Mr. Hall as a witness at all and it is unclear when, and through which witness, the government will introduce the letter. Therefore, the defense will request, at the appropriate time, that the oral statement to Mr. Hall be introduced. If Mr. Hall is not on the stand when the letter is introduced, the defense requests that the oral statement be introduced later when he does testify. If the government does not call Mr. Hall as a witness, the defense plans to call him.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: May 6, 2024

/s/ Mia Crager
MIA CRAGER
MEGHAN McLOUGHLIN
Assistant Federal Defenders
Attorneys for Defendant
ROBERT POOLEY