HEATHER E. WILLIAMS, SBN 122664
Federal Defender
MIA CRAGER, SBN 300172
MEGHAN McLOUGHLIN, SBN 354051
Assistant Federal Defenders
801 I Street, Third Floor
Sacramento, California 95814
T: (916) 498-5700
F: (916) 498-5710

Attorneys for Defendant
ROBERT POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 2:21-CR-111-WBS |
| Plaintiff, | ) |
| | ) **MOTION FOR JUDGMENT OF** |
| vs. | ) **ACQUITTAL** |
| | ) |
| ROBERT POOLEY, | ) Date: July 1, 2024 |
| | ) Time: 9:00 a.m. |
| Defendant. | ) Judge: Hon. William B. Shubb |
| | ) |

## I.   INTRODUCTION

Following a jury trial, Mr. Pooley was acquitted of one count of wire fraud and convicted on three further counts of wire fraud and two counts of aggravated identity theft. The Court entered a judgement of acquittal following the verdicts as to Counts 4 (wire fraud) and Count 6 (aggravated identity theft).[1]

The defense now moves for a judgment of acquittal as to Count 5, aggravated identity theft. Count 5 alleges that Mr. Pooley used the signatures of Yuri Garmashov on the U.S. Parachute Association certification forms of Yongheon Kwon. Even in the light most favorable to the government, Count 5 cannot stand because the government did not prove that Mr.

---

[1] Counts 4 and 6 related to a person named Lachlan Morgan Mackay, who did not testify and for whom the government did not present sufficient evidence of his involvement in the alleged scheme to defraud.

Garmashov's signature was "at the crux" of the wire fraud alleged in the indictment.

## II.   LEGAL STANDARD

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter acquittal." FED. R. CRIM. P. 29(c)(2).  A motion for judgment of acquittal may be filed within fourteen days following the verdict.  FED. R. CRIM. P. 29(c)(1).  Entry of a judgment of acquittal is proper if the court concludes, after viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in the government's favor, that no reasonable juror could find the defendant guilty of the crime charged beyond a reasonable doubt.  *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002).

## III.   ARGUMENT

### A. *Dubin v. United States* requires that the means of identification be "at the crux" of the fraud charged in the indictment.

The government indicted Mr. Pooley in 2021.  Two years later, the Supreme Court narrowed the scope of the aggravated identity theft statute in *Dubin v. United States*, 599 U.S. 110 (2023).  The statute states, "Whoever, during and *in relation to* any felony violation [including wire fraud], knowingly transfers, possesses, or *uses*, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A (emphasis added).  The *Dubin* Court interpreted the terms "uses" and "in relation to." *Id.* at 118-120.

The government argued that a person was guilty of aggravated identity theft when the means of identification "facilitates or furthers" the predicate offense. *Id.* at 117.  The Court began by trying to interpret "uses" and "in relation to" as standalone terms, but found them to be indeterminate. *Id.*  The Court then looked to the context of those words in the statute and neighboring statutes. *Id.* at 120-123.

The Court rejected "[t]he Government's broad reading [of § 1028A], covering any time another person's means of identification is employed in a way that facilitates a crime," because it "bears little resemblance to any ordinary meaning of 'identity theft.'" *Id.* at 122.  The Court analyzed the provision's title, "Aggravated identity theft," to "shed light on its text." *Id.* at 120-

21. The title "point[ed] to a narrower reading [than the government proposed], one centered around the ordinary understanding of identity theft." *Id.* at 120.

The Court also thoroughly analyzed § 1028A's text, which "points in the same direction as its title.  In particular, Congress used a trio of verbs that reflect an ordinary understanding of identity theft." *Id.* at 124.  The Court noted that the statute's other verbs – "transferring" someone's identification and "possessing" someone's identification – "not only connote theft, but identity theft in particular." *Id.* at 125.  "Using" someone's identification simply "captures [another] aspect of 'classic identity theft.'" *Id.*

Finally, the Court noted that section 1028A "is an enhancement, and a severe one at that.  It adds a 2-year mandatory prison sentence onto underlying offenses that do not impose a mandatory prison sentence of any kind." *Id.* at 127.  Applying this enhancement any time an identification "facilitated" or was the "but-for cause" of a fraud's success would lead to "indiscriminate" applications of this harsh punishment. *Id.* at 129.  "A far more sensible conclusion from the statutory structure is that § 1028A(a)(1)'s enhancement is not indiscriminate, but targets situations where the means of identification itself plays a key role— one that warrants a 2-year mandatory minimum." *Id.*

The Court therefore concluded that a person "uses" an identification "in relation to" a fraud offense only where the identification played a "central role" in the predicate fraud. *Id.* at 122-23.  Said differently, the identification must be "at the crux" of the fraud. *Id.* at 114 ("[Section] 1028A(a)(1) is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal . . . .").  It is not enough for the identification to facilitate or further the predicate fraud crime, or even for it to be the but-for cause of its success. *Id.* ("To be clear, being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'").

**B. Mr. Garmashov's signature was not "at the crux" of the fraud on the tandem candidates.**

Even in the light most favorable to the government, Mr. Garmashov's signature was not

1  "at the crux" of the fraud offense of which Mr. Pooley stands convicted.

2      The evidence presented at trial, in the light most favorable to the government, was that tandem instructor candidates came to the Lodi Parachute Center on the false pretense that Mr. Pooley could validly teach them and help them obtain "tandem instructor ratings" from the U.S. Parachute Association and the company Uninsured United Parachute Technologies, LLC ("UPT").  Mr. Pooley was suspended from teaching the courses under the rules of the Parachute Association and UPT, and therefore he could not validly obtain the "ratings" for the candidates. The government's witnesses testified that they believed that Mr. Pooley was holding himself out as the teacher of the courses – namely, a valid "Tandem Examiner."

    Later, at the end of the courses, witnesses testified that Mr. Pooley provided forms bearing the name and signature of Yuri Garmashov as the "Tandem Examiner."  Witnesses testified that it was always Mr. Garmashov's name and signature on the forms as Tandem Examiner; Mr. Pooley's name and signature were never listed under "Tandem Examiner."

    One witness, Fabian Munoz, testified that Mr. Pooley did not provide forms to him at all. Mr. Munoz testified that he (Munoz) printed blank forms himself and gave them to Mr. Pooley and that Mr. Pooley never signed the forms as Tandem Examiner.  Mr. Munoz also testified that he saw the signatures of Yuri Garmashov on the forms of another person in his course.

    The defense argued that the forms in fact revealed the truth to the applicants: that Mr. Pooley was not the "Tandem Examiner," that the Examiner was Yuri Garmashov (not Mr. Pooley), and that the candidates would have to lie to the Parachute Association to get their ratings.

    In response, the government argued that the fraud was essentially complete by the time the candidates saw the forms.  The government emphasized that before they saw the forms bearing Mr. Garmashov's signatures, the candidates had already decided to travel to the Lodi Parachute Center, enroll in the course under false pretenses, and had already parted with their money.

    The signatures cannot be "at the crux" of the fraud on the tandem instructor candidates, because the signature played no part in the false representations that caused the candidates to part

with money.

## IV. CONCLUSION

Count 5 cannot stand under *Dubin*. The defense respectfully requests that the Court enter a judgment of acquittal as to Count 5 pursuant to Rule 29.

                                      Respectfully submitted,

                                      HEATHER E. WILLIAMS
                                      Federal Defender

Date: June 6, 2024                     */s/ Mia Crager*
                                      MIA CRAGER
                                      MEGHAN McLOUGHLIN
                                      Assistant Federal Defenders
                                      Attorneys for Defendant
                                      ROBERT POOLEY