```
 1                IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
 2

 3     United States of America,
              Plaintiff,
 4
       vs.                              Sacramento, California
 5                                      No. 2:21-cr-00111
       Robert Allen Pooley,             Tue., May 21, 2024
 6            Defendant.                11:16 a.m.
       _____/
 7
                   TRANSCRIPT OF TESTIMONY OF CORRY NOEL
 8          BEFORE THE HONORABLE WILLIAM B. SHUBB, SENIOR JUDGE
                            ---oOo---
 9

10     APPEARANCES:

11      For the Plaintiff:            United States Attorney
                                      501 I Street, Suite 10-100
12                                    Sacramento, California  95814
                                      By:  Katherine Lydon
13                                    Dhruv M. Sharma
                                      Assistants U.S. Attorney
14

15      For the Defendant:           Office of the Federal
                                      Defender
16                                    801 I Street, 3rd Floor
                                      Sacramento, California  95814
17                                    By: Mia Crager
                                      Meghan McLoughlin
18                                    Assistants Federal Defender

19
        Official Court Reporter:     Kimberly M. Bennett,
20                                    CSR, RPR, RMR, CRR
                                      501 I Street
21                                    Sacramento, CA 95814

22

23     Proceedings recorded by mechanical stenography, transcript
       produced by computer-aided transcription
24

25
```

1                                    INDEX

2

3      GOVERNMENT WITNESS:                                    PAGE:

4

5      CORRY NOEL
       DIRECT EXAMINATION BY MR. SHARMA.....................5
6      CROSS-EXAMINATION BY MS. MCLOUGHLIN.................28

7              GOVERNMENT EXHIBITS RECEIVED IN EVIDENCE

8      NO.:                                                  PAGE:

9

10     600-620, 700-707, 1302, 1304, 1305-1314.............5
       1...................................................5
11     818................................................12

12

13             DEFENSE EXHIBITS RECEIVED IN EVIDENCE

14     NO.:                                                  PAGE:

15      2188..............................................33

16

17

18

19

20

21

22

23

24

25

1                    THE COURT:  You may call your next witness.

2                    MR. SHARMA:  Thank you, Your Honor.  The government

3    calls Corry Noel.

4                    THE CLERK:  Please step forward, all the way up to

5    the witness stand, and remain standing, please.

6         Raise your right hand.

7         (The Witness, CORRY NOEL, is sworn.)

8                    THE WITNESS:  Yes, I do.

9                    THE CLERK:  Thank you.  You may be seated.

10        Please state your full name.  Spell your name for the

11   record.

12                   THE WITNESS:  My name is Corry, C-O-R-R-Y.  Middle

13   name Don, D-O-N.  Last name Noel, N-O-E-L, just like Christmas.

14                   MR. SHARMA:  Your Honor, before we start, this is the

15   stipulation that we filed last night.

16                   THE COURT:  Do you want to read that to the jury or

17   just file it?

18                   MR. SHARMA:  Sure -- well, it's already filed.

19                   THE COURT:  All right.

20                   MR. SHARMA:  But I can --

21                   THE COURT:  You had some boxes with it.  Did you want

22   to show it to the jury?

23                   MR. SHARMA:  No, there is no boxes on this one.

24   But -- oh, yeah.  Sure.

25        So we have a stipulation with the defense to enter Exhibits

1  500 to 501 -- 500 through 519, 600 through 620, and 700 to 707,

2  and then 1301 through 1314.

3          THE COURT:  Now, are some of these already in

4  evidence?

5          MR. SHARMA:  No.  So we're entering them into

6  evidence now based on the stipulation.

7          THE COURT:  All right.  Hold on a second.

8      Wasn't the Tandem Instruction For Dummies already

9  mentioned?

10          MR. SHARMA:  Correct, Your Honor.  So the 500 series

11  were already discussed with a different agent.

12          THE COURT:  Were they received in evidence?

13          MR. SHARMA:  They were received in evidence, I

14  believe.

15          THE COURT:  Are we communicating here?  I thought I

16  asked you if any of these exhibits were already in evidence.

17  You said no.

18          MR. SHARMA:  Sorry.  I misunderstood the question.

19  The exhibits --

20          THE COURT:  I'm done asking questions.

21          MR. SHARMA:  Okay.

22          THE COURT:  What do you want me to do now?  Inform

23  the jury?

24          MR. SHARMA:  I'd like to enter Exhibits 600 through

25  620, 700 to 707, and 1302, 1304, 1305 to 1314 into evidence.

1          THE COURT:  That's part of your stipulation, Counsel?

2          MS. MCLOUGHLIN:  Yes, Your Honor.  No objection.

3          THE COURT:  All right.  Then that will be the order.

4  Exhibits 600 through 620, 700 through 707, and 1302, 1304, 1305

5  through 13 --

6          MR. SHARMA:  1314.

7          THE COURT:  -- 13 -- is it --

8          MR. SHARMA:  1314.

9          THE COURT:  -- through 1314 are received in evidence.

10     (GOVERNMENT'S EXHIBITS 600-620, 700-707, 1302, 1304,

11  1305-1314 ADMITTED INTO EVIDENCE.)

12          MR. SHARMA:  And then we just spoke about entering

13  Exhibit 1 into evidence as well.

14          THE COURT:  Any objection?

15          MS. MCLOUGHLIN:  No, Your Honor.

16          THE COURT:  Exhibit 1 is not in evidence yet,

17  correct?

18          MR. SHARMA:  Correct, Your Honor.

19          THE COURT:  Exhibit 1 is received in evidence.

20     (GOVERNMENT'S EXHIBIT 1 ADMITTED INTO EVIDENCE.)

21          MR. SHARMA:  Thank you, Your Honor.

22                       DIRECT EXAMINATION

23  BY MR. SHARMA:

24  Q.  Good morning, Mr. Noel.

25  A.  Good morning.

1  Q.  Let's start with why you're here.  Did you conduct a

2  forensic review of a number of devices that were seized from

3  Parachute Center?

4  A.  Yes, I did.

5  Q.  So let's talk about your educational background.

6  A.  Yes.

7  Q.  And what is your educational background?

8  A.  I have bachelor's and master's degrees, both in accounting.

9  Q.  Okay.  And who do you work for?

10  A.  I work for the US Department of Transportation Office of

11  Inspector General.

12  Q.  And how long have you worked there?

13  A.  I've been working there since January of 2006.

14  Q.  What's your role there?

15  A.  I am a criminal investigator with them.  I'm a federal law

16  enforcement officer.  But also, as my other hat that I wear

17  with them, I am a computer forensic specialist or examiner,

18  depends on who you're talking to.

19  Q.  Do you work within a special unit at the department?

20  A.  Yes.  Within the Office of the Inspector General, there is

21  a unit called data analytics --

22          THE COURT REPORTER:  I'm sorry.  You've got to slow

23  down.

24          THE WITNESS:  Sure.  I'll slow down.

25      It's the data analytics and computer crimes unit.

1    Q.   BY MR. SHARMA:   And how long have you worked in that

2    specific role?

3    A.   I began there with them full-time in 2014.

4    Q.   What are some of your duties in that computer forensics

5    role?

6    A.   We're responsible for assisting of the other general agents

7    throughout the country with reviewing and acquiring electronic

8    media of different types, whether it's phones, servers, laptop

9    computers, and of the like.

10   Q.   So when you get these media, like you said, do you look at

11   them as well?

12   A.   Yes.  We review them, yes.

13   Q.   You look for evidence on those devices?

14   A.   Yes, we do.

15   Q.   Do you -- did you receive any training in computer

16   forensics?

17   A.   Yes, I have.

18   Q.   What sort of training have you received?

19   A.   The basic training that we received as criminal

20   investigators is called the Seized Computer Evidence Recovery

21   Specialist.  Short for SCERS.  Of course we have acronyms for

22   everything in the government.  Pretty much the basic class you

23   take.  And then from there, each additional class is built upon

24   that.

25   Q.   Okay.  Any specific training -- those are all specific to

1   computer forensics?

2   A.   Yes.  I've taken umpteen pieces of training throughout my

3   career.  I can't list all of them.

4   Q.   Okay.  But you have a -- do you have a resumé with that

5   listed?

6   A.   Yes.

7   Q.   Have you received any certifications in computer forensics?

8   A.   Yes.  I have my CFCE, which is my Certified Forensics

9   Computer Examiner training from the International Association

10  of Computer Investigative Specialists.

11  Q.   And when did you get that certification?

12  A.   I got that in 2015.

13  Q.   Okay.  And do you have to go through a process where you

14  have to get that recertified?

15  A.   Yes.  It's every three years.

16  Q.   Every three years?

17  A.   Yes.  And I'm due for it this year, yes.

18  Q.   Got it.  So you will then be recertified in 2018, 2021?

19  A.   That is correct.

20  Q.   And what do you need to do to get recertified?

21  A.   There is a recertification test that we have to take.  But

22  also, I have a minimum of 120 hours every three years, just

23  about an average of about 40 hours per year.

24  Q.   This is all on computer forensics?

25  A.   That is correct.

1  Q.  And while you've been in this role, how many -- how many

2  cases have you worked on where you've engaged in computer

3  forensic examinations?

4  A.  Oh, probably -- probably hundreds.

5  Q.  Hundreds?

6  A.  Yes.

7  Q.  More than 200?

8  A.  About that.  It's probably about that.  Maybe a little bit

9  more.

10  Q.  Okay.  And in those cases, have you rendered opinions about

11  evidence that you obtained from devices that you examined?

12  A.  Yes, I have.

13        MR. SHARMA:  Your Honor, the government wishes to

14  tender Special Agent Noel as an expert in the field of computer

15  forensics.

16        THE COURT:  Would you like to ask any questions on

17  voir dire?

18        MS. MCLOUGHLIN:  No, Your Honor.  No objection.

19        THE COURT:  Proceed.

20  Q.  BY MR. SHARMA:  All right.  Now let's switch over to the

21  Parachute Center.

22  A.  Yes.

23  Q.  Were you involved in an investigation into a skydiving

24  operation known as the Parachute Center?

25  A.  Yes.

1  Q.  And as part of that investigation, were you involved in the

2  search of a premises of the Parachute Center?

3  A.  Yes, I was.

4  Q.  And was that on January 30, 2018?

5  A.  Yes.

6  Q.  Turn your attention to Exhibit 801.  This is already in

7  evidence.

8      Do you recognize that building?

9  A.  Yes, I do.

10  Q.  Is that where you performed the search warrant?

11  A.  Yes.

12  Q.  Okay.  And I can turn you to Exhibit 808, also in evidence.

13      Do you generally recognize what this picture is?

14  A.  Yes, I do.

15  Q.  And what is it?

16  A.  It's the inside of the building.  I believe it was Building

17  A.

18  Q.  Okay.  Were there other agents involved in your search?

19  A.  Yes.

20  Q.  What was your specific role that day?

21  A.  In addition to actually clearing the building to ensure it

22  was safe to search the facility, my secondary role was to go in

23  and find pieces of electronic media.

24  Q.  And when you found -- when you say "media," do you mean,

25  like, computers and other devices?

1    A.   Yes.  It's kind of a catchall term, yes.

2    Q.   Got it.  And when you -- when you identified a media or a

3    device, what was the process for looking at it?

4    A.   One, we would determine where we found it within the

5    facility.  And then we would determine whether we wanted to

6    take it by -- eventually get to the point where we want to make

7    a copy of it.

8    Q.   Okay.  So when you see a device you want to make a copy of,

9    what do you mean by that?

10   A.   Meaning we take the -- we go inside the media -- inside of

11   the media, and within the media, there is a storage area within

12   there, and we want to make a copy of that storage area.

13   Q.   Okay.  And you make this copy onto another device?

14   A.   Yes.

15   Q.   Is the copy an identical copy of what's on the device?

16   A.   Yes, it is.

17   Q.   And then are you able to look at that copy at a later date?

18   A.   Yes.

19   Q.   To -- okay.

20        Now, during your search, did you seize a HP A2E desktop

21   computer?

22   A.   Yes, we did.  Yes.

23   Q.   Turn your attention to Exhibit 816.

24        Do you recognize this picture?

25   A.   Yes.  I believe that's the wall where -- in Building A --

```
 1    one of the walls in Building A.
 2    Q.  And let me just zoom in to this.
 3         Did you notice a desktop computer sitting there?
 4    A.  Yes.  You can see the keyboard and the monitor on the desk
 5    right there.
 6    Q.  Is that the desktop computer you seized?
 7    A.  Yes.
 8    Q.  Okay.  Turning to Exhibit 818 in the binder.  Let me just
 9    come help you.
10    A.  You said 818?
11    Q.  Do you recognize that picture?
12    A.  Yes, I do.
13    Q.  What's it a picture of?
14    A.  It's a picture of the desktop where the computer was found.
15    Q.  That's another picture?
16    A.  Yes.
17              MR. SHARMA:  Government moves to enter 818 into
18    evidence.
19              THE COURT:  Any objection?
20              MS. MCLOUGHLIN:  No objection.
21              THE COURT:  Exhibit 818 is received in evidence.
22        (GOVERNMENT'S EXHIBIT 818 ADMITTED INTO EVIDENCE.)
23              MR. SHARMA:  Can we publish, please.
24    Q.  BY MR. SHARMA:  It's a little dark on the screen, but can
25    you see sort of that blue -- looks like a cover?
```

1   A.   Yes.

2   Q.   Was that on the computer you seized or around the computer

3   you seized?

4   A.   Yes.  It was laid over the top of it, yes.

5   Q.   Got it.  Now flip you over to Exhibit 1302.  This is in

6   evidence.

7   A.   1302?

8   Q.   You don't have to look at it.  It's already -- it will show

9   up on the screen.

10       Is this another picture of the desktop?

11  A.   Yes, it is.

12  Q.   Okay.  Let's flip to the pages.

13       So the next page, just another picture of it?

14  A.   Yes.  With the cover removed from it, yes.

15  Q.   Next page.

16       What's this a picture of?

17  A.   It's the back of the computer, the network connections and

18  things of that nature.

19  Q.   Got it.  The next page, what's this a picture of?

20  A.   This is a picture of the -- the screen inside the computer,

21  showing the operating system it is and other specs of the

22  computer.

23  Q.   What was the computer system?

24  A.   Windows 7 Professional.

25  Q.   All right.  Let's flip you over.

1          And what's happening now?

2     A.   This is the desktop computer with the -- part of the

3     chassis removed off one side of it.

4     Q.   Okay.  And why did you take off the cover?

5     A.   It was to get to the hard drive that's inside of the

6     computer.

7     Q.   All right.  Flip you over.

8          Is that the hard drive you're talking about?

9     A.   Yes.

10    Q.   Okay.  And then one more.

11         And is that the same hard drive?

12    A.   Yes.

13    Q.   Did you clean it?

14    A.   Yes.

15    Q.   Okay.  I think that's the end of it.

16         Okay.  Now once you extracted the hard drive from this

17    device, did you make a copy of the contents like you talked

18    about earlier?

19    A.   Yes, we did.  Yes.

20    Q.   And then did you look through those contents?

21    A.   Yes.

22    Q.   Was the computer sort of organized into folders?

23    A.   Yes.  That's the way the operating system organizes things,

24    yes.

25    Q.   Can I show you Exhibit 1305, please, already in evidence.

1          Is this what it looked like?

2     A.   Yes, it is.

3     Q.   Okay.  And did you open any of these folders?

4     A.   Yes, I did.

5     Q.   Did you open the folder that's marked -- that says Bill?

6     A.   Yes, I did.

7     Q.   Okay.  Can we flip you over to 1306, please.

8          Is this the -- sort of the contents of that folder?

9     A.   Yes.  It is one of the folders, yes.

10    Q.   Flipping to the next page over, on 1306.  All right.

11         So can you -- can you explain the top part over here,

12    the -- looks like it's the file path of the folder?

13    A.   Yes.  That's exactly what it is.  That is the file path of

14    where it was found on that computer.

15    Q.   All right.  So this folder is the Complete Paperwork

16    Package folder?

17    A.   Yes.

18    Q.   And New Docs folder?

19    A.   Yes.

20    Q.   In a folder called Robs Docs?

21    A.   Yes.

22    Q.   Okay.  Let's zoom out.

23         And then some of the documents here are, New A License Prof

24    Card; USPA Membership App; Yur underscore Rob Canopy Prof Card;

25    Yuri Tandem Prof Card Signed; Yuri UPT Waiver.

1          Do you see all that?

2     A.   Yes, I see it.  Yes.

3     Q.   Now did you -- did you happen to look at some of those

4     documents?

5     A.   Yes, I did.

6     Q.   Before we go there, let me just flip you back over a page,

7     please.  And zoom in to this section over here.

8          Now there are some dates next to these documents.  Could

9     you explain what -- what the date -- what the date created

10    means and why it's the same date?

11    A.   Yes.  In my opinion, it looks as if these documents were

12    copied from another piece of media at the same time.  Those are

13    the dates in which they were copied.

14    Q.   Okay.  And then what does the date mean -- the modified

15    date mean?

16    A.   The modified date means the date in which the file was

17    changed.

18    Q.   Okay.  So created doesn't necessarily mean that that's when

19    the documents were created but only when they were moved to

20    this device?

21    A.   Moved to this device.  This copy in this location.  It's

22    more specific than that.

23    Q.   Got you.

24    A.   Yes.

25    Q.   Got you.

1          Now you looked through some of these documents, right?

2     A.   Yes, I did.

3     Q.   Can I take you to 601, please.

4          And is this one of the documents you looked at?

5     A.   Yes, it is.

6     Q.   Flip you over to the next page.

7          And it's got a signature on the bottom corner there?

8     A.   Yes.

9     Q.   Okay.  Let's look at 602.

10         And you see some more signatures on this document?

11    A.   Yes, I do.

12    Q.   And the next page.  And then 603.

13         Same thing here?

14    A.   Yes.

15    Q.   One of the documents you looked at?

16    A.   Yes, it is.

17    Q.   With the signature at the bottom?

18    A.   Yes.

19    Q.   Okay.  Let's do 605, please.

20         This is a UPT -- United Parachute Technologies tandem

21    instructor certification form, right?

22    A.   Yes.  That's what it says, yes.

23    Q.   It's got a number of signatures?

24    A.   Yes.

25    Q.   And it says, Name of Examiner, Yuri Garmashov?

1    A.   Yes, it does.

2    Q.   606, please.

3         And this is a tandem instructor rating course proficiency

4    card?

5    A.   Yes.

6    Q.   And it also has a number of signatures?

7    A.   Yes.

8    Q.   But no other information on it?

9    A.   That is correct.

10   Q.   Next page over, please.

11        And then in the corner, under rating recommendation, it

12   says, Yuri Garmashov?

13   A.   Yes.

14   Q.   Okay.  Let's go to 607, please.  And can we just look --

15   flip through the pages.  Keep going.  Next.

16        And another signature on this one?

17   A.   Yes.

18   Q.   So these are all documents you found in that Robs Docs

19   folder?

20   A.   Yes.

21   Q.   Now, did you navigate to other folders?

22   A.   Yes, I did.

23   Q.   Let's go to Exhibit 1307, please.

24        Now, are these some of the folders you looked at on the

25   computer?

1    A.  Yes.

2    Q.  Did you go to the folder named Sent Items?

3    A.  Yes, I did.

4    Q.  Show you Exhibit 1308, please.  Let's go to the next page.

5        All right.  So is this sort of a zoomed in version of that

6    last page?

7    A.  Yes, it is.

8    Q.  Were these documents found in that Sent Items folder?

9    A.  Yes.

10   Q.  All right.  Let's go back one.  Actually, I'll take you

11   to --

12       Did you open these files?

13   A.  Yes, I did.

14   Q.  Can I take you to Exhibit 1A, please -- 1.  Sorry.

15       Is this one of the e-mails or the documents that you opened

16   up on that folder?

17   A.  Yes, it is.

18   Q.  In the Sent Mail folder?

19   A.  Yes.

20   Q.  And this is an e-mail from Parachute Center to Rob Pooley,

21   right?

22   A.  That is correct.

23   Q.  Dated June 28, 2016?

24   A.  Yes.

25   Q.  And the subject is, Forward, Tandem Ratings?

1   A.   Yes.

2   Q.   And the bottom zoom, that e-mail looks like an e-mail from

3   Skydive Baja that says, I want more info about getting my

4   tandem ratings with you guys, right?

5   A.   Yes.

6   Q.   It asks some questions?

7   A.   Yes.

8   Q.   Let's zoom out.

9        And then the forward part of it from Kathy Dause to Rob,

10  correct?

11  A.   Yes.

12  Q.   Saying, I think this is more your expertise?

13  A.   Yes.

14  Q.   Okay.  And then can we go to Exhibit 700, please.

15       Now these are more e-mails?

16  A.   Yes.

17  Q.   Right at the bottom, this is an e-mail from Lassi-Pekka

18  Ruuskanen to paractr@softcom.net?

19  A.   Yes.

20  Q.   It says, Looking for a tandem instructor job for next

21  winter?

22  A.   Yes.

23  Q.   Okay.  Let's get out of that one -- or zoom out, please.

24       And right at the top, it says, We use Sigma rigs here, but

25  Rob Pooley can switch you over to that rating, right?

 1    A.   Yes.

 2    Q.   Tandems pay $20 plus tips?

 3    A.   Yes.

 4    Q.   The subject of the e-mail was, Looking For Tandem

 5    Instructor Job?

 6    A.   Yes.

 7    Q.   Let's go to 701.

 8         All right.   This is an e-mail from Kathy Dause to Gavin

 9    Creagh?

10    A.   Yes.

11    Q.   Tandem Rating September?

12    A.   Yes.

13    Q.   And in the body of the e-mail, Kathy says, I'll give you

14    Rob's e-mail address?

15    A.   Yes.

16    Q.   And the original e-mail from Gavin says, Wondering when the

17    closest course date is for tandem rating?

18    A.   Yes, it is.

19    Q.   Let's go to 703.

20         This is another e-mail where Parachute Center says, Hi,

21    Rob.   I think you can answer this better than I can?

22    A.   Yes.

23    Q.   And the body of the e-mail below, it says, The person wants

24    to do a strong tandem master course?

25    A.   Yes.

1    Q.   704.  Again, an e-mail from Parachute Center to Rob --

2    A.   Yes.

3    Q.   -- right?

4         Could you answer this for me, please?

5    A.   Yes.

6    Q.   Dated August 1, 2016?

7    A.   Yes.

8    Q.   And in the body of it, the person seems to be asking for

9    tandem master lessons?

10   A.   Yes.

11   Q.   Okay.  Over to 705.

12        Another similar e-mail?

13   A.   Yes.

14   Q.   Rob Pooley is who you need to speak to?

15   A.   Yes.

16   Q.   He can give you all the information on tandem ratings,

17   right?

18   A.   Yes.

19   Q.   And that's, again, from Parachute Center to Lachlan Fox?

20   A.   Yes.

21   Q.   With the subject, Tandem Rating?

22   A.   Yes.

23   Q.   And then one -- 706.

24        706 is from Parachute Center to Mickey Jeffet?

25   A.   Yes.

1    Q.  Let's move over to the next page, please.

2        And right at the bottom, kind of, see that he says, He's

3    coming this summer in order to train and get tandem AFF

4    ratings.

5        Do you see that?

6    A.  Yes, I do.

7    Q.  Zoom out.

8        The response to that is, Hi, Mickey.  I forwarded your

9    e-mail to Rob Pooley, and he should be answering shortly,

10   right?

11   A.  Yes.

12   Q.  On the tandem AFF course?

13   A.  Yes.

14   Q.  Okay.  And then one more.  707, please.

15       And this is from Parachute Center to Richard Keir with a cc

16   to Rob Pooley?

17   A.  Yes.

18   Q.  Give you Rob Pooley's e-mail address; he's the one that

19   gives tandem ratings?

20   A.  Yes.

21   Q.  Thank you.  All right.

22       Now, did you, during your search, also seize a Western

23   Digital hard drive?

24   A.  Yes, we did.

25   Q.  Look at Exhibit 1304, please.  One three zero four.

1      Is that the hard drive you seized?

2  A.  Yes.

3  Q.  Okay.  Did you look at the -- did you copy the contents

4  just like the other device?

5  A.  Yes, we did.

6  Q.  And you looked at those contents?

7  A.  Yes.

8  Q.  All right.  Let me turn your attention to 1309.

9      Are these folders that you saw on that hard drive?

10 A.  Yes.

11 Q.  Did you open that Rob folder?

12 A.  Yes.

13 Q.  Let's look at 1310.  And let's look at the next page.

14     Is this a zoomed-in version of that last page?

15 A.  Yes.

16 Q.  Now this is a folder called Robs Docs, right?

17 A.  Yes.

18 Q.  And see two images -- two jpegs down there, Yuri Initials

19 and Yuri Signature?

20 A.  Yes.

21 Q.  Did you look at those -- those pictures?

22 A.  Yes, I did.

23 Q.  Can I show you 609, please.

24     Is that the Yuri Initials --

25 A.  Yes, it is.

1    Q.   -- picture?

2    A.   Yes, it is.

3    Q.   And then 600.

4         Is that the Yuri Signature --

5    A.   Yes, it is.

6    Q.   -- file?

7         And turning you back to 1311.  Next page.

8         All right.  So now the same -- is this the same hard drive?

9    A.   Yes, it is.

10   Q.   Same folder -- different folder but the same sort of file?

11   A.   Yes.

12   Q.   Again, in a folder called New Docs in Robs Docs?

13   A.   Yes.

14   Q.   And you see a number of different documents in here?

15   A.   Yes.

16   Q.   Okay.  Did you look at those documents?

17   A.   Yes, I did.

18   Q.   Can we quickly go through 611.

19        Now I'll just flip through these quickly.  But can you just

20   tell me if these are the documents you saw in that folder?

21   A.   Yes.

22   Q.   611?

23   A.   Yes.

24   Q.   613?

25   A.   Yes.

```
 1   Q.   615 -- sorry -- 614?

 2   A.   Yes.

 3   Q.   Flip it over a page, please.

 4        615?

 5   A.   Yes.

 6   Q.   615 [sic]?

 7   A.   Yes.

 8   Q.   And 617?

 9   A.   Yes.

10   Q.   Flip that over a page, please.

11   A.   Yes.  I've seen this, yes.

12   Q.   Take you back to 1312.

13        Is this another folder that you looked up on that device?

14   A.   Yes.

15   Q.   And zoom over on to the next page, please.

16        And did you see a file called Lachlan Mackay on this

17   folder?

18   A.   Yes.

19   Q.   And, again, this is a folder called Candidate Paperwork on

20   a folder called Robs Docs?

21   A.   Yes.

22   Q.   Okay.  Can I flip you to 618, please.

23        Is that the document that was entitled Lachlan Mackay?

24   A.   Yes.

25   Q.   Next page over.
```

1       Same document?

2   A.  Yes, same document.

3   Q.  Okay.  And then I'll take you to Exhibit 1313.

4       Are these more folders on that device?

5   A.  Yes, it is.

6   Q.  Okay.  Did you open a folder called Transcoded Files?

7   A.  Yes.

8   Q.  And that was contained in a folder called Robs Docs?

9   A.  Yes.

10  Q.  Can we go to 1314.  And let's just zoom in right here.

11      So on this folder, did you see some images, Yuri Initials,

12  Yuri Signature, Rob Signature, and Rob Initials?

13  A.  Yes.

14  Q.  Okay.  Let's zoom out and take you to 612.

15      Did you look at those files?

16  A.  Yes, I did.

17  Q.  Is this the file entitled Yuri Initials?

18  A.  Yes.

19  Q.  Let's go to 616.

20      And is that Yuri's Signature?

21  A.  Yes, it is.

22  Q.  And 619.

23      Is that Rob Initials?

24  A.  Yes.

25  Q.  And 620.

1        Rob Signature?

2    A.  Yes.

3    Q.  And those are all files that you looked at?

4    A.  Yes.

5            MR. SHARMA:  No further questions, Your Honor.

6            THE COURT:  Any cross-examination?

7            MS. MCLOUGHLIN:  Yes, please, Your Honor.

8                        CROSS-EXAMINATION

9    BY MS. MCLOUGHLIN:

10   Q.  Good afternoon.

11   A.  Good afternoon.

12           THE COURT:  It's still morning.

13           THE WITNESS:  Yeah.

14           MS. MCLOUGHLIN:  Oh.  Good morning.  Yes.  Thank you,

15   Your Honor.

16           THE WITNESS:  We've got 13 minutes.

17           MS. MCLOUGHLIN:  Okay.  Well, at least I was close.

18   Q.  BY MS. MCLOUGHLIN:  Okay.  I'd like to start discussing the

19   hard drive -- the first device that you were talking about --

20   the computer, the desktop.

21   A.  The desktop.  Gotcha.

22   Q.  Let's bring up a picture of that.  That would be

23   Government's Exhibit 816.

24       So you said the computer was right there, correct?

25   A.  Yes.

1    Q.   And we can zoom out of that, actually.  Thank you.

2         This desktop is not in an office, right?  It's not

3    separated from the rest of this room?

4    A.   Correct.

5    Q.   There is no walls surrounding it?

6    A.   That is correct, yes.

7    Q.   There is no door to get into the space where the computer

8    is?

9    A.   From what I can tell, yes, that's correct.

10   Q.   This looks like a large open area, right?

11   A.   Yes.

12   Q.   With many, many items in it?

13   A.   Oh, yeah.

14   Q.   Okay.  So you said you found documents referred to -- or

15   documents in the folder labeled Bill, correct?

16   A.   Yes.

17   Q.   Let's go to Exhibit 1305.

18        And that's right here, right?

19   A.   Yes.

20   Q.   Okay.  This user profile wasn't password protected, was it?

21   A.   I don't remember.  I don't remember.

22   Q.   Okay.  There was no password to enter any of these folders,

23   was there?

24   A.   Oh, I -- I don't remember.

25   Q.   Okay.

1    A.   Because we don't look at it through the operator system.

2    Passwords are looked at through the operator system.

3    Q.   Understood.

4         Now I'd like to --

5         We can take that away.   Thank you.

6         And I want to talk about one e-mail you found on the

7    computer, just to revisit one of the exhibits you were looking

8    at.   And I will just continue to walk back and forth between

9    these two podiums.   If we could bring up Exhibit 706, please.

10        And so this is an exhibit of one of the e-mails you found

11   on that desktop, correct?

12   A.   Yes.

13   Q.   The latest e-mails, it looks like, are dated July 1, 2015,

14   correct?

15   A.   According to that header, yes.

16   Q.   Let's go to page 2, please.   And down here, I'll zoom in

17   right here.

18        You had noted on direct that there was discussion here

19   about tandem ratings -- tandem ratings and -- there was a

20   discussion about tandem ratings here, right?

21   A.   Yes.

22   Q.   And the date here is April 26, 2015?

23   A.   Yes.

24   Q.   And the date on which someone from the Parachute Center

25   responded was on April 27, 2015?

1   A.   Yes.

2   Q.   And can we zoom out again, please.   Thank you.

3        I'm just going to do one more.   And the first discussion is

4   on May 18, 2015, correct?

5   A.   Yes.

6   Q.   Thank you.

7        Now I'd like to move on to the other device that you took a

8   look at, that other hard drive.

9        Could we pull up Government's Exhibit 1312.   And this is

10  very small, but I think it zooms well.

11       You looked at this folder called Candidate Paperwork,

12  correct?

13  A.   Yes.

14  Q.   And let's go to page -- zoom out and go to page 2.

15       It looks like a folder with different people's names,

16  different types of paperwork, organized by -- by the person's

17  name, right?

18  A.   Yes.

19  Q.   Okay.   And let's zoom out.   And go to the previous page.

20  The first page.   Thank you.

21       You were talking about the significance between the date

22  created and the date modified, right?

23  A.   Yes.

24  Q.   And you had said that the date created was not necessarily

25  the date the actual file was originally created but a date that

1    it was copied onto this device at this location, right?

2    A.   That copy of it, yes.

3    Q.   And that copy of it.  Yes.

4    A.   Yes.

5    Q.   I almost got all of it.

6    A.   Yes.

7    Q.   But the date modified was the date that the file was

8    actually changed?

9    A.   Yes.

10   Q.   Substantively changed in some way?

11   A.   Yes.  The content of the file.

12   Q.   The content of the file, right?

13   A.   Yes.

14   Q.   So I want to zoom in on -- I'm sticking with this one.

15   We'll see how this goes.  I want to zoom in on one file here.

16   And I want to go the entire -- up until that length.  Let's

17   look at this line here.  I'm going to highlight it so we can

18   all see.

19        The filename of this document is Brad North USPA, correct?

20   A.   Yes.

21   Q.   And, you know, there are two dates here.  I -- we're zoomed

22   in; so you can't see the label of that row.  But the first date

23   here is under the created date --

24   A.   Yes.

25   Q.   -- right?

1        Do you see that?

2    A.   I see it.

3    Q.   And the second date that we see is the date modified,

4    correct?

5    A.   That is correct.

6    Q.   And the date we see here for this particular document is

7    October 13, 2015?

8    A.   Yes.

9    Q.   Let's take a look at that file.  I want you to take a look

10   at Exhibit 2188.  And that would be in the defendant -- the

11   defense Exhibit Binder 7.  And I could go up there and help you

12   take a look at it because you made need to rifle through some

13   things.

14   A.   Okay.  All right.

15        MS. MCLOUGHLIN:  Your Honor, I'd like to move to

16   admit Defense Exhibit 2188.  That's also included in the

17   stipulation by the parties.

18        THE COURT:  2188.

19        MR. SHARMA:  No objection, Your Honor.

20        THE COURT:  Exhibit 2188 is received in evidence.

21    (DEFENDANT'S EXHIBIT 2188 ADMITTED INTO EVIDENCE.)

22   Q.   BY MS. MCLOUGHLIN:  You have that in front of you?

23   A.   Yes.  I'm looking at it, yes.

24   Q.   So let's look at this document entitled Brad North USPA.

25   You know, let's just go to page 2, actually.  That might be

1    easier.

2        This looks like it's a coach rating course proficiency

3    card, right?

4    A.  Yes.  That's what it says, yes.

5    Q.  And it's an application specifically for a Bradley

6    D. North, correct?

7    A.  Correct.

8    Q.  And he indicates he's got a USPA No. 253058, right?

9    A.  Right.  Correct.

10   Q.  And let's zoom out of that.  I'm going to continue to go

11   down here.

12       It also appears there is also some personal information

13   here.  Okay.  Including a phone number --

14   A.  Yes.

15   Q.  -- and an e-mail address, right?

16   A.  Yes.

17   Q.  And that e-mail address looks like it says

18   deviltakeshindmost@gmail.com?

19   A.  Yes.  That's -- that's what I'm reading.  Yes.

20   Q.  And the occupation of this applicant is a skydive

21   videographer, correct?

22   A.  Yes.

23   Q.  Let's zoom out, please.  And let's zoom in right here.

24       Here, it looks like we have several signatures that are

25   exactly the same, right?

1  A.  Yes.

2  Q.  Looks like they're preprinted onto this document or digital

3  signatures, right?

4  A.  They look the same, yes.  They look the same.

5  Q.  The dates, on the other hand, look handwritten, don't they?

6  A.  They're in a different color ink.

7  Q.  They're in a different color ink.  And they're all slightly

8  different in there, the way they're written, right?

9  A.  Yes.

10  Q.  Can we zoom out, please.  Go to the next page.  Zoom in

11  here.

12      Here, on this side, we have more of the same -- and you

13  don't need to zoom in.  I'm sorry.

14      We have more of the same signatures -- right? -- that look

15  exactly the same?

16  A.  Yes.  That's the same signature, yes.

17  Q.  And the same one right here as well?

18  A.  Yes.

19  Q.  And the name above that, printed, is Yuri Garmashov, right?

20  A.  Correct.

21  Q.  It is not Rob Pooley?

22  A.  Correct.

23  Q.  Now, the dates on this page -- and if we could zoom out --

24  are all October 13, 2015, right?

25  A.  Correct.

1    Q.   Can we go to the first page again.  Or -- I'm sorry -- the

2    second page.

3         All dates here are listed as October 13, 2015, correct?

4    A.   Correct.

5    Q.   Now I just want to take a look at another exhibit already

6    admitted.  Could we put up -- pull up Government's Exhibit 30.

7         This is another application for Bradley North, right?

8         And I may have made that more difficult to read.

9         Bradley North, right?

10   A.   It appears to be, yes.

11   Q.   Okay.  And we've got this number, 949-412-5339, right?

12   A.   Yes.

13   Q.   And let's go -- I'm going to ask you to go page by page,

14   but let's go to the next page.  The next page.  Next page,

15   please.  Next page.  Next page.  Next page.  Next page.  Next

16   page.  One more.  Another two more, I think.  I apologize.

17   This one is good.  Thank you.  Let's zoom in right here.

18        This USPA number listed here is, again, USPA No. 25308,

19   right?

20   A.   058?

21   Q.   Yeah.  253058.

22   A.   Yes.

23   Q.   And there is another e-mail down here.  It says,

24   deviltakeshindmost@gmail -- I believe it continues --

25   gmail.com, right?

1    A.  Yes.

2              THE COURT:  It's noon.  Would you like to take a

3    lunch break now?

4              MS. MCLOUGHLIN:  Your Honor, I'm finished.  Thank

5    you.

6              THE COURT:  You're finished?

7              MS. MCLOUGHLIN:  No further questions.

8              THE COURT:  How much time do you have?

9              MR. SHARMA:  No redirect, Your Honor.

10             THE COURT:  What?

11             MR. SHARMA:  I don't need redirect.

12             THE COURT:  No redirect.  All right.  Thank you,

13   Mr. Noel.  You're excused.

14      And we will now take the lunch break.  We'll resume at

15   1:30.  Remember the admonition, ladies and gentlemen.  1:30.

16      (Recess taken, 12:01 p.m.)

17      (Further proceedings held.)

18                        --o0o--

19   I certify that the foregoing is a correct transcript from the

20   record of proceedings in the above-entitled matter.

21

22                        /s/ Kimberly M. Bennett
                          KIMBERLY M. BENNETT
23                        CSR No. 8953, RPR, CRR, RMR

24

25