UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT ALLEN POOLEY,<br><br>Defendant. | No. 2:21-CR-111 WBS<br><br>MEMORANDUM AND ORDER RE:<br>MOTION FOR JUDGMENT OF<br>ACQUITTAL ON COUNT FIVE |

----oo0oo----

In Dubin v. United States, 599 U.S. 110, 129-30 (2023), the Supreme Court rejected the government's overly broad interpretation of the federal aggravated identity theft statute, 18 U.S.C. § 1028A, explaining that "crimes are supposed to be defined by the legislature, not by clever prosecutors riffing on equivocal language." (cleaned up).  The government, in charging this defendant with aggravated identity theft under § 1028A, has once again attempted to extend the reach of this statute beyond what Congress intended, and beyond what the Supreme Court has

1

1 held was permissible in Dubin.  For this and other reasons, as
2 set forth below, the court must now grant defendant's motion for
3 judgment of acquittal as to Count Five of the Indictment.
4 (Docket No. 143.)

I. Aggravated Identity Theft

As explained by the Supreme Court in Dubin, § 1028A applies when a defendant "during and in relation to any predicate offense, knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." Dubin, 599 U.S. at 115 (cleaned up).  The list of predicate offenses includes, among others, wire fraud, and a violation of § 1028A "carries a severe penalty: a mandatory minimum sentence of two years in prison 'in addition to the punishment for the predicate offense,'" which prosecutors can "hold . . . over the head of any defendant who is considering going to trial." Id. at 115, 131.

The Court in Dubin noted that this language had been wielded by the government "well beyond ordinary understandings of identity theft," including instances where (1) a defendant made a counterfeit handgun permit for another person at that person's request, (2) unlicensed doctors issued prescriptions that their actual patients would fill at pharmacies, and (3) medical providers mischaracterized the nature of the services rendered to their patients, resulting in inflated reimbursements or reimbursements for ineligible services. Id. at 115-16.  The Court ultimately rejected the government's broad reading of the statute "covering any time another person's means of identification is employed in a way that facilitates a crime,"

or is only "ancillary" to the underlying crime, as such an interpretation "bears little resemblance to any ordinary meaning of 'identity theft.'" Id. at 122-23.

Instead, the Court held that identity theft "is committed when a defendant uses the means of identification itself to defraud or deceive." Id. at 123. Elaborating, the Court explained that under § 1028A, (1) a defendant "uses another person's means of identification in relation to a predicate offense when this use is at the crux of what makes the conduct criminal"; (2) "being at the crux of the criminality requires more than a causal relationship"; and (3) "the means of identification specifically must be used in a manner that is fraudulent or deceptive." Id. at 131-32 (cleaned up). Based on these standards, the Court reversed the Fifth Circuit's decision affirming the defendant's conviction for aggravated identity theft based on Medicaid overbilling.

Notwithstanding the Supreme Court's concerns with the government's overly broad interpretations of § 1028A in Dubin, it specifically declined to address the proper interpretation of "without lawful authority," including whether § 1028A applies to situations where a defendant uses another individual's identification with that individual's consent. 599 U.S. at 128 n. 8. However, prior to Dubin, the Ninth Circuit had ruled that the term "without lawful authority" encompassed situations "where an individual grants the defendant permission to possess his or her means of identification, but the defendant then proceeds to use the identification unlawfully." See United

1   States v. Osuna-Alvarez, 788 F.3d 1183, 1185-86 (9th Cir. 2015).[1]

2   In United States v. Brown, No. 22-50158, 2024 WL 3631145, *2 (9th Cir. Aug. 2, 2024) (unpublished mem. decision), the Ninth Circuit held, albeit in a non-binding but persuasive decision, that Dubin "did not overrule our cases holding a person could be liable for identity theft without having stolen the identity".  Thus, unless and until the Supreme Court should hold otherwise, this court is bound to follow Osuna-Alvarez.  Accordingly, the court instructed the jury in this case that the government need not prove the means of identification of another person was stolen or used without the owner's consent.  (See Docket Nos. 130 at 16; 153 at 56.)  It is with that same interpretation of § 1028A that the court considers the pending motion for judgment of acquittal on Count Five of the Indictment.

II.  The Charges and Evidence

The Indictment in this case charged defendant with four counts of wire fraud (Counts One through Four) and two counts of aggravated identity theft (Counts Five through Six).  The government alleged that defendant falsely led skydiver instructor candidates to believe that they could obtain their

---

[1] Although tandem instructor Yuri Garmashov testified that defendant used his signature without his consent, the court does not find that testimony to be credible and cannot believe that the jurors would have believed Garmashov's testimony if they had been called upon to determine whether defendant used Garmashov's signature without his consent. However, whether the jury accepted his testimony or not is immaterial because, for the reasons discussed below, the court concludes that there was insufficient evidence to convict on Count Five regardless of whether Garmashov consented to defendant's use of his signature.

4

1    tandem instructor certifications if they paid him and took his
2    instructor course, when he knew he had been suspended by the
3    respective certifying organizations, the USPA and UPT, and was
4    thus ineligible to teach the course.  (Docket No. 1 ¶¶ 27-28.)
5           The case proceeded to what was eventually a seven-day
6    jury trial.  During trial, the government put on multiple
7    witnesses who testified that the only reason they came to the
8    Lodi Parachute Center, where defendant worked, was to obtain
9    their tandem instructor certifications, and they believed that
10   they could obtain these certifications by taking the training
11   course taught by defendant.
12          The government also introduced multiple certification
13   forms with the signatures of instructor Yuri Garmashov and
14   evidence that instructors were required to be present for the
15   candidates' training.  The implication which the government
16   asked the jury to draw from this evidence was that defendant
17   completed certification forms that were prefilled with
18   Garmashov's signatures for these candidates, even though
19   defendant conducted their training and knew Garmashov was not
20   present during that training.  At the conclusion of the trial,
21   the jury returned a verdict of not guilty on the wire fraud
22   charge in Count One, guilty of the wire fraud charges in Counts
23   Two, Three, Four, and Five, and guilty on the charges of
24   aggravated identity theft in Counts Five and Six.
25   III. Defendant's Rule 29 Motions
26          Defendant orally moved for judgment of acquittal under
27   Federal Rule of Criminal Procedure 29 on all counts at the close
28   of the government's evidence, based on multiple grounds.  After

1  expressing frustration with having to address arguments raised
2  for the first time orally and without written briefing, while
3  the jury was waiting outside the courtroom, the court denied the
4  motion.² (Docket No. 151.)
5        Defendant then orally renewed his Rule 29 motion at
6  the close of all evidence.³ The court, once again mindful of not
7  keeping the jury waiting too long, and once again expressing its
8  frustration with having to deal with a Rule 29 motion without
9  briefing, took the motion under submission with the intent to
10 rule after the jury verdict, if defendant was convicted, thus
11 preserving the government's ability to appeal if the court
12 eventually granted the motion. (Docket No. 152 at 106, 126-29.)
13       After the jury returned its verdict, the court granted

---

² The court first explained that it was "get[ting] hit at the end of trial for the first time with an argument that I have to decide within a few short minutes while the jury is waiting out there." (Docket No. 151 at 16.) At the end of oral argument on the initial Rule 29 motion, the court reiterated its frustration, explaining that while the parties had made "very good points . . . it's caught me a little flatfooted to rule on some of these things knowing that the jury is waiting out there to come in and never having seen your briefs before today. It's not even in your briefs." (Docket No. 151 at 25.) The court now acknowledges that the Dubin case was briefly discussed in defendant's trial brief, but the parties did not make any motion based on Dubin or discuss the Dubin case with the court until defendant's initial Rule 29 motion.

³ While the court expressed its frustration, it also noted its willingness to consider new arguments or reconsider its prior ruling, explaining "you put me under a lot of pressure on that Rule 29 motion because one of the most interesting things you were arguing wasn't even in your brief, and so I hope I was listening to it for the first time, and there was nothing to look at. So maybe we could talk about it again, and you might convince me of something that I missed the first time." (Docket No. 152 at 106.)

1   the motion for judgment of acquittal on Counts Four and Six.
2   Specifically, the court ruled there was insufficient evidence on
3   Counts Four and Six, the counts involving Morgan Lachlan McKay,
4   for wire fraud and identity theft, "for the reasons that
5   [defense counsel] stated in her arguments," without further
6   discussion.  Although defendant had moved for judgment of
7   acquittal on all counts, the court did not discuss Counts Two,
8   Three, or Five, and referred the matter "with regard to the
9   remaining counts" to the probation officer for presentence
10  report, thus implicitly denying the motion as to all other
11  counts.  (Docket No. 155 at 2-3.)
12          Defense counsel then stated that they intended to
13  renew the Rule 29 motion in writing "at least to Count Five,"
14  the aggravated identity theft count based on defendant's use of
15  Garmashov's signatures on USPA and UPT paperwork for tandem
16  instructor candidate Kwon.  The court expressed its reluctance
17  to grant the motion and noted that the filing of a written
18  motion was "kind of defeating . . . my purpose stated a moment
19  ago" in setting a sentencing date and directing probation to
20  file a presentence report in order to expeditiously proceed to
21  sentencing, but the court acknowledged that defendant
22  nevertheless had the right to file such a motion.  (Docket No.
23  155 at 3.)
24          Defendant has now filed a written motion for judgment
25  of acquittal as to Count Five.  (Docket No. 143.)  Because the
26  parties could not reach an agreement as to a briefing schedule
27  and hearing date, the court set its own schedule and took the
28  motion under submission without oral argument.  (Docket No.

7

148.)  The motion is now fully briefed, and the court for the first time has had the opportunity to thoroughly review the written briefing and the applicable case law.

IV.  Sufficiency of the Evidence on Count Five

The court recognizes that granting defendant's instant motion for a judgment of acquittal on Count Five may seem inconsistent with the court's prior rulings on defendant's oral Rule 29 motions.  However, "it is well settled that disposition of a posttrial motion for a judgment of acquittal is not required to be consistent with a decision on a similar motion before submission of the case to a jury."  United States v. Northrup, 482 F. Supp. 1032, 1036 (D. Nev. 1980) (citations omitted).  Further, in hindsight, the court's rulings denying defendant's motions for judgment of acquittal on Count Five were made perhaps precipitously, without fully considering defendant's arguments.  And upon reflection, those rulings were just plain wrong.  There was simply no evidence to sustain a conviction for aggravated identity theft based on defendant's use of Yuri Garmashov's signatures on YongHyeon Kwon's USPA and USPT paperwork.

A.  Section 1028A's "During and in Relation" Requirement

Section § 1028A applies when a defendant "during and in relation to" a predicate offense, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  The Indictment specifically charges in Count Five that on July 1, 2016, defendant used the signatures of Person 2, later identified as Yuri Garmashov, on the USPA Tandem Instructor Rating Course Proficiency Card and

8

the UPT Tandem Instructor Certification Form for Victim 2, later identified as YongHyeon Kwon, during and in relation to the crime of wire fraud.  (Docket No. 1.)  The jury instructions more specifically set forth that the government would have to prove that defendant used Garmashov's means of identification "during and in relation to the offense of wire fraud charged in Counts One through Four of the indictment," in keeping with the language of § 1028A.  (See Docket Nos. 130 at 16; 153 at 55.) Count One charges wire fraud in connection with an email sent from Fabricio Palomino to Parachute Center on or about June 28, 2016.  Count Two charges wire fraud in connection with an email from defendant to Fabricio Palomino on or about June 29, 2016. Count Three charges wire fraud in connection with an email from Fabricio Palomino to defendant on or about July 4, 2016. Finally, Count Four charges wire fraud in connection with an email from defendant to USPA and morgan@verticalfilms.com.au on or about August 1, 2016.  (Docket Nos. 1, 139.)

      Notwithstanding these instructions and the jury's verdict, there was no evidence that defendant's use of Garmashov's signatures on Kwon's USPA and UPT paperwork was "during and in relation to" the offense of wire fraud charged in Counts One through Four, as required by the Indictment and the jury instructions.  (See Docket Nos. 130 at 16; 153 at 55.) Specifically, there was no evidence that the emails at issue in Counts One through Four were sent to Kwon, that Kwon knew about those emails, or that he had anything to do with them.  In other words, the government has not linked defendant's use of Garmashov's signatures on Kwon's paperwork with any of the four

9

underlying wire fraud counts, as the jury instructions require. The government's failure to link the use of Garmashov's signatures on Kwon's paperwork with any of the violations charged in Counts One through Four is therefore a sufficient ground to compel a judgment of acquittal on Count Five.

  B. The Supreme Court's Requirements in *Dubin*

    In explaining the elements of § 1028A, the court properly instructed the jury, using direct quotes or paraphrasing of language from Dubin, that (1) "[a] means of identification is used 'during and in relation to' a crime when the means of identification is used in a manner that is fraudulent or deceptive" and "is at the crux of what makes the conduct criminal"; (2) the means of identification must be used in a manner that is fraudulent or deceptive "towards the tandem instructor candidates"; (3) "[b]eing 'at the crux' requires more than a causal relationship between the means of identification and the wire fraud offense"; and (4) "[t]he defendant must have used the means of identification itself to defraud or deceive the candidates."  (Docket Nos. 130 at 16; 153 at 55-56.) However, there was insufficient evidence as to these requirements for two independent reasons.

    1. Fraud or Deception Requirement

    First, there was no evidence presented as to whether Kwon even saw Garmashov's signatures on his paperwork, much less evidence showing that defendant used those signatures to defraud or deceive him.  Indeed, there was no evidence that tandem instructor candidate YongHyeon Kwon saw his certification paperwork or even knew Garmshov's signatures were on the

1   paperwork.  At best, there was evidence that other alleged
2   victims were aware of the Garmashov's purported signature on
3   their forms, but that did not constitute evidence of what, if
4   anything, Kwon saw or knew.  Moreover, one other tandem
5   instructor candidate testified that he did not see his USPA or
6   UPT paperwork, and another candidate testified that he did not
7   know whose signatures were on his paperwork when he first saw
8   it.
9          Meanwhile, the jury was presented with no evidence
10  regarding what documents Kwon saw, whether he saw Garmashov's
11  signatures on any paperwork, or how he may have reacted to any
12  paperwork with Garmashov's signatures.  Given the evidence
13  regarding other candidates and the lack of any evidence as to
14  what Kwon saw and knew, there is insufficient evidence that
15  defendant used Garmashov's signatures to defraud or deceive
16  Kwon.  See Dubin, 599 U.S. at 123.
17            2.   Crux Requirement
18         Second, there was insufficient evidence that
19  defendant's use of Garmashov's signatures was at the crux of
20  defendant's underlying fraud, as required by Dubin.  As alleged
21  in the Indictment, defendant's scheme was to get candidates to
22  pay him for tandem instructor courses by representing they could
23  obtain their tandem instructor ratings through his course.
24  (Docket No. 1 at ¶¶ 27-28.)  The government argues in opposition
25  to this motion that Garmashov's signatures were used to convince
26  instructor candidates that they had gotten what they paid for,
27  to avoid detection, and to perpetuate the overall fraud scheme.
28  However, by the time defendant used Garmashov's signatures on

Kwon's tandem instructor paperwork, Kwon had already paid for the course and any wire fraud was already complete -- he had already been defrauded before the use of the signatures.[4]

Actions by defendant to continue the fraud against other candidates cannot be at the crux of defendant's fraud against Kwon.  Similarly, actions to avoid detection or prevent Kwon or others from complaining after the fraud has already been completed also cannot be at the crux of defendant's fraud against Kwon.  Instead, even at best, the signatures were merely ancillary to defendant's fraud against Kwon.  Accordingly, the government's failure to prove that the use of Garmashov's signatures was at the crux of the fraud against Kwon is another basis to compel a judgment of acquittal on Count Five.

In the court's view, the government overreached by charging defendant with aggravated identity theft.  Once again, the government has contorted § 1028A beyond what Congress intended by adding aggravated identity theft counts to what should be a straightforward wire fraud case.  The issue in this case was whether defendant tricked instructor candidates into paying for his course by telling them they could obtain their tandem certifications and credentials through the course, when he knew he had been suspended by the relevant organizations.  There was no evidence that defendant's use of Garmashov's signature on Kwon's paperwork played any role in getting Kwon to part with his money.

---

[4] The government conceded during trial that a conviction on Count Five may not be based on a theory of fraud on the USPA or UPT.

V.  Conclusion

The court has great faith in lay juries, which are a bedrock of the American criminal justice system. Unfortunately, perhaps due the court's failure to make the elements of an aggravated identity theft charge clearer, it appears that the jury in this case was unable to understand what § 1028A requires under Dubin.

Justice Gorsuch's concurrence in Dubin foreshadowed such a result, when he argued that § 1028A was unconstitutionally vague because there was "no sure way" to determine whether a means of identification is at the crux of an underlying fraud, because "[i]n virtually every fraud, a 'means of identification' plays some critical role in the fraud's success." Dubin, 599 U.S. at 133-39. This court also foreshadowed the confusion the jury might have had with Dubin's requirements when it observed during the jury instruction conference that "[t]he language of [] Supreme Court decisions was not meant to be a jury instruction. The Supreme Court writes to educate lawyers, not for juries." (Docket No. 152 at 99.) Here, the court did not simply give the Ninth Circuit's pattern instruction on § 1028A but added multiple quotations and paraphrasing from Dubin. Nevertheless, these instructions do not appear to have been enough to enable the jury to properly apply § 1028A to the facts of this case, and it is not clear what other instructions the court could have provided.

The jury's confusion as to § 1028A is understandable given the lack of clarity as to its elements after Dubin. As this court has explained in another case, certain questions

13

1  "laden with conceptual vagaries and undefined legal terms of art
2  [] may well be beyond the capacity of the average juror to
3  understand, much less apply to the facts of a case." Carlton v.
4  Amguard Ins. Co., No. 2:22-CV-02030 WBS DB, 2024 WL 2785521, at
5  *4 (E.D. Cal. May 30, 2024) (citing Joe S. Cecil et al., Citizen
6  Comprehension of Difficult Issues: Lessons from Civil Jury
7  Trials, 40 Am. U. L. Rev. 727, 733-34 (1991)).  It appears that
8  unless and until the courts can provide more guidance as to how
9  jurors are to determine whether a means of identification is at
10 the "crux" of an underlying fraud, that concept may be beyond
11 the capacity of the average juror to understand and apply.
12       While the court is loath to overturn the verdict of a
13 properly instructed jury, in certain rare cases it is necessary
14 to do so.  For the reasons set forth above, the court concludes
15 that this is one of those cases, and accordingly it must grant
16 the motion for judgment of acquittal on Count Five of the
17 Indictment.
18       IT IS THEREFORE ORDERED that defendant's motion for
19 judgment of acquittal (Docket No. 143) as to Count Five of the
20 Indictment charging a violation of 18 U.S.C. § 1028A(a)(1) be,
21 and the same hereby is, GRANTED.  The verdict of guilty on Count
22 Five is hereby set aside.  At the time of entering final
23 judgment, currently set for September 30, 2024, the court will
24 impose a sentence only on Counts Two and Three of the
25 Indictment.
26 Dated:  September 20, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE