PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>         v.<br><br>ROBERT POOLEY,<br><br>                Defendant. | CASE NO. 2:21-CR-111 WBS<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>DATE: September 30, 2024<br>TIME: 10:00 a.m.<br>COURT: Hon. William B. Shubb |

## I.    INTRODUCTION

Robert Pooley lied to tandem instructor candidates for more than a year, scamming them out of over a thousand dollars each by promising them certifications he knew he was not qualified to deliver. He delivered only illegitimate, forged signatures. Ultimately, all of his students lost the money they paid him and never got or lost the tandem instructor certifications through which they sought to make their livings. Pooley's criminal conduct follows and is in keeping with his history of flouting the law and his obligations to others. He has never shown any acceptance of responsibility or remorse for his crimes. The United States respectfully requests, as does the Probation Officer, that the Court impose a 27-month sentence on Counts 2 and 3 of the Indictment.

## II.    SENTENCING ANALYSIS

Each of the factors guiding sentencing pursuant to 18 U.S.C. § 3553(a) weigh in favor of a high end 27-month sentence.

A. **The nature and circumstances of the offense**

Pooley's criminal offense was serious, premeditated, spanned a long period of time, and did very real harm. The very same night that Pooley learned that UPT had suspended his tandem Examiner rating, Pooley obtained and emailed himself the tools he used to commit the crime: the electronic signature and initials of certified Examiner Yuri Garmashov. He created fraudulent forms to use for his courses, with Garmashov's signature and initials in the Examiner sections instead of his own. During the same time period he was creating the tools to masquerade as an Examiner, Pooley was emailing USPA Director of Safety and Training Jim Crouch acknowledging his suspension and that courses had to be run by another Examiner from start to finish. *See* PSR ¶ 15. Pooley continued marketing himself as an Examiner to students who sought to become tandem Examiners. He took their money, knowing that what they wanted out of his course was to become USPA and UPT certified Tandem Instructors, knowing that a signature of a legitimate Examiner was necessary for them to obtain those certifications, and knowing that he was not a legitimate Examiner.

Pooley's lies and failure to deliver impacted real peoples' lives. Each of the students who paid him never got or lost the Tandem Instructor ratings they needed to support themselves, and either had to pursue job opportunities outside tandem instructing, like the lower-paying role of videographer, or pay again to retake the course from an actual certified Examiner. Pooley's victims were not rich. Most lived in foreign countries and bought expensive international plane tickets to come to the U.S. and pay for transportation and lodging once they arrived during the course. All his students incurred the opportunity cost of lost wages during the days they devoted to taking his worthless course rather than earning money at their day jobs. The $1,000 - $1,600 Pooley charged his victims plus costs was particularly significant in the less than wealthy community of professional skydivers, and particularly so for those who saved the money in foreign currencies with unfavorable exchange rates.

Certain victims lost more than money. While this wire fraud case is not a wrongful death case and evidence of the death of one of Pooley's students and a customer was not admitted at trial, at sentencing, when considering the foreseeable harm which resulted from Pooley's improper sign-offs, it is appropriate to acknowledge that tandem instructor candidate YongHyeon Kwon should never have been signed off on without a legitimate Examiner drilling him on how to address a drogue malfunction

UNITED STATES' SENTENCING MEMO                           2

and ensuring that he could handle that malfunction occurring in the sky with a passenger. Yet, after Pooley used Garmashov's pre-printed signature to sign off on Kwon's USPA and UPT Tandem Instructor certifications and authorized Kwon to jump with unsuspecting members of the public, Kwon did mishandle a basic drogue malfunction. Kwon and his 18-year-old passenger lost their lives. Several of the students Pooley taught recounted in interviews how the retraining courses they took with legitimate Examiners were completely different than Pooley's "absolute minimum training," nonexistent instruction, or "inconsistent and spaced out" course, and to the contrary featured Examiners drilling them on safety military style, yelling out an equipment malfunction as the students lay on the floor wearing full parachute rigs, watching the student react instantly, and then repeating the exercise, until the proper response to malfunctions was seared into the students' muscle memories. *See, e.g.*, PSR ¶¶ 21-23, Exhibit 1 at p. 2.

### B. The history and characteristics of the defendant

This is not Pooley's first violation of the law or breach of the trust of people in his life. In April 2014, Pooley broke into his ex-wife's house, stole her motorcycle, re-entered the house, and was caught with a gun, two magazines, a scope, large amounts of cash, and approximately four hundred pain pills. PSR ¶ 56. One week later, the defendant got into a physical altercation with another ex, with whom he shares a child, at Parachute Center. PSR ¶ 61. The victim told deputies that the defendant threw her to the ground and stomped on her. PSR ¶ 61. The defendant claimed that the victim exaggerated the situation due to ongoing child custody disputes. PSR ¶ 61. The defendant has never had custody of any his children and remains by his own account approximately $30,000 in arrears for child support. PSR ¶ 80.

Pooley lies. His lies are at the heart of this case, obviously. He has even lied to the Probation Officer, for no reason, like by telling her he graduated Boone High School in Indiana only for her to learn from his high school principal that he dropped out with a GPA of 1.25. PSR ¶ 76. Pooley also told the Probation Officer that from the day of the accident through present, he was a "self-employed skydiver/videographer." He failed to mention that he did not stop conducting tandem skydives after the accident. Pete Swann photographed him in a tandem rig with a customer well after he lost his tandem instructor rating from USPA and UPT. *See* Exhibit 2 (photograph taken by Swann of the defendant

wearing a tandem rig with a customer approximately a year and a half post-accident).  Pooley also declined to submit documentation to enable the Probation Officer to fact check him, like not returning the consent form for her to run a credit check, resulting in the highly unusual situation of a PSR without a balance sheets of the defendant's assets and liabilities.  PSR ¶ 81.

Pooley also has a history of not living up to his responsibilities or paying his debts, of which he has accumulated approximately $88,000.  PSR ¶ 82.  The defendant filed for bankruptcy in Iowa, still owes approximately $37,566 in State of California tax liens from 2008 to 2017, and still owes $15,514 from a 2011 civil judgment against him.  PSR ¶ 81.  As noted above, he admits he is in arrears approximately $30,000 in child support.  PSR ¶ 80.  The defendant has apparently not sold the approximately $7,500 he holds in Bitcoin to pay his various debts or child support obligations.  PSR ¶ 81.

    **C.**    **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.**

The victims, the skydiving network, and the broader community are looking to the upcoming sentencing for accountability and justice.  A high-end sentence is appropriate to reflect the seriousness of Pooley's flagrant fraud scheme, promote respect for the law, and provide just punishment.

    **D.**    **To afford adequate deterrence to criminal conduct**

Pooley's crime was flagrant and well-publicized.  It sent shockwaves through the close-knit skydiving community to learn that Pooley, a trusted and well-known Tandem Examiner, actually lacked a valid Examiner certification and approximately 140 skydivers who had taken his courses had to undergo retraining.  PSR, Sentencing Recommendation, p. 1.  This case is being closely followed throughout the skydiving world.  A high-end sentence is appropriate to serve the objective of general deterrence.

    **E.**    **To protect the public from further crimes of the defendant.**

As the Probation Officer aptly put it, "Pooley has expressed no remorse for his conduct or acknowledged that his criminal negligence negatively impacted his students and the public as a whole." PSR ¶, Sentencing Recommendation, p. 2.  Pooley's failure to accept any responsibility weighs in favor of a serious consequence to impress upon him that further crimes will not be tolerated.  So too does

Pooley's criminal history, persistence in continuing to conduct tandem jumps after losing his certifications, and false and perjurious statements and disrespectful, flip demeanor when interviewed by agents and deposed on video in the wrongful death lawsuit about his conduct in connection with this case. Pooley has proved remarkably difficult to get through to or deter, further warranting a high-end sentence.

### III. CONCLUSION

The United States respectfully requests that the Court impose a sentence of 27 months imprisonment, followed by a three-year term of supervised release, as recommended by the Probation Officer.

Dated: September 23, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ KATHERINE T. LYDON
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorneys