HEATHER E. WILLIAMS, SBN 122664
Federal Defender
MIA CRAGER, SBN 300172
MEGHAN McLOUGHLIN, SBN 354051
Assistant Federal Defenders
801 I Street, Third Floor
Sacramento, California 95814
T: (916) 498-5700
F: (916) 498-5710

Attorneys for Defendant
ROBERT POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-CR-111-WBS |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| vs. | |
| ROBERT POOLEY, | Date: September 30, 2024<br>Time: 10:00 A.M.<br>Judge: Hon. William B. Shubb |
| Defendant. | |

## I. INTRODUCTION

### A. The aftermath

On approximately August 8, 2016, the Parachute Association and UPT learned that Yuri Garmashov's name and signature appeared on the forms of multiple tandem instructor candidates, but Mr. Garmashov had been out of town while the courses were taught. The very next day, Mr. Pooley was on the phone with Tandem Examiners around the country trying to get someone to come to out to teach a replacement course for the affected students. *See* Attachment 1 (Texts between Rob Pooley & "JC" Coldren) at 3-4. He found a very qualified knowledgeable instructor with 30 years of experience who was willing to set up a course on short notice. *See id.* Mr. Pooley attempted to negotiate lower rates for his students and planned to cover at least part of the cost. *Id.* He contacted the affected students and tried to help them navigate the next steps. *Id.* at 4-5. He connected them with the instructor who promised to do the courses for only $300.

*See* Attachment 2 (Texts between Rob Pooley & Brad North) at 5-6.[1]  Mr. Pooley also apologized for putting everyone in this situation, saying for example, "You have no idea how sorry I am," *see* Attachment 3 (Email to Fabricio Palomino), and "I'm working on getting refunds for everyone. . . . . I don't want anyone to get screwed," *see* Attachment 2 at 5.

Mr. Pooley was attempting to refund people, however most of the money for the courses he ran was not his own profit.  The course cost each student approximately $1,100, but Mr. Pooley only made anywhere from less than 100 to a few hundred dollars per student.  *See id.*; PSR ¶¶ 17, 20.  The rest of the money from each course went to candidates' gear rental, jump tickets, and to other instructors, if any, involved in the course.  PSR ¶ 17; Testimony of Fabricio Palomino, Transcript of May 20, 2024 at 62:18-63:2 ("Q. Okay. About $950 went to [instructor] Mike Spurgeon?; A. Yes.; Q. And the rest, about $150, was split between Rob Pooley and the drop zone owner?; A: Yes.").

Despite earning a profit on the courses, and despite allowing[2] Mr. Pooley to conduct the courses while suspended, the Parachute Center owner refused to pay back any money to the affected students.  Therefore, Mr. Pooley was left to try to refund more money than he had ever received.  Mr. Pooley did in fact refund money when he was able to afford it.  *See* Attachment 4 (Excerpt of Interview of Danny Overeem on April 19, 2024) (recounting that Mr. Pooley "paid a few hundred dollars to some while others did not get any").

Unsatisfied with the amounts of money that Mr. Pooley could refund, some former students took justice into their own hands.  One student named as a victim in the PSR, Danny Overeem, admitted later to agents that he and other unnamed students forcibly "took" a parachute, reserve chute and multiple computers from Mr. Pooley.  *See id*; Attachment 5 (Excerpt of Agent Notes of Interview with Danny Overeem on Apr. 19, 2024).  Overeem told agents that he and the other students then forced Mr. Pooley to draft a document falsely stating

---

[1] The instructor Mr. Pooley found later cancelled the course without telling Mr. Pooley.  *See id.* at 6-7.

[2] *See* Testimony of Peter Swan, Transcript of May 20, 2024 at 96, 104-105 (testifying that Mr. Pooley's suspension was open news known to Parachute Center staff, including its owner, and that the owner was present almost every day during Mr. Pooley's trainings).

that Mr. Pooley had sold them the items.  *Id.*  They made Mr. Pooley notarize this document, having him follow behind their car as they drove to the notary's office.  *Id.*  During the same period Mr. Pooley had other belongings quietly stolen from his locker.

Mr. Pooley was also fired from his job and the Parachute Association and UPT revoked all of his ratings.  He is unable to train or coach students ever again.  He was later permitted to return to work at the Parachute Center, but having lost all of his credentials, he can only work as a videographer and nothing more.

### B.  The federal case

On June 21, 2021, the Parachute Center opened its doors for business at 9:00am.  Rob Pooley and a dozen other staff members were preparing for a busy day.  Mr. Pooley sat editing video on a Parachute Center computer when he was approached by federal agents.  They took him outside, told him to put his hands behind his back, and led him away from his coworkers in handcuffs.  A DOJ Press Release trumpeted the news of his arrest, which was picked up by several outlets, including Fox 40, KCRA, and CBS News.

In accordance with the Eastern District of California's then-COVID policies, Mr. Pooley was booked into Sacramento County Jail before seeing any judge.  The month Mr. Pooley was arrested also marked the emergence of the Delta strain of COVID-19, known to cause higher mortality, higher transmissibility, and higher hospitalization rates.  *See* Ronak Rashedi et al., "Delta Variant: The New Challenge of COVID-19 Pandemic, an Overview of Epidemiological, Clinical, and Immune Characteristics," (Mar. 14, 2022) ACTA BIOMED 93(1), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8972886/.  At the jail, Mr. Pooley was directed to change into an orange jumpsuit, then sat several hours in "booking" before proceeding to be "quarantined" with other persons freshly arrested with charges ranging from drug possession to violent assault.

Mr. Pooley spent a long night in Sacramento County Jail, known to be one of the least sanitary jails in California.  *See* Crescenzo Vellucci, "Confirmed COVD-19 Case in Sac Jail; Court Filing Suggests Poor Inmate Conditions, Sickness," (May 8, 2020) VANGUARD NEWS GROUP, https://davisvanguard.org/2020/05/confirmed-covid-19-case-in-sac-jail-court-filing-

suggests-poor-inmate-conditions-sickness/. The next day he was introduced to his lawyer and first saw a judge, via Zoom, who advised him of the charges against him. The judge concluded that Mr. Pooley was neither a danger to society nor a flight risk and ordered him immediately released on an unsecured bond. Later that same day, the jail spit him back out into the world, handing him a plastic bag of his belongings and letting him find his own way back home to Acampo.

For the last 3 years and 3 months, Mr. Pooley has been subject to pretrial supervision. His travel is restricted within California and he cannot travel outside the United States. He cannot be away from his home for more than 24 hours at a time. He must call and report to his officer regularly. He is prohibited from possessing a firearm or drinking alcohol in "excess." His officer can appear at any time at Mr. Pooley's home and demand to "inspect" it, which Mr. Pooley has and must allow. Dkt. 11. Mr. Pooley has followed every directive of his pretrial officer for the last 3 years and 3 months.

Mr. Pooley fell in love with the sport of skydiving at a young age and made it his profession. He found his passion and skill in coaching other skydivers and eventually earned his Tandem Examiner rating, one of the highest ratings available from the Parachute Association. Right before the events of this case, he was a highly respected member of the community who helped other skydivers become better at their craft.

Today, Mr. Pooley is almost 50 years old. He has been ostracized and "shunned" by his community. *See* Attachment 6 (Text Message from Peter Swan to Case Agent). He is now a felon. His life is forever changed. He has fallen to the lowest rung in his community.

## II.     LEGAL STANDARD

District courts have "wide discretion to decide whether [a defendant] should be incarcerated and for how long." *Beckles v. United States*, 137 S. Ct. 886, 893 (2017). The guidelines are one of "several factors" to be considered, but they "do not constrain [the district court's discretion.]" *Id.* at 893-94 (citations omitted). "[T]he only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the sentencing statutes, particularly 18 U.S.C. § 3553(a). *United States v. Lucas,* 101 F.4th 1158, 1163 (9th Cir.

2024) (en banc) (quoting *United States v. Brika*, 487 F.3d 450, 461–62 (6th Cir. 2007)).

### III. ARGUMENT

A sentence of time-served is "sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a).

**A. When it became clear that his students would not get their ratings, Mr. Pooley expressed remorse and immediately tried to make it right.**

The "circumstances of the offense" and the "characteristics of the defendant" include that as soon as it became clear that the Parachute Association and UPT would not issue "ratings" to the students, Mr. Pooley expressed his remorse and took active steps to try to make it right. Mr. Pooley does not seek a guidelines adjustment for "acceptance of responsibility" since he went to trial. However, his actions and words in the immediate aftermath of the events the case show that Mr. Pooley did felt a true responsibility to right his wrongs and that he took immediate steps to do so.

Further, unlike many defendants who qualify for "acceptance of responsibility" under the guidelines, Mr. Pooley's expressions of remorse were not made under duress of a pending criminal case. At the time, it was far from clear that any criminal case would ever be filed. And yet, long before any federal criminal case was contemplated, and long before Mr. Pooley was taken from the Parachute Center in handcuffs, he expressed his remorse for the unfortunate position he put the candidates in and tried to make it right.

**B. There is no need to protect the public or deter Mr. Pooley, who has spent more than 3 years out of custody and in compliance with all conditions.**

Mr. Pooley has been successful on pretrial supervision for over three years. Even before his arrest in 2021, he committed no crime in the 5 years it took the federal government to charge him in this case. During that time period he spoke voluntarily to federal agents about this case for hours, sometimes inviting them into his own home. This track record shows that Mr. Pooley is a law-abiding person who has respect for the law. There is no need to deter or incapacitate him.

**C. Mr. Pooley has already suffered serious consequences from his conduct.**

A sentence of time-served adequately addresses the seriousness of Mr. Pooley's offense

1   and the need for just punishment because the aftermath of the events of this case, as well

2   circumstances of this prosecution, have already inflicted other forms of punishment.  *See, e.g.*,

3   *United States v. Diambrosio*, 2008 WL 732031, at *3–5 (E.D. Penn. Mar. 13, 2008) (sentencing

4   defendant to probation plus one year home confinement, despite "intentionally defrauding [the

5   victim] of approximately $2.8 million" in part because the defendant had already been punished

6   by life circumstances since initiation of the prosecution, including loss of relationships, fewer job

7   opportunities, and financial burdens).

8         In this case, Mr. Pooley has lost the career he spent decades building.  His community

9   has rejected him, ostracized him, shunned him.  And some members of that community exacted

10  vigilante justice, with his former students literally stealing from him.

11        Mr. Pooley will also be punished financially far beyond his financial gain.  The lion's

12  share of the money from Mr. Pooley's courses went to the Parachute Center.  The owner of the

13  Parachute Center was aware of Mr. Pooley's suspension and not only allowed Mr. Pooley to

14  continue teaching his courses, but happily accepted the profits he made from them.  Although

15  complicit in the charged offense, neither the Parachute Center nor its owner have been charged in

16  this case, and therefore neither will repay a single cent.  All the money will be repaid by Mr.

17  Pooley.

18        Furthermore, this prosecution has already enacted punishment on Mr. Pooley.  To begin,

19  the government chose to obtain an arrest warrant for Mr. Pooley and to have him publicly

20  arrested in front of his coworkers, and, once the media picked it up, the world.  For a person like

21  Mr. Pooley who has very little prior contact with the criminal justice system, an arrest is a big

22  deal.  Donning an orange jumpsuit to spend the night in a COVID-infested jail at the outset of

23  the Delta surge is a big deal.  Seeing his name in the dozens of news stories, of varying accuracy,

24  from the date of his arrest to the present day is a big deal.

25        Finally, this case has made Mr. Pooley a felon, which comes with serious consequences.

26  Mr. Pooley has lost valuable civil rights and privileges.  *See Daniels v. United States*, 532 U.S.

27  374, 379–80 (2001) ("States impose a wide range of disabilities on those who have been

28  convicted of crimes, even after their release.  For example, in California, . . . persons convicted

of a felony may be disqualified from holding public office, subjected to restrictions on professional licensing, and barred from possessing firearms. Further, each of the 50 States has a statute authorizing enhanced sentences for recidivist offenders.") (citations omitted). He will forever need to advise potential employers of his status as a felon. Anyone who Googles his name will know he is a felon from the myriad of digital news stories. Mr. Pooley will always live with the "felon" label and the civil disabilities it brings.

## IV.   CONCLUSION

Mr. Pooley respectfully requests that the Court impose a sentence of time-served.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: September 23, 2024

/s/ Mia Crager
MIA CRAGER
MEGHAN McLOUGHLIN
Assistant Federal Defenders
Attorneys for Defendant
ROBERT POOLEY