PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ROBERT POOLEY,<br><br>　　　　　　　　　Defendant. | CASE NO. 2:21-CR-111 WBS<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE VICTIM IMPACT STATEMENTS AND RESPONSE TO THE DEFENSE'S SUPPLEMENTAL FILING ON THE RISK ENHANCEMENT<br><br>DATE: September 30, 2024<br>TIME: 10:00 a.m.<br>COURT: Hon. William B. Shubb |

## I.　　INTRODUCTION

　　On the afternoons of the two business days prior to sentencing, the defense filed two briefs that conflate a number of issues. *See* Dkt. Nos. 175, 178. The government will be prepared to address those filings at sentencing. In addition, the government submits this written response to Pooley's recent filings, in the hopes that providing the authority herein in advance will be helpful to the Court in considering the two decisions before it.

　　At trial, the Court ruled that the likelihood of unfair prejudice to the defendant substantially outweighed the probative value of the consequences of the death or safety issues, and excluded evidence of the death or of safety issues. We are now at sentencing. There is no jury, or risk of prejudice, and the considerations animating the admissibility rulings are not present.

　　The two decisions facing the Court at sentencing—whether to apply an enhancement under

UNITED STATES RESPONSE TO DEFENSE FILINGS NOS.　　1
175 AND 178

U.S.S.G. § 2B1.1(b)(16) for creating a risk of death or serious bodily injury, and whether to let the parents of an 18-year old who died in a botched tandem jump with one of the instructors Pooley fraudulently certified allocute at sentencing—are governed by different standards.  Those standards do call the Court to consider the safety risks Pooley created, and the real-world impact of Pooley's fraudulent sign-offs.

However, the Guidelines enhancement under U.S.S.G. § 2B1.1(b)(16) does not ask the Court to determine if *in fact* the defendant caused a death or serious bodily injury.  Rather, the application should be applied where the offense involved "the conscious or reckless *risk* of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(16) (emphasis added), a standard which is met here.  And the decision of whether to allow the parents of T.T. to testify asks whether, but-for Pooley's fraud, which put Y.K. in a tandem rig and empowered him to tandem jump with customers, T.T. would have died.  That standard is met, in the government's view.  But, even if the Court is unsure whether that standard is met, the Court may and should allow T.T.'s parents to allocute to protect their statutory rights. While doing so, if accurate, the Court may state on the record that some or all of the victim statements did not contribute to the Court's sentencing decision, thus creating a clear record of lack of any prejudice to Pooley while protecting T.T.'s parents' rights under the CVRA.

## II.     LEGAL ANALYSIS

### A.     The § 2B1.1(b)(16) enhancement is based on *risk* of death or injury, not actual causation.

The Guidelines enhancement under U.S.S.G. § 2B1.1(b)(16) does not involve a causation analysis of whether in fact the defendant caused a death or serious bodily injury.  Rather, the application should be applied where the offense involved "the conscious or reckless *risk* of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(16) (emphasis added); *see also United States v. Henderson*, 893 F.3d 1338, 1351 (11th Cir. 2018) (the government need not show actual injury to any particular victim for this enhancement to apply).  The analysis does not require delving into the adequacy of Pooley's instruction.  It should be applied simply because Pooley's scheme contravened an FAA safety regulation intended to protect tandem instructors and members of the public by ensuring that a currently validly-certified Examiner had supervised the instructor's training and signed off on the qualifications of every

parachutist in command of a tandem skydive. *See* 14 C.F.R. § 105.45 (a)(1)(iv)-(v).

The government's opposition to the defendant's formal objection details the many times the enhancement has been applied and affirmed by the Ninth Circuit based on the violation of federal safety regulations and falsification of records. *See* Dkt. No. 172. The government will not repeat its opposition brief here. For now, the government merely notes that the defense's brief is misleading and falsely implies that the enhancement should only be applied if the government demonstrated "a homicide." *See* Dkt. No. 175-1 at 2. The enhancement is about risk, not consequence.

**B.  The Court should resolve any uncertainty as to the applicability of the CVRA to the family of T.T. in favor of letting them allocute.**

Because the evidence provides a basis to believe that the death of 18-year-old T.T. was a but-for consequence of Pooley's crime, and because case law interpreting the CVRA counsels that the wisest course of action is to allow even potential victims to allocute at sentencing, the government respectfully requests that T.T.'s parents be permitted to read or have their victim impact statement read at sentencing.[1]

1.  **Crime victims have a right to speak at sentencing.**

Crime victims have a right to speak at sentencing, enforceable by them directly or by the government. The CVRA affords victims the "right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4). The Ninth Circuit has interpreted this right to mean the right to speak in open court, not merely to submit written statements. *Kenna v. U.S. Dist. Ct. for C.D. Cal.,* 435 F.3d 1011 (9th Cir. 2006) (granting petition for writ of mandamus brought by victims directly and holding that the district court erred in refusing to allow victims to speak at sentencing hearing).

2.  **T.T.'s parents are victims under the CVRA.**

The causal connection between Pooley's fraudulent certifications sending instructor Y.K. up on tandem jumps and T.T.'s death on a tandem jump with Y.K. qualifies T.T.'s parents as victims under the Crime Victim's Rights Act. The CVRA defines "crime victim" as "a person directly and proximately

---

[1] Mrs. T. would like to read her own victim impact statement aloud. Mr. T would like the government to read his statement.

harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A).  The causation requirement encompasses the traditional "but-for" and proximate cause analyses.  *United States v. Contreras*, No. CR 16-00740 HG-01, 2017 WL 2563222, at *2 (D. Haw. June 13, 2017), citing *In Re Rendon Galvis*, 564 F.3d 170, 174 (2d Cir. 2009).   The Fifth Circuit explained the causation requirement under the CVRA usefully and at some length:

> An act is a but-for cause [ ] of an event if the act is a *sine qua non* of the event—if, in other words, the absence of the act would result in the non-occurrence of the event. Conversely, an act is not a but-for cause of an event if the event would have occurred even in the absence of the act. *Moser v. Tex. Trailer Corp.,* 623 F.2d 1006, 1013 (5th Cir.1980) (quoting W. PROSSER, THE LAW OF TORTS § 41, at 238 (4th ed. 1971)). As Professor David Robertson has explained, ascertaining the existence of but-for causation requires a court to create "a mental picture of a situation identical to the actual facts of the case in all respects save one: the defendant's wrongful conduct is now 'corrected' to the minimal extent necessary to make it conform to the law's requirements." David W. Robertson, *The Common Sense of Cause in Fact,* 75 TEX. L. REV. 1765, 1770 (1997). Then, the court asks "whether the injuries that the plaintiff suffered would probably still have occurred had the defendant behaved correctly in the sense indicated." *Id.* at 1771. Only if the answer to that question is "No" is the defendant's conduct a but-for-cause of the plaintiff's injuries.

*In re Fisher,* 649 F.3d 401, 403 (5th Cir. 2011).

Here, Pooley's fraud scheme involved: (i) fraudulently presenting himself as an Examiner and purporting to teach a course he was not accredited to teach (while there was no other Examiner at Parachute Center able to teach it); and then (ii) falsely signing Y.K's tandem instructor certification card with Garmashov's fake signature and providing that card to Y.K. (which Y.K. then countersigned in Korean), falsely representing that Y.K. had been certified by an Examiner, that his training had been supervised by an Examiner, and that he was accredited to jump.  Just over a month later, Y.K. took T.T. on a tandem jump and suffered a malfunction he was unable to address, leading to their deaths.  Applying *Fisher*, if Pooley had not taught Y.K.'s course, signed Y.K.'s tandem certification card, and thereby authorized Y.K. to make tandem jumps, when T.T. showed up at Parachute Center, he would have been assigned to a different tandem instructor, not Y.K., who failed to handle a drogue malfunction.  The parents of T.T. would not have suffered the loss of their son.

Sister circuits and district courts throughout the country, in considering whether individuals qualify as victims with a right to be heard at sentencing, have interpreted the direct and proximate harm

1 requirement broadly.  For example, in *United Sates v. Contreras*, a prison guard defendant pleaded
2 guilty to one count of lying to federal investigators about allegations he had engaged in inappropriate
3 relationships with two inmates.  *United States v. Contreras*, No. CR 16-00740 HG-01, 2017 WL
4 2563222, at *2 (D. Haw. June 13, 2017).  The Court allowed one of the inmates with whom he engaged
5 in a relationship to allocute, finding that the victim "was directly and proximately harmed as a result of
6 Defendant's conduct that concealed their relationship from Department of Justice officials." *Id.*
7 Similarly, a district court in Texas held that members of the community who stated they had experienced
8 physical symptoms such as burning eyes were victims who had suffered "harm" under the CVRA for
9 defendant corporation's knowing operation of new stationary source that emitted hazardous air pollutant
10 without an emission control device.  *United States v. CITGO Petroleum Corp.*, 893 F. Supp. 2d 848, 851
11 (S.D. Tex. 2012).  The court explained that under *Fisher* the victims were entitled to provide statements
12 at sentencing, although the community members did not provide documentary medical evidence
13 confirming their injuries or illnesses due to chemical exposure and monitoring data from area did not
14 show readings of volatile organic compounds that exceeded state and federal regulatory levels.  *Id.*

15 Here, the bar for considering T.T.'s parents' harm caused by Pooley's fraud is met.

16 **3.  Even if the Court has doubts regarding causation, the best and most prudent course of action is to permit T.T.'s parents to allocute at sentencing, even if the Court does not base its sentence on their allocution.**

18 The defense has moved to strike T.T.'s parents' victim impact statements, arguing that Pooley
19 did not cause the harm suffered by T.T.'s parents.  *See* Dkt. No. 178.  The government disagrees with
20 the defendant's argument that T.T.'s parents are not victims, for the reasons stated above and argued in
21 its prior filings.  Regardless though, even if the Court is unsure whether T.T.'s death directly and
22 proximately resulted from Pooley's crime, the Court should allow T.T.'s parents to speak.  Simply
23 letting T.T.'s parents speak would not constitute error and in fact would be the cautious and prudent
24 approach to prevent any error.  Their allocution is relevant and informs the real-world impact Pooley's
25 fraud could have had (even if the Court does not think that impact has been proved with respect to
26 Y.K./T.T. specifically).  Allowing them to speak is prudent given the strong likelihood that they are
27 victims under the CVRA, and the Court is ultimately free to consider or not consider victim impact
28 statements in rendering judgment, and can state so on the record.

The Sixth Circuit's reasoning in *United States v. O'Lear* is instructive. *United States v. O'Lear*, 90 F.4th 519, 540 (6th Cir.), *cert. denied*, 144 S. Ct. 2542 (2024). There, the Sixth Circuit held that the district court did not err in the sentencing hearing of a former owner of a radiology services company convicted of health care fraud by allowing two of his former x-ray technicians to make statements as victims. *Id*. The first technician discussed the potential impact of the defendant's decision to forge her name during his fraud on her radiology licensure and the second technician discussed the potentially dangerous working conditions to which defendant exposed her, which had relevance to the defendant's character and conduct. *Id*. In affirming, the Sixth Circuit observed as follows:

> Whether [the technician who discussed working conditions to which the defendant exposed her] qualified as a "victim" of his fraud is debatable and ultimately does not matter. As we explained in another case, this question might have mattered if the court had barred this technician from speaking. She might have then asserted that the court violated her rights under the Crime Victims' Rights Act. *United States v. Leach*, 206 F. App'x 432, 435 (6th Cir. 2006); *see In re Rendon Galvis*, 564 F.3d 170, 175–76 (2d Cir. 2009) (per curiam). But the court allowed her to speak. And O'Lear concedes that her statement had relevance to his "character" and "conduct." 18 U.S.C. § 3661. Even if the second technician did not qualify as a victim under § 3771(e)(2)(A), therefore, the court could still consider her information when choosing O'Lear's sentence.

*Id.*

Similarly, in *United States v. Ortiz,* the Eight Circuit held that in sentencing a defendant convicted of interstate transportation of stolen property in connection with her involvement in a sophisticated national shoplifting ring, the district court did not err when, pursuant to the CVRA, it permitted representatives from the victim merchants to testify at the sentencing hearing not only about offense-related losses, but also about retail theft losses they suffered annually nationwide from all organized retail thefts. *United States v. Ortiz*, 636 F.3d 389, 393 (8th Cir. 2011). Specifically, the district court overruled Ortiz's objection to any testimony beyond the scope of the offense, stating, "I think Congress has clearly indicated in the [CVRA] that victims are to be given broad latitude in addressing the Court at a sentence hearing. And if it's something that goes beyond and into some other area that isn't relevant, I won't pay attention to it." *Id*. at 393. The Eighth Circuit held the district court did not err in allowing the testimony on nationwide losses, noting that, were the court to hold that victims' statutory "right to be reasonably heard" at sentencing was properly limited to presentation of

relevant and admissible evidence, district courts would have been deprived of information that could aid them in determining whether to vary from the Sentencing Guidelines based upon policy considerations. *Id*. at 394.  The Eighth Circuit further noted that, because the district court indicated in fashioning Ortiz's sentence, it would not consider irrelevant testimony offered during the merchants' CVRA statements, the defendant could not have suffered any prejudice by admission of the merchants' testimony.  *Id.*

Here, the Court can and should permit T.T.'s parents to speak to ensure their rights are protected under the CVRA.  The Court can do so without the need to reach an ultimate conclusion regarding causation at this juncture and, if appropriate, stating on the record that it did not rely on their allocution in formulating Pooley's sentence.  The determination of whether Pooley must pay restitution for any given loss can be made in the future, on a loss-by-loss basis for each arguable victim, at the restitution hearing which the defense has indicated it plans to request.

### III.  CONCLUSION

The government respectfully requests that the Court apply the 5-level enhancement under U.S.S.G. § 2B1.1(b)(16) for creation of a risk of death or serious bodily injury and allow the parents of T.T. to be heard at sentencing.

Dated:  September 29, 2024

PHILLIP A. TALBERT
United States Attorney

By:  /s/ KATHERINE T. LYDON
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorney