HANNAH LABAREE, CBN 294338
1521 Shattuck Ave, #9063
Berkeley, CA  94709
Tel: 916-287-3375
hlabaree@proton.me

Attorneys for Defendant
ROBERT ALLEN POOLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT ALLEN POOLEY,<br><br>Defendant. | Case No. 2:21-cr-111-WBS<br><br>**REPLY TO OPPOSITION TO MOTION FOR BAIL PENDING APPEAL**<br><br>Date:   November 12, 2024<br>Time:  10:00 a.m.<br>Judge: Hon. William B. Shubb |

I. **The Government does not Argue that Mr. Pooley Poses a Danger to the Community or a Risk of Nonappearance.**

Nowhere in the Opposition does the government argue that Mr. Pooley poses a danger to the community or a risk of nonappearance. *See* Opp. at 1 - 8.; *see also* 18 U.S.C. § 3143(b)(1)(A). The government appears to concede that Mr. Pooley has met his burden on this prong.

II. **Mr. Pooley's Sentencing Issue on Appeal Meets the Criteria under Section 3143(b).**

a. *The government concedes that Mr. Pooley's appellate issue related to the sentencing Guidelines is "substantial in nature.*

The government concedes that the sentencing issue Mr. Pooley will raise on appeal is substantial in nature, as required under § 3143(b). *See* Opp. At 3 ("the government will assume

for purposes of the bail motion that the sentencing guideline issue raises a 'substantial' issue of law or fact.").

      b.    *The authorized remedy under the Bail Reform Act regarding Mr. Pooley's sentencing issue is early termination of detention.*

The government is correct that Mr. Pooley is not entitled to continued release now based on the sentencing argument alone[1]. Mr. Pooley's appellate issue related to the Guideline enhancement, if successful, would result in a "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). In such an instance, the Court "shall" terminate his detention "at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B).

      c.    *The government is wrong that the bail motion is premature.*

The government is not correct that Mr. Pooley's motion is "premature." *See* Opp. at 4. Nothing in this statute or in any rule states or suggests that Mr. Pooley need to wait until a later point in the appeal process to bid for his release under this section. This Court has the relevant information available now to make the required determination under the law. A ruling now will assist Mr. Pooley in his ability to plan ahead and will provide the same predictability to other institutional players such as the Bureau of Prisons and the United States Probation Office.

      d.    *The government is wrong that the duration of the appeal will outlast Mr. Pooley's likely new sentence.*

The government summarily states in its opposition that the Court of Appeals "may well decide Pooley's appeal by" the time that the likely amended sentence of 11 months is completed. *See* Opp. at 4. The government fails to support this conclusion with any analysis of the expected timeframe of the appeal. It even cites to the Judiciary's data stating that the median time a case is decided from the date of Notice of Appeal (here, the relevant date is the date of the defendant's notice of appeal, October 7, 2024) is 13.6 months – but then erroneously concludes that the

---

[1] Continued release *is* the appropriate request based on the other appellate issues he discusses in his initial motion.

length of time of the expected duration of the appeal would *not* exceed the likely new sentence of 11 months. Opp. at 4:1-13.

On the same date that Mr. Pooley filed his instant Motion for Bail Pending Appeal, the government filed a notice of appeal of this Court's order granting the defense motion for judgment of acquittal of Count 6 (aggravated identity theft). There are now three Ninth Circuit case numbers associated with Mr. Pooley: two brought by the government related to this Court's dismissal of Counts 4 and 6 (case number 24-3898) and Count 5 (case number 24-6450), and one brought by Mr. Pooley related to his judgment and sentence (case number 24-6411). The Ninth Circuit issued an order on October 23 *sua sponte* consolidating these cases, staying appellate proceedings and vacating any existing briefing schedule. *See* Exh. A (Ninth Circuit Order). The government is ordered to provide an update on December 2 and every 30 days thereafter. *Ibid.*

So while the government assures us that "[t]he internal determination of whether to pursue an affirmative governmental cross-appeal appeal is underway in collaboration with other DOJ components and will be made shortly," the reality is that all appellate proceedings are stayed. There is no briefing schedule in place.

If the DOJ has an answer as to whether it wishes to pursue its appeals in Mr. Pooley's case as of the status update deadline of December 2, we can assume that a briefing schedule with thereafter be set. The standard Ninth Circuit schedule following a notice of appeal provides an initial approximately 2 months and 23 days before the opening brief is due. The Answer brief is due 30 days after that; and the optional Reply brief is due 21 days following. If the Ninth Circuit issues a briefing schedule within a week following the government's status report, and assuming neither party seeks any extension of time, the soonest the briefing will be completed is April 25, 2025. According to the Ninth Circuit website and the government's brief, oral argument would happen 3 – 4 months later, i.e., August 2025. *See* Opp. at 4. Again according to the Ninth Circuit's website, the soonest the court of appeals would issue a ruling following oral argument

would be three months, i.e., November 25, 2025 – over a year from the date of Mr. Pooley's self-surrender (scheduled for November 19, 2024).

Even if oral argument were not ordered in this case, per the Ninth Circuit itself as cited in the defense motion and the government's opposition, the median time from the filing of the notice of appeal (October 7, 2024) to ruling is 13.6 months. *See* Mot. at 8. This clearly exceeds the amount of time represented by the middle of the amended range of 8 to 14 months were Mr. Pooley to prevail on his sentencing issue in the Ninth.

e.   *The government is wrong to assume that Mr. Pooley's sentence under a reduced Guideline range would remain unchanged on resentencing.*

The government also argues that Mr. Pooley "may well" be resentenced to "the same 24-month sentence" as he was initially even if he were to prevail on reversing the five-level enhancement. *See* Opp. at 3. While it is true that this Court's mandate for determining an appropriate sentence resides at 18 U.S.C. § 3553 as opposed to the Sentencing Guidelines alone, the reality is that the 24-month sentence Mr. Pooley received in this case is inside the sentencing range of 21 to 27 months as found by this Court. By all appearances it was tethered to Mr. Pooley's guidelines. There is nothing to indicate otherwise. It is reasonable to look to the Guidelines as "the starting point and the initial benchmark" of sentencing in the federal courts. *See Gall v. United States*, 128 S. Ct. 586, 602 (2007).

Further, even if Mr. Pooley were to receive a sentence at the high-end of the Guidelines he will argue for on appeal (a range of 8 to 14 months), the duration of this appeal would exceed even that. *See* chart*, infra.*

| Sentence imposed. | Actual time to be served (accounting for good conduct time) |
|---|---|
| 11 months | 11 months |
| 12 months + a day | 10.22 months |
| 14 months | 11.9 months |

The government has conceded for the purposes of this motion that Mr. Pooley's sentencing issue is substantial and presents a close question within the meaning of section 3143(b). *See* Opp. at 3. This section of the Bail Reform Act permits a defendant a means to protect his liberty such that, if he does prevail in the court of appeals, he will not lose the meaningful opportunity to advocate for an appropriate sentence within the new Guideline range. This section also protects the District Judge's own sentencing discretion, in that he will retain its inherent authority to evaluate the appropriate sentence in light of an amended sentencing range. If we were to assume, as the government asks us to do, that Mr. Pooley will simply receive the same sentence as he did initially under a sentencing range nearly three times as long at the low end, this Court's hands will be tied if Mr. Pooley later appears before it on resentencing after having served a period of custody time *longer* than the reduced guideline range. This is the eventuality the defense seeks to prevent by bringing this motion.

### III. The government is wrong that the evidence established a "relationship of trust" within the meaning of the law.

The government's evidence at trial was insufficient to warrant the jury instruction as to an omission theory of fraud. The government insists that it was sufficient by pointing to witness testimony by certain tandem instructor candidates that they trusted Mr. Pooley. *See, e.g.,* Opp. at 5. But the government put on no evidence that satisfied the second prong of the two-pronged analysis for whether a "relationship of trust" existed so to give rise to a duty to disclose certain information. *See* Ninth Circuit Model Jury Instruction 15.35 (recognizing as a basis for an omissions theory of fraud the showing of "an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance that it would ordinarily exercise."). Nor did they argue it at closing. *See* Mot. at 12.

They fail as well in their opposition. The government points only to evidence that the tandem instructor candidate witnesses testified that they trusted Mr. Pooley. But as to Mr.

Pooley's own "induce[ment of] the trusting party to relax the care and vigilance that it would ordinarily exercise," they offer only the fact that Brad North did not "press Pooley further" beyond his statement that Yuri Garmashov would be supervising the course, and instead chose to follow Mr. Pooley's instructions on how to complete the paperwork. It is unexplained in the opposition how this choice of Mr. North's relates back to actions by Mr. Pooley to "induce" Mr. North to relax his care and vigilance (let alone the care and vigilance he would "ordinarily" exercise).

Further, Mr. North's testimony does not indicate that Mr. Pooley's actions induced a relaxed level of vigilance. When asked by the prosecutor why he didn't follow up with Mr. Pooley as to Yuri Garmashov's supervising the course, Mr. North said "I didn't have any reason to, necessarily." CR 154-1 at 152:17-21 (Transcript of Jury Trial May 16th).

It's also not clear what the government intends to communicate when it says that Mr. Pooley "as the Examiner was responsible for knowing the rules around what it meant to 'supervise.'" *See* Opp. at 5. The definition of "supervision" is in the USPA manual, which candidates and examiners must have. It is not secret information nor is the burden of knowing it borne solely by examiners. In fact, Mr. North testified explicitly to the fact that "[t]here is a provision that you can be taught -- you can -- you can conduct courses under the supervision of somebody who holds the tandem instructor examiner rating." CR 154-1 at 112:5-9. So it appears Mr. North was aware that a non-examiner could instruct the course under the supervision of an examiner. If he knew this, it's not clear how Mr. Pooley telling him that Yuri Garmashov would supervise the course could have induced him to relax his care and vigilance on any front.

For these reasons, there was not sufficient evidence to warrant the omissions jury instruction.

**IV. The government is wrong that there was an "avalanche of evidence" supporting the misrepresentations theory.**

The government dismisses the prejudicial force of any instructional error related to the fraud by omissions theory based on its assertion that there was an "avalanche of evidence to convict Pooley of wire fraud based on affirmative false promises, representations, and pretenses." Opp. at 5. They point to the length of their own closing on this point as demonstrative of this "avalanche." *See* Opp. at 6. The government overstates the strength of the evidence.

For "affirmative false promises, representations, and pretenses," the government in its opposition points to testimony by Brad North: "When he texted Pooley to ask if he was teaching a tandem instructor course anytime soon and Pooley said yes, the idea that he was a certified Examiner who could teach the course was bound up in that." But Mr. North had also testified that he understood that a non-Examiner can teach a tandem instructor course if he was supervised by an Examiner. *See* CR 154-1 at 112:5-9. So it is not necessarily true that Mr. Pooley's text to this end was "bound up with" "the idea that he was a certified Examiner." This oblique single text does not add to any avalanche of evidence.

The government also tells the Court that: "Pooley also told Fabricio Palomino, 'I'll meet you at Lodi on Sunday and I'll sign your paperwork.' Inherent in that was that he was an Examiner who could sign the paperwork." First, this is not what Mr. Palomino testified to on cross-examination. His testimony was far less clear than a statement that Mr. Pooley told him that he, Mr. Pooley, would sign his paperwork.

> Q: It's your testimony that Rob Pooley said, I'm an examiner, and I'm going to sign your paperwork?
> A. Well, when we call by phone, he told me, I'm going to go --I see you on Sunday to get your paperwork done and sign you off, and you can leave.
> Q. Okay. So he said, We'll get your paperwork done, and we'll get you signed off?
> A. Yeah.

CR 154-2 at 49:20 – 50:13. When Mr. Palomino met up with Mr. Pooley as planned, Mr. Pooley handed him paperwork with Mr. Garmashov's name signed. It is unclear what about that entire

exchange constitutes an affirmative misrepresentation or pretense. This is a different scenario than the one described by the government in its Opposition.

And the government tells the Court, we "watched Pooley's deposition clip in which, regarding tandem instructor candidate Kwon, when asked 'Who was the Examiner?' Pooley said, 'Me.'" This is an incomplete portrait of the evidence at trial related to the deposition by Mr. Pooley: in the deposition clip referred to by the government Mr. Pooley says a few times, "I was the examiner," but he is never asked how he represented himself to the students in his course. There is no evidence that Mr. Pooley affirmatively stated to any candidate other than Mr. Munoz that he was the examiner. The logical leap the government argues for – that Mr. Pooley told Mr. Kwon he was the examiner – is a step too far. *See* Opp. at 6 ("The government argued the jury should infer that Pooley told Kwon exactly that: that he was Kwon's Examiner.").

The government also, curiously, seems to point to affirmative misrepresentations made by people *other* than Rob Pooley (such as Kathy Dause), to add to the "avalanche" of evidence regarding misrepresentations. (At trial the government put on no evidence that Mr. Pooley directed these other people to make such statements). For Mr. Pooley to be held responsible for misrepresentations made by people outside of his control would be a novel legal theory and one unsupported by the law[2].

The jury instruction as to the omissions theory of defense was given in error, and the evidence as to the theory of fraud by misrepresentation is not "so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on the erroneous instruction would have been the same in the absence of the error." *C.f.,* United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1197 (9th Cir. 2000). The government overstates the strength of its evidence as to the

---

[2] It does appear that the government attempted to lay criminal liability on Mr. Pooley based in part on these statements by other people: "The false statements by Bill Dause are another way that Pooley ran his scheme to defraud," stated the government in its closing. *See* CR 196-1 at 13:5-6.

misrepresentation theory. This issue is substantial within the meaning of section 3143(b) in that "it presents a close question or one that very well could be decided the other way." *United States v. Eaken*, 995 F.2d 740, 741 (7th Cir. 1993).

### V. That the evidence as to Counts 3 and 4 (wire fraud) was insufficient is a substantial legal question that meets the standard in section 3143.

As stated in his initial motion, Mr. Pooley's argument related to the lack of evidentiary basis for the omissions theory jury instruction and its related prejudicial error can also be construed as a sufficiency of the evidence argument. On appeal, the standard to prevail on a sufficiency of the evidence argument is whether, viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hubbard,* 96 F.3d 1223, 1226 (9th Cir.1996) (internal quotation marks omitted). "The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw *reasonable* inferences from proven facts." *Ibid* (internal citation omitted) (emphasis added).

Here, Mr. Pooley will essentially argue that there was insufficient evidence as to any theory of fraud in this case to support a conviction. One theory that is lacking was that of fraud by omission. That theory will not require the appellate court to second guess any determination by the jury as to the "credibility of witnesses, resolution of evidentiary conflicts, or []reasonable inferences…." Rather, it asks only that the appellate court recognize that the government put on no evidence as to Mr. Pooley's actions to induce any witness to relax their ordinary care and vigilance.

As to the sufficiency of the evidence on the misrepresentation theory, Mr. Pooley will attack the lack of evidence in a number of ways, as noted above in Section IV. Mr. Pooley will not ask the court of appeals to overturn the jury's finding as to credibility of any witness (for

instance, Mr. Munoz) or to resolve evidentiary conflicts. He will, potentially, assert that certain logical inferences insisted on by the government – such as the one they urged related to the meaning drawn from Mr. Pooley's deposition related to his training of Mr. Kwon – are not "reasonable." His argument will primarily go to identifying the scant quantity of the evidence on the misrepresentations theory and asking the Court to recognize that, even viewing all the evidence present in the light most favorable to the prosecution, it is insufficient to support a conviction on Counts 3 and 4.

## VI.     CONCLUSION

Once the statutory requirements are met, the "judicial officer *shall* order the release of the person," 18 U.S.C. § 3143(b)(1)(B) (emphasis added). Mr. Pooley submits that the statutory requirements are met in his case as to each of the appellate legal issues discussed in the initial motion. The issues he will present at the appellate level are of the type that meet the standard in this type of motion: all issues presented surpasses the threshold of being "'fairly debatable,' or 'fairly doubtful,'" *United States v. Handy*, 761 F.2d 1279, 1280–81 (9th Cir. 1985). He therefore he is an appropriate candidate to either be released at the conclusion of his likely new sentence, or to remain on bond pending appeal pursuant to 18 U.S.C. §3143 (b).

DATED:  November 5, 2024              Respectfully submitted,
                                      /s/ *Hannah Labaree*
                                      HANNAH LABAREE
                                      Attorney for Defendant
                                      ROBERT POOLEY