PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>ROBERT ALLEN POOLEY,<br><br>          Defendant. | CASE NO. 2:21-cr-00111-WBS<br><br>UNITED STATES' REPLY TO POOLEY'S RESTITUTION HEARING BRIEF<br><br>DATE: November 12, 2024<br>TIME: 10:00 a.m.<br>COURT: Hon. William B. Shubb |

The United States respectfully submits the following reply to Pooley's restitution brief. (ECF No. 200). As an initial matter, it appears that Pooley only disputes certain portions of the restitution claimed by Fabian Munoz. Accordingly, the Court should grant restitution in the amounts that Pooley does not dispute, including amounts claimed by Munoz that are uncontested, and the amounts claimed by Fabricio Palomino, Brad North and Carlos Obaid's father.

Regarding the disputed amounts, the United States argues as follows:

I.   **Munoz's Lost Wages Are Recoverable**

The MVRA requires restitution for a victim's "actual losses" that are a direct and proximate result of the defendant's offense. *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015). "[S]o long as any loss…is an "actual loss" suffered as a result of a defendant's qualifying crime and the MVRA's causation standard is satisfied, a district court must include the amount of that loss in its restitution

order." *Id*. Losses are not related to the criminal conduct if "there was an unrelated, intervening cause, or the criminal conduct to which a defendant pleaded guilty did not cause the loss." *United States v. Gamma Tech Indus., Inc*., 265 F.3d 917, 927 (9th Cir. 2001) (collecting cases). Losses that are "at least one step removed from the offense conduct itself" are includable, as long as the "causal chain" is not "unreasonable." *Id*. at 928. So, for example, the Ninth Circuit in *Gamma Tech* affirmed an award of a contractor's lost profits that resulted from inflated payments to subcontractors for the payment of kickbacks. *Id*.; *see also United States v. Rice*, 38 F.3d 1536, 1544 (9th Cir.1994) (holding that restitution of lost profits are permissible because the illegally-gained property had a "book price which includes a profit markup"). Similarly, the Ninth Circuit has explicitly affirmed an award of lost wages to a victim who left her job following and as a result of an assault. *See United States v. Keith*, 754 F.2d 1388, 1393 (9th Cir. 1985); *see also United States v. Wilfong*, 551 F.3d 1182, 1186 (10th Cir. 2008) (allowing restitution for employee work hours lost due to a bomb threat). Finally, courts have allowed restitution to victims for expenses incurred in remediating the effects of the underlying crime. *See e.g. USA v. Schurman*, 634 F. Supp. 3d 704, 708 (N.D. Cal. 2022) (restitution allowed for expenses incurred by victim in paying for real inspection reports after defendant's fraud was discovered, as well as costs for demolition and repair work).

Munoz's lost income is not a "consequential expense" but is a direct and proximate result of Pooley's offense. "Consequential damages are damages that are not the direct and immediate result of the injury, but depend in part on factors outside the control or expectation of the parties." *Wilfong*, 551 F.3d at 1187. Here, Munoz testified that he needed the course for his career. (Exhibit B-1). He told Pooley this on a phone call. *Id*. Pooley falsely promised to teach him the course and deliver the credential Munoz needed. *Id*. Had Pooley provided him with the certification he promised, Munoz would have been able to work as a tandem instructor and earn additional income for the four months that it took for him to be recertified. It was reasonable for Pooley to expect that scamming his victims out of a certification that they needed for work would result in lost income to those victims. The whole purpose of the course was to certify tandem instructors so they could use that certification commercially[1].

---

[1] In addition to Munoz specifically informing Pooley of why he needed the certification, this was also generally understood as the reason why people seek the certification. As Brad North testified:

U.S. REPLY TO POOLEY'S RESTITUTION HEARING BRIEF

2

1  Pooley's fraud prevented Munoz from engaging in the commerce that certification would have allowed.
2  He should compensate Munoz for these actual losses.

3       **II.    Munoz's Request is Supported by the Record.**

4       Pooley has also submitted several documents that, while not entirely clear, appear to have been
5  submitted in an effort to challenge Munoz's credibility. Generally speaking, it is the defense's burden to
6  establish that information proffered in support of restitution is "materially untrue." *See United States v.*
7  *Smith*, 528 F.3d 423, 425 (5th Cir. 2008) (discussing defense's burden in rebutting facts contained in a
8  presentence report). That burden is simply not met here. Pooley appears to challenge how much money
9  Munoz paid for an FAA medical certificate, but his challenge is based on the unverified, unsworn
10 statement of a receptionist that did not deal with Munoz, was not privy to any conversation had with
11 Munoz, and that could not even state what the certificate would have cost when Munoz took the course
12 in 2016. (Defense Exhibit 2). On the other hand, Munoz testified at trial, under oath and subject to cross
13 examination, that he paid $500 for the medical certificate *and* for the transportation needed to obtain the
14 certificate. (*See* Exhibit B-1). Ultimately, the receptionist's hearsay statement does not demonstrate a
15 "sufficient indicia of reliability" for it to overcome Munoz's sworn testimony (and does not even clearly
16 contradict it). *United States v. Pathania*, 2008 WL 3876283, at *2 (E.D. Cal. Aug. 20, 2008).

17      Pooley also submits another unverified, unsworn statement from Munoz's purported former boss
18 to contradict his claim for $5,000 a month in lost income. (Defense Exhibit 6). Again, Munoz testified,
19 under oath, that he needed to take the course for his career (Exhibit B-1), and under cross examination,
20 reiterated that he "almost lost [his] job because [he] was not able to complete the objective that [he]
21 had," (*see* Defense Exhibit 4, p. 73, ln. 15-16), and that Pooley's scam cost him time with this family
22 and his job. (Defense Exhibit 4, p. 76, ln. 11). While he was not asked about the details of his lost
23 income at trial, his testimony confirming that he lost income corroborates his later statement to
24 investigators in which he detailed the exact amount of the loss. (*See* Exhibit B-3). For this reason, his

---

25     *Q. What made you decide to be a -- to attempt to be a tandem instructor?*
26     *A. I'm slightly embarrassed to say, but it was largely a monetary choice. It's, you know, the next*
27 *logical step to making yourself marketable and opening up the world as far as places where you can work and make money in the sport.*
28     (*See* ECF No. 154-1, p. 107, ln. 2-7).

statement is reliable. On the contrary, the hearsay statement submitted by Pooley lacks any such indicia of reliability, and should be disregarded by the Court.

This said, Munoz clarified in a subsequent interview[2] that he continued to earn $2,500 a month in a sales position at the skydiving center during the four months following Pooley's scam course. Thus, his lost wages restitution amount should be reduced by $10,000 ($2,500 x 4), to an amount of $10,000, rather than the $20,000 initially claimed.

Assuming the Court allows the statement from Munoz's boss, it actually supports Munoz's claim. His boss confirmed that he paid Munoz $2,500 a month in a sales/marketing position in 2016. (Defense Exhibit 6). He also confirmed that a skydiver could earn $2,500 a month doing tandem jumps at his drop zone. (*Id.*) Thus, had Munoz obtained his tandem instructor certification, he would have been able to supplement his $2,500 a month salary with $2,500 in wages earned from tandem jumps, for a total of $10,000 across four months. The Court should accordingly award Munoz this amount, which brings the total amount claimed by Munoz to $13,850.

Dated:  November 8, 2024                           PHILLIP A. TALBERT
                                                   United States Attorney


                                            By:    /s/ DHRUV M. SHARMA
                                                   DHRUV M. SHARMA
                                                   Assistant United States Attorney

---

[2] This interview took place on November 5, before Pooley filed his brief.